Michael W. Moore (ISBN 1919)
Martin C. Hendrickson (ISBN 5876)
MOORE & BASKIN, L.L.P.
Post Office Box 6756
Boise, Idaho  83707
Telephone:  (208) 336-6900
Facsimile: (208) 336-7031

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO AIDS FOUNDATION, INC.,      ) | |
|             ) | |
|          Plaintiff,      ) | Case No: CIV 04-155-S-BLW |
|             ) | |
| vs.             ) | **MEMORANDUM IN SUPPORT OF** |
|             ) | **MOTION FOR SUMMARY** |
| IDAHO HOUSING & FINANCE      ) | **JUDGMENT** |
| ASSOCIATION, an independent public body ) | |
| corporate and politic, GERALD M.      ) | |
| HUNTER, JULIE H. WILLIAMS, AND      ) | |
| EARL COOK, in their individual capacities, ) | |
|             ) | |
|          Defendants.      ) | |
| _____ ) | |

## INTRODUCTION

Plaintiff Idaho Aids Foundation (IAF) filed this lawsuit seeking damages and injunctive relief against the Idaho Housing and Finance Association (IHFA) and certain of its officers as a result of IHFA's administration of a grant from the United States Department of Housing and Urban Development (HUD).  IAF claims that IHFA wrongfully withheld funds due to IAF for services provided under the grant, and that IHFA's insistence on having access to records containing confidential information violated state and federal law.

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 1

IHFA at all times acted pursuant to the terms of the contract between IAF and IHFA, consistent with the applicable federal statutes and regulations, and upon the specific instructions from HUD officials.  None of IHFA's decisions or actions in connection with the administration of the HUD grant were discriminatory or violated privacy rights of HOPWA applicants.  Based upon the undisputed facts in the record, the Defendants are entitled to summary judgment and a dismissal of all of Plaintiff's claims.

## STATEMENT OF FACTS

The facts relevant to Defendants' motion are set forth in detail in their Statement of Material Facts.  IHFA applied for and received a grant from HUD under the Housing Opportunities for Persons With Aids Act (HOPWA).  In turn, IHFA entered into contracts in 2000 with IAF to provide services under the HOPWA program.  Such services included counseling, dental work, and transportation in addition to housing assistance.  The contracts with IAF were renewed in 2001. (SMF, ¶¶ 1 - 4.)

In the summer of 2001, IHFA informed IAF that it would conduct a monitoring visit for the purpose of confirming the eligibility of clients and services.  The visit occurred on September 7, 2001.  IHFA requested access to randomly selected client files for the purpose of verifying that eligible counseling services were provided as claimed in IAF's reimbursement requests.  IAF refused to permit access to the client files based upon a concern for confidentiality.  (SMF, ¶ 5.)

HUD officials subsequently confirmed that full access to client files was necessary and authorized by the applicable regulations.  IHFA's report to IAF concerning the monitoring visit included the finding that IAF had refused access, and a corrective action requiring that full access be provided in the future.  (SMF, ¶¶ 5 - 6.)

An agreement was reached between HUD and IAF, and communicated to IHFA, whereby

HUD and IHFA would accept verification of eligibility of services provided up to October 4, 2001, based upon a review of redacted records, and that IAF would obtain releases from its clients in order to provide HUD and IHFA full access to records for all services provided after October 4, 2001. (SMF, ¶¶ 7 - 8.)  Despite the agreement, IAF never obtained releases from its clients, and IAF continued to refuse to allow HUD and IHFA to have access to client files.  As a result of the refusal of IAF to allow access to the files necessary to verify eligibility of clients and services, HUD instructed IHFA to withhold payments to IAF under the HOPWA grant.  (SMF, ¶¶ 9 - 10.)

A meeting was held on December 20, 2001, to discuss the monitoring requirements and IAF's concerns about confidentiality.  The meeting was attended by IAF director Mark Welch, representatives of IHFA including Julie Williams and Earl Cook, and representatives of HUD.  At that meeting, the terms of the agreement between IAF and HUD were confirmed – that HUD would accept redacted records for services provided between July and October of 2001, and that IAF would allow full access for services provided thereafter based upon the use of a release.  (SMF, ¶ 11.)

Despite IAF's agreement with HUD, IAF continued to refuse to allow HUD or IHFA to have access to client files for the purpose of verifying eligibility of clients and services.  IHFA sought and obtained additional opinions from various HUD officials as to the requirement of full access to client files.  HUD repeatedly confirmed that full access was required under the HOPWA statute and regulations.  HUD further confirmed that IHFA was not authorized to make any further payments to IAF under the HOPWA grant program until full access was provided.  (SMF, ¶¶ 14 - 17.)

Attorneys for IHFA and IAF exchanged letters concerning these issues in April, May and June of 2002.  IHFA continued to insist upon full access to client files, as instructed by HUD.  IAF persisted in its refusal to allow such access, citing client confidentiality and discrimination under the Fair Housing Act.  (SMF, ¶¶ 19 - 22.)  The grant agreements between IHFA and IAF expired on June

30, 2002 and were not renewed.  (SMF, ¶ 23.)  IAF filed its Complaint on March 26, 2004, alleging

that IHFA violated the Fair Housing Act, the Rehabilitation Act, the HOPWA Act, Plaintiff's right

to privacy, Plaintiff's due process rights, and that IHFA breached the contracts with IAF.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be

entered when:

> The pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any, show that there
> is no genuine issue of material fact and that the moving party is
> entitled to judgment as a matter of law.

The moving party has the initial burden of demonstrating that there is no genuine issue of

material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)

(citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L. Ed. 2d 142 (1970)).  The

moving party is not required to produce evidence negating the existence of an element upon which

the opposing party bears the burden of proof.  *Id.* at 322, 106 S. Ct. at 2548.

Once the moving party has met its burden, the opposing party has the affirmative burden of

presenting specific facts demonstrating the need for trial.  F.R.C.P. Rule 56(e).  The opposing party

may not merely rely on its pleadings nor assert that it will discredit the moving party's evidence at

trial.  *See T. W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir.

1987); F.R.C.P. Rule 56(e).  There is no genuine issue of material fact "where the record taken as

a whole could not lead a rationale trier of fact to find for the non-moving party."  *Matsushida Elec.

Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)

(citation omitted).

An issue of fact is only material if it may effect the decision, so that the finding of that fact

is relevant and necessary. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A genuine issue is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the non-moving party. *Id.* In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law. *Id.* at 254, 106 S. Ct. 2505. The court must assess the adequacy of the non-movant's response and must determine whether the showing the non-movant asserts it will make at trial would be sufficient to carry the burden of proof. *See Celotex,* 477 U.S. at 322, 106 S. Ct. at 2548.

## ARGUMENT

### Defendants Have Not Discrminated Against Persons With Disabilities.

Plaintiff's first cause of action is brought under the Fair Housing Act. Plaintiff alleges that the Defendants have discriminated against persons because of a handicap in the rental of a dwelling, or the provision of services in connection with a dwelling, by making an inquiry into the nature and severity of a handicap in violation of 42 U.S.C. § 3604(f). (Complaint, ¶¶ 55 - 58, Docket No. 1.) The thrust of Plaintiff's claim is that IHFA's insistence upon full access to records, including client files, and the "requirement" that IAF obtain a release from its clients to permit IHFA and HUD access to client files to verify eligibility of clients and services, are impermissible under the Fair Housing Act's provisions that forbid discrimination. Plaintiff also alleges that IHFA has discriminated against disabled persons by denying participation in or benefits under a program or activity that received federal funding in violation of § 504 of the Rehabilitation Act. (Complaint, ¶ 60, Docket No. 1.)[1]

---

[1] This Court has an obligation to insure that a party has standing to assert a cause of action pursuant to Article III. At first blush, it would not appear that Plaintiff would have standing to assert

The same framework that is applied in suits brought under Title VII is utilized in connection with Fair Housing Act and Rehabilitation Act discrimination claims. *Gamble v. City of Escondido*, 104 F.3d 300, 304 (9th Cir. 1997), See, e.g., *Burns v. City of Columbus*, 91 F.3d 836 (6th Cir. 1996). A plaintiff can establish a FHA discrimination claim under a theory of disparate treatment or disparate impact. *Gamble*, 104 F.3d at 304-05.

In analyzing a claim of disparate treatment under the FHA, a court applies the familiar *McDonnell Douglas/Burdine* three-stage, burden shifting test. To bring a disparate treatment claim, the plaintiff must first establish a prima facie case, consisting of the following elements: (1) plaintiff's rights are protected under the FHA; and (2) as a result of the defendant's discriminatory conduct, plaintiff has suffered a distinct and palpable injury. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the action. The defendant is only required to set forth a legally sufficient explanation. If the defendant successfully rebuts the presumption of discrimination, the burden shifts back to the plaintiff to raise a genuine factual question as to whether the proffered reason is pretextual. *Harris v. Itzhaki*, 183 F.3d 1043, 1050 (9th Cir. 1999) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973) and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 255 (1981)).

Plaintiff alleges that IHFA discriminated against persons with disabilities by requiring a release as a condition of receiving benefits under the HOPWA program. The record reveals that the potential use of a "release" was only introduced as a means of addressing IAF's concern for

---

a cause of action based upon an allegations of discrimination or the violation of privacy rights of individual applicants. However, Defendants are aware of Ninth Circuit precedent indicating that IAF may have representational or organizational standing to bring such claims. Standing is a matter for this Court to decide and the positions of the parties are not determinative. *See Smith v. Pacific Properties and Development Corp.*, 358 F.3d 1097 (9th Cir. 2004), *Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002), and *Columbia Basin Apt. v. Pasco*, 268 F.3d 791 (9th Cir. 2001).

confidentiality, and that it was part of the agreement reached between IAF Executive Director Mark Welch and HUD Analyst Jan Olson in their September 26, 2001 phone meeting.  (SMF, ¶¶ 7, 16.) Subsequent references to the use of release are based upon IAF's agreement to begin using one as a mechanism to allow HUD and IHFA access to the records that were needed to verify eligibility of clients and services.  (*Id.*, ¶¶ 8 - 11.)

Thus, the very actions that Plaintiff brands as discriminatory were attempts on the part of HUD and IHFA to accommodate the Plaintiff's concern regarding confidentiality.  As the record clearly reflects, all that was strictly required by HUD, was that IAF provide the necessary access to records, including client files, to HUD and IHFA.  (*Id.*, ¶¶ 5, 14, 16, 17, 23.)  Plaintiff's claim of discrimination on the part of IHFA based upon the allegations concerning the use of a release are unsupportable based upon these facts.  There is no evidence that IHFA denied or prevented any eligible person from obtaining benefits under the HOPWA program, much less that it did so based upon any person's disability.

Further, IHFA's actions in attempting to verify eligibility cannot be deemed discriminatory. An applicant's HIV status is a condition of participation in the program.  Likewise, the program statutes and regulations define the scope of eligible services, and require that funds be used exclusively for such services.  42 USC §§ 12904 and 12907(a), 24 CFR § 574.300.  IHFA is charged with the responsibility to ensure that the grant is administered in accordance with the applicable statutes and regulations, which includes the requirement that grant funds only be used for eligible persons and services.  24 CFR § 574.500.[2]

---

[2]  Confidentiality is addressed by 24 CFR § 574.440, which provides: "The grantee shall agree, and shall ensure that each project sponsor agrees, to ensure the confidentiality of the name of any individual assisted under this part and any other information regarding individuals receiving assistance."

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 7

Authority for HUD and IHFA regarding access to records concerning the disbursement of grant funds is specifically provided in OMB Circular A-110, § ___.53(e), which provides:

> The Federal awarding agency, the Inspector General, Comptroller General of the United States, or any of their duly authorized representatives, have the right of timely and unrestricted access to any books, documents, papers, or other records of recipients that are pertinent to the awards, in order to make audits, examinations, excerpts, transcripts and copies of such documents. This right also includes timely and reasonable access to a recipient's personnel for the purpose of interview and discussion related to such documents. The rights of access in this paragraph are not limited to the required retention period, but shall last as long as records are retained.

OMB Circular A-110 is made applicable to HOPWA grants utilized by private non-profit entities, such as IAF, by 24 CFR § 574.605.[3]

At all relevant times, IHFA was operating at the specific direction of HUD, and under the authority of the above regulations, in requiring full access to client files. IHFA followed HUD's instructions in withholding payments to IAF in the absence of access to the files that were needed to verify eligibility of clients and services. Given that IHFA's actions at all times complied, and were even compelled by, the applicable regulations, there can be no cognizable claim of discrimination.

On this record, there is no evidence of discriminatory conduct on the part of IHFA, and therefore the inquiry under the *McDonnell Douglas* test is complete. However, if the Court were to consider the second step in the test, it would find that IHFA had a legitimate, nondiscriminatory basis for insisting upon access to records sufficient to verify client and service eligibility.

---

[3]   The provisions of OMB Circular A-110 have been tailored to HUD's programs and implemented at 24 CFR Part 84. Mr. Vos and Mr. Carlson both refer specifically to 24 CFR § 84.53 in their correspondence as authority for access to client files by HUD and IHFA. (SMF, ¶¶ 11, 13, 20.)

IHFA had the obligation under the HOPWA statute and regulations to ensure that grant funds were being used for eligible persons and services. IHFA cannot complete this function in the absence of access to the records that show that eligible services were being provided to eligible persons, and in what amounts. Pursuant to the regulations and its own internal policy, IHFA is required to keep all information concerning recipients confidential. (SMF, ¶ 6.) IHFA's compliance with federal regulations and the specific instructions of HUD constitutes a legitimate, nondiscriminatory basis for its actions. There is nothing in the record to suggest intentional discrimination by IHFA or that the proffered reasons for its actions are a pretext. For these reasons, Plaintiff's disparate treatment claims should be dismissed.

The record will similarly not support a disparate impact discrimination claim.

> To establish a prima facie disparate impact case, a plaintiff must establish "'at least that the defendant's actions had a discriminatory effect.'" *Pfaff*, 88 F.3d at 745 (quoting *Keith v. Volpe*, 858 F.2d 467, 482 (9th Cir. 1988), *cert. denied*, 493 U.S. 813, 110 S. Ct. 61, 107 L.Ed.2d 28 (1989)). The *Pfaff* court, by analogy to Ninth Circuit age discrimination law, identified the following elements of an FHA prima facie case under a disparate impact theory: "(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." *Id.* (quotation and modifications of the quotation omitted). Demonstration of discriminatory intent is not required under disparate impact theory. *Id.* at 745-46, 746 n. 2. However, a plaintiff must "'prove the discriminatory impact at issue; raising an inference of discriminatory impact is insufficient.'" *Id.* at 746 (quoting *Palmer v. United States*, 794 F.2d 534, 538-39 (9th Cir. 1986)).

*Gamble v. City of Escondido,* 104 F.3d 300, 306 (9th Cir. 1997).

In *Gamble*, the court held that the plaintiff had failed to establish a prima facie case because he failed to present statistics or any other proof demonstrating that the city's practices had a significantly adverse or disproportionate impact on the physically disabled or elderly. *Id.*

In the present case, there is no evidence in the summary judgment record to support a disparate impact claim. Indeed, it would seem impossible to make out such a claim from these facts. The HOPWA program provides benefits and services only to persons who would be classified as having a disability, or family members of a person with a disability. The fact that certain records regarding the services provided to applicants under the program may be reviewed by HUD and IHFA does not discriminate against those individuals in any way. Further, assuming for the sake of argument that applicants were informed of the possibility that IHFA or HUD may access their records, such notification could not be deemed discriminatory.

### HOPWA Statutes and Regulations.

In the Third Claim for Relief, Plaintiff alleges that the Defendants' policy and practice of requiring, as a condition of eligibility for receiving HOPWA benefits and services and the reimbursement of such benefits and services, the signing of a release for disclosure of confidential information violates 42 U.S.C. §§ 12901, et seq., and 24 C.F.R. part 574. (Complaint, ¶ 62, Docket No. 1.) Plaintiff's claim against the Defendants based upon the HOPWA statutes and regulations fails because those statutes and regulations do not create a private right of action nor any rights that are enforceable under 42 U.S.C. § 1983.

The United States Supreme Court set forth the test to be used to determine whether a federal statute creates an enforceable right in *Gonzaga University v. Doe*, 536, U.S. 273, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002). The plaintiff in that case sued Gonzaga University for the unauthorized release of personal information in violation of the Family Educational Rights and Privacy Act of 1974 (FERPA). Following a jury verdict in plaintiff's favor, the Washington Court of Appeals reversed the verdict based upon its conclusion that FERPA does not create individual rights and cannot be enforced under § 1983. The Washington Supreme Court reversed that decision, holding

that although FERPA did not provide for a private cause of action, the nondisclosure provision

created a federal right that was enforceable under § 1983. *Id.* at 277-78, 122 S. Ct. at 2272.

The United States Supreme Court held that, despite the prohibition against disclosure of

records, spending legislation drafted in terms resembling those of FERPA did not confer enforceable

rights. The Court reviewed prior cases that it admitted were ambiguous as to the criteria to be used

to determine whether a statute created enforceable rights. In attempting to clear up any confusion,

the Court stated:

> We now reject the notion that our cases permit anything short of an
> unambiguously conferred right to support a cause of action brought
> under § 1983. Section 1983 provides a remedy only for the
> deprivation of "rights, privileges, or immunity secured by the
> constitution and the laws" of the United States. Accordingly, it is
> *rights*, not the broader or vaguer "benefits" or "interests," that may be
> enforced under the authority of that section. This being so, we further
> reject the notion that our implied right of action cases are separate and
> distinct from our § 1983 cases. To the contrary, our implied right of
> action cases should guide the determination of whether a statute
> confers rights enforceable under § 1983.

*Id.* at 283, 122 S. Ct. at 2275.

The Court concluded that FERPA's nondisclosure provisions failed to confer enforceable

rights because they lacked the sort of "rights-creating" language critical to show the congregational

intent to create new rights.[4] The Court contrasted the FERPA provisions with "individually focused

terminology" contained in Title VI and Title IX ("no person shall be subjected to discrimination").

> FERPA's nondisclosure provisions further speak only in terms
> of institutional policy and practice, not individual instances of

---

[4]The relevant provision of FERPA provided: No funds shall be made available under any
applicable program to any educational agency or institution which has a policy or practice of
permitting the release of education records (or personally identify the information contained therein
. . .) of students without the written consent of their parents to any individual, agency, or
organization. 20 U.S.C. § 1232g(b)(1).

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 11

disclosure. [Citation omitted.]   Therefore, as in *Blessing* [*v. Freestone*, 520 U.S. 329 (1997)], they have an "aggregate focus," 520 U.S. at 343, they are not concerned with "whether the needs of any particular person have been satisfied," *ibid.*, and they cannot "give rise to individual rights," *Id.* at 344.

*Id.* at 288, 122 S. Ct. at 2278.  The *Gonzaga* Court concluded:

> In sum, if Congress wishes to create new rights enforceable under § 1983, it must do so in clear and unambiguous terms -- no less and no more that what is required for Congress to create new rights enforceable under an implied private right of action.  FERPA's nondisclosure provisions contain no rights-creating language, they have an aggregate, not individual, focus, and they serve primarily to direct the Secretary of Education's distribution of public funds to educational institutions.  They therefore create no rights enforceable under § 1983.

*Id.* at 290, 122 S. Ct. at 2279.

The provisions of HOPWA are similar to those of FERPA in that they are focused on distributing public funds to grantees and recipients for use in eligible activities.  There is no "rights-creating" language contained in the statute, and there are no provisions that have the individual focus necessary to create enforceable rights.  For these reasons, Plaintiff's attempt to bring a cause of action directly under the HOPWA statutes fails.

Plaintiff's citation to the HOPWA regulations is similarly unavailing.  In *Save Our Valley v. Sound Transit*, 335 F.3d 932 (9th Cir. 2003), the court held that a federal agency's regulations cannot create individual rights enforceable through § 1983.  The Ninth Circuit relied upon the United States Supreme Court decisions in *Alexander v. Sandoval*, 532 U.S. 275 (2001), and *Gonzaga University v. Doe*, *supra*.  The Ninth Circuit observed that the Supreme Court had consistently held that federal rights may only be created by Congress through statutes, and not by agencies through regulations.  335 F.3d at 939.

The Ninth Circuit distinguished the Supreme Court decision in *Wright v. City of Roanoke*

*Redevelopment and Housing Authority*, 479 U.S. 418 (1987) wherein the Supreme Court held that plaintiffs could maintain a suit under § 1983 for violation of the statute and HUD regulations regarding rent ceilings.  The Ninth Circuit stated that, in its view, the *Wright* Court permitted plaintiff to maintain a § 1983 suit based upon rights created by the statute, rather than the HUD regulations, and only looked to the regulations to interpret the scope of the right that Congress had conferred through the statute.  335 F.3d at 939-40.

Thus, assuming, *arguendo*, that Plaintiff could point to language in the HOPWA regulations that could potentially create an enforceable right, it would not matter because the appropriate focus must be on the statute itself.  Furthermore, even if HOPWA created a right that was enforceable under § 1983, the undisputed facts in the record show that Defendant's actions at all times were authorized by, and in compliance with, the HOPWA statute and regulations.  As previously discussed, 24 CFR § 84.53, grants HUD and IHFA "the right of timely and unrestricted access to any books, documents, papers, or other records of recipients that are pertinent to the awards, in order to make audits, examinations, excerpts, transcripts and copies of such documents."  That regulation is directly related to the provisions in the statute that require funds to be used only for eligible activities.  Based upon the undisputed facts in the record, Plaintiff's claims that are purportedly brought pursuant to the HOPWA statutes and regulations must be dismissed.

**Right to Privacy.**

In the Fourth Claim for Relief, Plaintiff claims that:

> Defendants have no proper governmental interest or justification in seeking or requiring the disclosure of confidential documents and information in personal matters, including, but not limited to, case management, medical, psychological, and mental health records, which outweighs the privacy of persons involved.

(Complaint, ¶ 64, Docket No. 1.)

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 13

There is a constitutionally protected privacy interest in avoiding disclosure of personal matters, including confidential medical information.  *Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F.3d 1260, 1269 (9th Cir. 1998).  The right to "informational privacy" is not absolute.  It is a conditional right which may be infringed based upon a proper governmental interest.  The court must weigh the competing interests to determine whether the government may properly disclose private information.  *In re: Crawford*, 194 F.3d 954, 959 (9th Cir. 1999).  While most of the case law defining informational privacy involves the disclosure of confidential information to third parties, we assume that the same analysis would apply to a claim of unauthorized access to confidential information.  Relevant factors to be considered include:

> The type of record requested, the information it does or might contain, the potential for harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

*Id*. (quoting *Doe v. Attorney General*, 941 F.2d 780, 796 (9th Cir. 1991)).  The list is not exhaustive, and considerations vary from case to case.  The government has the burden of showing that the use of the information will advance a legitimate state interest and that its actions are narrowly tailored to meet the interest.  *Id.*

In *Crawford*, plaintiff challenged the bankruptcy court requirement that he, as an attorney before that court, disclose his social security number.  The Ninth Circuit recognized plaintiff's informational privacy interest and the risk of identity theft.  However, the court determined that the possibility of identity theft could not overcome the importance of the government's interest in preventing fraud and unauthorized practice of law in bankruptcy proceedings.  *Id*. at 960.

In the present case, even if we assume that applicants under the HOPWA program have a

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 14

privacy interest that is potentially implicated by HUD and IHFA's access to records concerning the services they receive, that interest is outweighed by the need to administer the grant funds in accordance with the applicable statutes and regulations.  HUD and IHFA have a compelling interest in access to the confidential information based upon the requirement that they verify the eligibility of applicants and services.  The information is not made public, as in *Crawford*.  Instead, we are concerned only with HUD and IHFA's access to the information and not the disclosure of the information to third parties.  The access to the confidential records is narrowly tailored to serve that purpose as demonstrated by the requirement that the information be kept confidential by IHFA and HUD both under the applicable regulations, and under IHFA's internal regulations.  (SMF, ¶ 6.)

### Due Process Claims.

In the Fifth Claim for Relief, Plaintiff alleges that the Defendants violated its constitutionally protected property interest in its contracts with IHFA by terminating the contracts without providing procedural due process protection.  (Complaint, ¶¶ 67-71, Docket No. 1.)  Plaintiff's due process claims fail for two reasons.  First, the availability of a state law breach of contract cause of action satisfies the requirements of due process, and second, Plaintiff did not have a constitutionally protected property interest in renewal of the contracts.

The United States Supreme Court in *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 121 S. Ct. 1446 (2001), held that G & G's property interest in its claim for payments under a contract with the state could be fully protected by an ordinary breach of contract suit.  The Court contrasted cases in which the government deprived persons or entities of ownership of real or personal property, or to pursue gainful occupation.

> Unlike those claimants, respondent has not been denied any present entitlement.  G & G has been deprived of payment that it contends it is owed under a contract, based on the State's determination that G &

> G failed to comply with the contract's terms.  G & G has only a claim
> that it did comply with those terms and therefore that it is entitled to
> be paid in full.  Though we assume for purposes of decision here that
> G & G has a property interest in its claim for payment, *see supra,* at
> 1450, it is an interest, unlike the interest discussed above, that can be
> fully protected by an ordinary breach of contract suit.

*Id*. at 196, 121 S. Ct. at 1451.

The Ninth Circuit Court of Appeals subsequently applied *Lujan* in *DeBoer v. Pennington*, 287 F.3d 748 (9th Cir. 2002).  In *DeBoer*, the issue was the City's termination of plaintiff's contract with the city.  The Ninth Circuit held:

> In the circumstances presented here, the DeBoers, like the plaintiff in
> *Lujan*,  are fully protected by an ordinary breach of contract suit.
> Although the deprivation to the DeBoers, being the total termination
> of the contract, is greater than that suffered by the plaintiff in *Lujan*,
> the interest injured is still merely a contractual interest and the injury
> to the DeBoers is no more than a contractual injury.  In other words,
> the contract here is not giving rise to a greater interest than the
> contract itself, and so a wrongful termination of the contract may be
> fully remedied by a common law breach of contract claim.

*Id.* at 750.

Based upon the holdings in *Lujan* and *DeBoer*, Plaintiff's cause of action based upon procedural due process must be dismissed.  Plaintiff's due process rights are adequately protected by the state law cause of action for a breach of contract.

Alternatively, the court may dismiss Plaintiff's due process claim because it did not have the property interest in the renewal of the contracts.  Whether a plaintiff possesses a property interest is a question to be determined under state law.  The contracts between IHFA and IAF which were in effect in the relevant time period expired at the end of June 2002.  The contracts were never terminated, but instead were allowed to expire.  The contracts do not contain any provisions concerning renewal.  Plaintiff did not have any property interest in renewal of the contracts and

therefore no constitutionally protected right was implicated when they were allowed to expire.

This is essentially the same decision that the Eleventh Circuit Court of Appeals reached in *Economic Development Corp. v. Stierheim,* 782 F.2d 952 (11th Cir. 1986).  The plaintiff in *Stierheim* alleged that the county violated its due process rights by terminating its contract to promote economic development under a HUD grant program.  The contract provided that the county could terminate the agreement in two ways: (1) if the plaintiff failed to perform adequately its obligations, or (2) at will, provided that it gave plaintiff ten working days notice.  The county invoked the for-cause termination provision because an audit disclosed that plaintiff had co-mingled and diverted funds.  Plaintiff filed a § 1983 suit against the county and Stierheim.  In addressing the due process claim, the court held that the plaintiff did not have a property interest in its contract with the county because of the fact that the contract could be terminated without cause.  "Thus, [plaintiff] had no assurances that its contract would still be in force for more than the next two weeks.  This lack of an entitlement to the continued existence of its contractual relationship with the county prevented [plaintiff] from acquiring a property interest in its contract with the county."  *Id.* at 954.

Here, the contracts by their own terms expired on June 30, 2002.  Plaintiff possessed no legitimate expectation that the contracts would be renewed and therefore did not possess a property interest in any potential future contracts.  For these reasons, Plaintiff's due process claim must be dismissed.

### IHFA Did Not Breach the Contract with IAF.

IAF alleges that IHFA's "termination" of the contracts constitutes a breach of the contracts.  (Complaint, ¶ 73, Docket No. 1.)  The undisputed facts in the summary judgment record show that the contracts between IAF and IHFA were not terminated, but instead expired.  (SMF, ¶ 24.)  There can be no claim for a wrongful termination of a contract when no termination occurred.  As

previously discussed, IAF did not have any reasonable expectation that the contracts would be renewed.

IAF further alleges that IHFA breached its contract with IAF by refusing to make payments requested by IAF despite the fact that IAF refused to allow access to client files.  The record shows that IHFA was instructed by HUD to withhold payments for services for which IAF refused to allow HUD and IHFA access to files for the purpose of verifying that grant funds were used for eligible services and eligible persons.  (*Id.*, ¶¶ 5, 16, 17.)  Insisting upon full access to records was in compliance with federal regulations including 24 CFR § 84.53.[5]

Further, the contracts themselves specifically and unambiguously provide that, "The recipient agrees to make available to HUD or IHFA any requested information needed to conduct program audits."  (SMF, ¶ 4, Exhs. D and E.)

> Questions of contract interpretation and enforcement are normally the sole province of the courts. *See Afton Energy, Inc. v. Idaho Power Co.*, 122 Idaho 333, 337, 834 P.2d 850, 854 (1992). Interpretation and legal effect of an unambiguous contract are questions of law over which this Court exercises free review.  *See Hanks v. Sawtelle Rentals, Inc.*, 133 Idaho 199, 202-03, 984 P.2d 122, 125-26 (1999); *First Security Bank of Idaho, N.A. v. Murphy*, 131 Idaho 787, 791, 964 P.2d 654, 658 (1998).  In construing a written instrument, this Court must consider it as whole and give meaning to all provisions of the writing to the extent possible.  *See Magic Valley Radiology, P.A. v. Professional Business Services, Inc.* 119 Idaho 558, 565, 808 P.2d 1303, 1310 (1991).

*Idaho Power Co. v. Cogeneration, Inc.*, 134 Idaho 738, 748, 9 P.3d 1204, 1214 (2000).

The undisputed facts in the record demonstrate that IHFA's withholding of certain payments,

---

[5]  IAF may not contend that the regulations do not apply to the breach of contract claim because existing law is deemed to be a part of every written contract in the state of Idaho.  *Zattiero v. Homedale School Dist. No. 370*, 137 Idaho 568, 571, 51 P.3d 382, 385 (2002).

as directed by HUD, was based upon IAF's failure to abide by the clear terms of the contracts

themselves, and the applicable regulations.

> If a breach of contract is material, the other party's performance is excused. *Ervin Const. Co. v. Van Orden*, 125 Idaho 695, 700, 874 P.2d 506, 511 (1993); *Enterprise, Inc. v. Nampa City,* 96 Idaho 734, 740, 535 P.2d 729, 735 (1975); *Ujdur v. Thompson,* 126 Idaho 6, 878 P.2d 180 (Ct. App. 1994); *Mountain Restaurant Corp. v. ParkCenter Mall Associates*, 122 Idaho 261, 265, 833 P.2d 119, 123 (Ct. App. 1992).  "A substantial or material breach of contract is one which touches the fundamental purpose of the contract and defeats the object of the parties in entering into the contract."  *Ervin Const. Co.,* 125 Idaho at 699, 874 P.2d at 510.  *See also Enterprise, Inc.,* 96 Idaho at 740, 536 P.2d at 735; *Ujdur*, 126 Idaho at 9, 878 P.2d at 183.

*J.P. Stravens v. City of Wallace,* 129 Idaho 542, 545, 928 P.2d 46, 49 (Ct. App. 1996).

In *Stravens*, the court found that Stravens had materially breached its contract with the City

of Wallace, excusing the city from making any further payments under the contract.  Stravens had

contracted with the city to render services related to a downtown revitalization project, including the

application for a grant.  The grant application was rejected because of inadequacies in the

application.  Stravens' failure to complete the grant application in a professional manner was a

material breach of the contract that barred plaintiff's breach of contract claim.  *Id.* at 544-45, 928

P.2d at 48-49.

In the present case, the object of the contracts between IHFA and IAF was the administration

of the grant funds allocated by HUD under the HOPWA program.  IHFA's function under the

contracts was to insure that the funds were used appropriately pursuant to the applicable statutes and

regulations.  Once IAF refused to allow IHFA and HUD access to files that were needed to verify

the eligibility of clients and services rendered, IAF effectively frustrated the object of the contract.

Without the ability to properly verify eligibility of clients and services, IHFA could not meet its

obligations under its contract with HUD and under the applicable statutes and regulations which

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 19

require that grant funds only be used for authorized purposes.  IAF's breach of contract claim fails as a matter of law because the undisputed facts in the record show that IAF materially breached the contract by failing to provide the required access to records to IHFA, in violation of section 15 of the contracts and the applicable regulations, including 24 C.F.R. § 84.53(e).

## CONCLUSION

The facts reflected in the summary judgment record show that IHFA at all times was acting pursuant to the HOPWA statute and regulations, and the specific instructions of HUD in requiring access to client files for the purpose of verifying the eligibility of applicants and services.  IHFA's actions in that regard cannot be considered discrimination because all applicants were treated similarly, and IHFA was motivated by a legitimate, nondiscriminatory purpose.  Any privacy interest of applicants that may be implicated by IHFA's access to the records is outweighed by IHFA's interest in fulfilling its obligation under federal law to verify the proper use of the grant funds.  Further, IHFA's withholding of certain payments, at the specific direction of HUD, was based upon IAF's refusal to allow the access to records that is required by the contracts and by the applicable regulations.

For the foregoing reasons, the Defendants respectfully submit that their Motion for Summary Judgment should be granted, and that all of Plaintiff's claims should be dismissed.

DATED this 5th day of August, 2005.

MOORE & BASKIN, L.L.P.


By: _____/s/_____
    MARTIN C. HENDRICKSON, of the firm
    Attorneys for Defendants


MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 20

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY That on this 5th  day of August, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:


Howard A. Belodoff
Belodoff Law Office
1524 W. Hays Street, Suite 2
Boise, ID 83702
hbelodoff@hotmail.com

Maria E. Andrade
Attorney at Law
250 S. 5th, Suite 660
Boise, ID 83702
maria@andradelegal.com
mandrade@huntleypark.com


/s/
_____
Martin C. Hendrickson