Michael W. Moore (ISBN 1919)
Martin C. Hendrickson (ISBN 5876)
MOORE & BASKIN, L.L.P.
Post Office Box 6756
Boise, Idaho  83707
Telephone:  (208) 336-6900
Facsimile: (208) 336-7031

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO AIDS FOUNDATION, INC., | ) |
| Plaintiff, | ) Case No: CIV 04-155-S-BLW |
| vs. | ) **DEFENDANTS' STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| IDAHO HOUSING & FINANCE ASSOCIATION, an independent public body corporate and politic, GERALD M. HUNTER, JULIE H. WILLIAMS, AND EARL COOK, in their individual capacities, | ) |
| Defendants. | ) |

COME NOW the Defendants, by and through their attorneys of record, Moore & Baskin, L.L.P., and, pursuant to Local Rule 7.1(b)(1), hereby submits their Statement of Material Facts in support of their Motion for Summary Judgment which has been filed contemporaneously herewith.

1.  The Defendant Idaho Housing and Finance Association (IHFA) is an independent public body corporate created pursuant to Idaho Code §§ 67-6201 et seq.  IHFA receives and manages grant funds from the United States Department of Housing and Urban Development (HUD) under the Housing Opportunities for People with AIDS Act (HOPWA) for the purpose of providing

DEFENDANTS' STATEMENT OF MATERIAL FACTS - 1

housing assistance and supportive services to persons diagnosed with AIDS and their families. (Affidavit of Julie Williams, ¶ 2.)

2.  IHFA applied for and received a grant from HUD under HOPWA in 2000 in the amount of $1,299.837. The grant agreement required IHFA to ensure that each "Project Sponsor" would agree to operate in accordance with the applicable HUD regulations, which were stated to be 42 USC § 12901 et. seq., 24 CFR 574, and 24 CFR 91.  (*Id.*, ¶ 3, Exh. A.)

3.  IHFA entered into two contracts with the Plaintiff, Idaho Aids Foundation (IAF), to provide services under the HOPWA grant.  The contracts specified that payments would be made on a reimbursement basis for eligible activities following a proper request supported by source documentation.  The contracts incorporated the provisions of 42 USC § 12901 et. seq., 24 CFR 574, and 24 CFR 91.  The contracts further provided that IHFA had the right to monitor and make periodic inspections of the project and all related books and records.  (*Id.*, ¶ 4, Exhs. B and C.)

4.  The IHFA-IAF contracts were subsequently renewed in 2001.  The 2001 contracts required that IAF make available to HUD or IHFA any requested information needed to conduct program audits.  (*Id.*, ¶ 5, exhs. D and E.)

5.  In the summer of 2001, IHFA informed IAF that it would be conducting an on-site monitoring visit for the purpose of verifying the eligibility of clients and services.  The monitoring would include review of source documentation, including client files, to verify recipient eligibility and that the funds were expended for eligible activities.  IAF refused to allow such access, citing a concern for confidentiality.  IHFA requested guidance from HUD on the need for access to source documentation, including client files.  In an e-mail to HUD Financial Analyst Jan Olson, IHFA Grant Programs Manager Earl Cook described his visit, including the records to which he had requested access and was denied.

DEFENDANTS' STATEMENT OF MATERIAL FACTS - 2

> After reviewing the randomly selected client files, to match services reported in the tracking file with those services actually bill [sic], I requested to spot check the actual file containing the notes from the case manager/psychologist to determine that an encounter did actually occur on the date and times reported on the tracking form. I made it clear that I was not going to read the notes, but wanted to see the date, time, and signature of the case manager/psychologist performing the service. The Grantee claimed that providing me with access without a release from the client would violate law, and would jeopardize their license.

(*Id.*, ¶ 6, Exh. F.) Mr. Olson consulted with several other HUD officials, including attorney Don Miller, HOPWA Program Director Harry Garte, and Director of the Office of HIV/AIDS Housing David Vos, and concluded that HUD and IHFA must have "full and unfettered access to client files (including seeing the names of clients)." (*Id.*, ¶ 7, Exhs. F, G and H.) HUD further directed that IHFA was not authorized by HUD to release any funds to IAF in the absence of such access. (*Id.*, Exh. G.) This information was communicated to IAF by letter from IHFA President and Executive Director Gerald Hunter to Mark Welch dated September 19, 2001. In the letter, Mr. Hunter informed Mr. Welch that IHFA had consulted with HUD and confirmed that access to client files was essential in order to substantiate that supportive services were actually provided as reflected in the bills. Mr. Hunter further informed Mr. Welch that HUD ordered that further payments to IAF be frozen until the issue of access was resolved. Finally, Mr. Hunter suggested that Mr. Welch speak directly with Mr. Olson of HUD. (*Id.*, ¶ 8, Exh. J.)

6. On September 25, 2001, IHFA provided its Monitoring Visit Report to IAF. The Report contained, as Finding #1, that IHFA was not able to determine that IAF conducted eligible activities consistent with 24 CFR 574.300(b), because IHFA was not permitted to review source documentation in the form of a spot-check of random files. In that finding, IHFA related to IAF that HUD had directed that full access was required even in the absence of a release, and that IHFA was

DEFENDANTS' STATEMENT OF MATERIAL FACTS - 3

bound by 24 CFR 574.440 to keep all information obtained during the review confidential.[1]  The Report contained a corrective action for Finding #1 directing that IAF provide HUD and IHFA full access to files in order to determine the provision of eligible services.  (*Id.*, ¶ 9 Exh. K.)

  7. During a telephone conference between Jan Olson of HUD and Mark Welch of IAF on September 26, 2001, an agreement was reached between HUD and IAF whereby HUD would authorize payment of the funds requested by IAF under the 2000 contracts based upon review of records with personal information redacted, and full access would be required for all future payments to be made under the 2001 contracts.  Pursuant to the agreement reached between Mr. Olson and Mr. Welch, IAF would obtain releases from its clients acknowledging that such records may be reviewed by HUD or IHFA.  The agreement reached between HUD and IAF was communicated to IHFA by Mr. Olson.  (*Id.*, ¶ 10, Exh. L.)  The agreement was also confirmed by IAF in a letter from IAF attorney John Janis to Gerald Hunter dated September 29, 2001.  In that letter, Mr. Janis, on behalf of IAF, proposed the following solution, "IAF will from some date forward have clients sign a release letting them know that federal regulators and their agents will have access to their files." (*Id.*, ¶ 11, Exh. M.)

  8. IHFA modified the corrective action to the Monitoring Visit Report in accordance with the agreement.  IHFA informed IAF of the modification and confirmed that full access was expected in the future by a letter from Julie Williams to Mark Welch dated October 1, 2001.  (*Id.*, ¶ 12, Exh. N.)  By letter dated October 4, 2001, IHFA tendered payment to IAF for services rendered through June 30, 2001, based upon the agreement reached between Mr. Olson and Mr. Welch that allowed for verification based upon review of redacted files.  In that letter, Ms. Williams confirmed

---

[1] Confidentiality of information regarding applicants is addressed by IHFA's Personnel Policy in addition to 24 CFR 574.440. (Williams Aff., ¶ 29, Exh. II.)

DEFENDANTS' STATEMENT OF MATERIAL FACTS - 4

to Mr. Welch that IHFA's understanding of the agreement was that IAF would obtain releases from its clients immediately, and that "IHFA shall expect to have full, unrestricted access to client files for services rendered after October 4, 2001." (*Id.*, ¶ 13, Exh. O.)

9. Despite the agreement reached between Mr. Olson and Mr. Welch, as confirmed by Mr. Janis, IAF did not implement the use of a release or acknowledgment form indicating that clients were aware of the possibility that HUD or IHFA may require access to records containing confidential information. Furthermore, IAF continued to refuse to allow full access in the absence of client consent. In a letter dated November 1, 2001, IHFA again confirmed the terms of the agreement reached between HUD and IAF and informed IAF that it would have to comply with the requirements for access to records in order to receive reimbursement for any services rendered after October 4, 2001. (*Id.*, ¶ 14, Exh. P.) Another letter, dated November 7, 2001, was sent by IHFA Grant Programs Manager Earl Cook to Mr. Welch that again confirmed the agreement to accept redacted records for services provided before October 4, 2001, and that IAF had agreed to secure releases to allow complete access for services rendered after that date. Mr. Cook identified the specific files that needed to be provided in redacted format. (*Id.*, Exh. Q.)

10. IHFA and IAF attorneys exchanged letters regarding this issue in November of 2001. IAF's position was that the contract did not require IAF to allow IHFA to access confidential records of its clients, and that IAF would only be willing to consider having future clients execute releases. (*Id.*, ¶ 15, Exh. R.) IHFA stated its position, based upon the prior agreement reached between Olson and Welch, and specific instructions to IHFA from HUD, that redacted records would be accepted as verification for services rendered up to October 4, 2001, but that full access to records would be expected for services rendered after that date. IHFA further informed IAF that full access to records was required under section 15 of the 2001 contracts. (*Id.*, Exh. S.)

DEFENDANTS' STATEMENT OF MATERIAL FACTS - 5

11.     IHFA and IAF representatives continued to attempt to resolve these issues in December 2001 and January 2002. On December 20, 2001, a meeting was held attended by representatives of HUD, IHFA and IAF. At that meeting, it was agreed that a HUD representative would complete monitoring of four redacted files from 2000, that an IHFA representative would have access to redacted files for services rendered between July and October of 2001, and that IAF would provide an acceptable release that would allow HUD and IHFA the necessary access because Mr. Welch was not willing to use the release that had been proposed by IHFA. IHFA's attorney provided a summary of the issues addressed at the meeting to IAF's attorneys. (*Id.*, ¶ 16, Exh. T.) IAF's attorneys replied by letter dated December 28, 2001, and indicated that the summary of the issues was accurate, but that IAF was not willing to reach agreement on those matters unless payments were unfrozen. (*Id.*, Exh. U.)

12.     On January 4, 2002, Earl Cook wrote to IAF Director Mark Welch and summarized the outstanding issues and records that needed to be reviewed by IHFA. With respect to psychiatric services, Mr. Cook indicated that he would only need to review redacted copies of third party invoices for providers who were not affiliated with IAF. In order to verify mental health services provided directly by IAF, Mr. Cook stated that he would need to review redacted copies of the case notes in order to confirm that the time spent on such services supported the number of hours billed. (*Id.*, Exh.V.)

13.     A monitoring visit to IAF was conducted by Earl Cook on January 9, 2002, and, as a result, IHFA issued a check to IAF for $25,161.85 for services provided in July through September of 2001. IHFA again reiterated to IAF at that time that IAF would need to allow HUD and IHFA full access to the records, without redaction, in the future. (*Id.*, ¶ 17, Exh. W.)

DEFENDANTS' STATEMENT OF MATERIAL FACTS - 6

14. A visit to IAF was planned for February 8, 2002, by IHFA and Jan Olson of HUD. In a letter confirming the visit, Doug Carlson (HUD Director of Community Planning and Development) confirmed that HUD and IHFA were entitled to access to IAF's files in order to confirm eligibility pursuant to 24 CFR Part 84.53(e), and that such access was required to verify the eligibility of recipients and that accounting records are supported by source documentation as required by 24 CFR Part 84.21(a)(7)[2]. (*Id.*, ¶ 18, Exh. X.)

15. The HUD visit to IAF was cancelled due to a letter received by HUD from an attorney representing IAF which raised questions about the propriety of using a release. IHFA wrote to Mr. Carlson at HUD seeking direction as to the ability of IHFA to release funds to IAF based upon monitoring reviews of redacted files, or if full access to the records was required. (*Id.*, ¶ 19, Exh. Y.)

16. Mr. Carlson responded to IHFA's request for clarification by letter dated March 25, 2002. In that letter, Mr. Carlson summarized the issue, including the agreement reached between Mr. Olson and Mr. Welch:

> On September 26, 2001, the executive director of IAF telephoned Mr. Olson to protest the findings in the monitoring letter. Mr. Olson agreed to a compromise which allowed redacted records up to that point but required that clients sign release forms for services henceforth. IAF was instructed to immediately inform their service providers of that requirement for continued funding. The compromise was communicated to your organization by Mr. Olson.

(*Id.*, ¶ 20, Exh. Z.) Mr. Carlson further confirmed that, unless directed otherwise by the Office of HIV/AIDS Housing, "IHFA is not authorized to make any payments to IAF for services which can

---

[2] The citation to 24 CFR Part 84.21(a)(7) by Mr. Carlson appears to have been a typographical error because no such subpart exists. However, Part 84.21(b)(7) directs that a Recipient's financial management system shall provide for "Accounting records including cost accounting records that are supported by source documentation."

DEFENDANTS' STATEMENT OF MATERIAL FACTS - 7

not be verified by reviewing source documents; in particular confidential client records." *Id.* Mr. Carlson's letter was forwarded to IAF by IHFA. (*Id.*, Exh. AA.)

17. By letter dated March 28, 2002, David Vos, the Director of HUD's Office of HIV/AIDS Housing, responded to IAF's claim that allowing HUD or IHFA access to confidential client records was not required and would violate federal law. Mr. Vos explained that the applicable statutory and regulatory provisions required that HUD and IHFA be allowed full access to records, including confidential files, in order to confirm eligibility of recipients and that funds were used for eligible services. Mr. Vos specifically reaffirmed the position of IHFA communicated to IAF in Ms. Williams' October 4, 2001 letter that no funds could be disbursed in the absence of access to the requested records. (*Id.*, ¶ 21, Exh. BB.)

18. By letter dated April 9, 2002, Ms. Williams informed IAF that IHFA would need to conduct a monitoring visit to verify eligibility of pending billings, including access to source documentation. (*Id.*, ¶ 22, Exh. CC.)

19. On April 19, 2002, IHFA received a letter from an attorney representing IAF. In that letter, IAF maintained that it had complied with its obligations under the contract and federal statutes and regulations to provide necessary documentation. IAF requested additional details on the records that IHFA would need to review in order to release payments and a specific proposal for a monitoring visit. (*Id.*, ¶ 23, Exh. DD.)

20. IHFA responded by a letter from Mr. Kyte dated April 24, 2002. In that letter, IHFA summarized the communications exchanged amongst IHFA, IAF, and HUD that occurred in late 2001 and early 2002, including the agreement reached between Mr. Olson and Mr. Welch in late September, and the meeting that was held in December involving representatives of HUD, IHFA and IAF. IHFA reiterated that the payment to IAF of the outstanding requests was conditioned on the

DEFENDANTS' STATEMENT OF MATERIAL FACTS - 8

requirement of unrestricted file access, as addressed by HUD in the letters from Mr. Carlson and Mr. Vos.  (*Id.*, ¶ 24, Exh. EE.)

21. IAF responded to the April 24, 2002 letter by a letter from Mr. Belodoff dated May 8, 2002.  In that letter, IAF requested that IHFA provide authority for the proposition that IHFA was entitled to access to confidential records, including medical and clinical information, and any authority for requiring IAF to obtain a release from its clients for the disclosure of such information.  IAF also requested guidance on how to deal with any client who refused to consent to such disclosure, and demanded that IHFA agree to indemnify IAF against any claim resulting from such disclosure.  (*Id.*, ¶ 25, Exh. FF.)

22. IHFA again responded to IAF via letter, dated June 24, 2002.  In that letter, Mr. Kyte explained that the monitoring and auditing requirements that IHFA was insisting upon were based on federal law and directives from HUD.  Mr. Kyte described the statutory and regulatory authority for requiring such access, as well as the purpose for such access.  Mr. Kyte also explained that any information disclosed during the monitoring process would be kept confidential by IHFA and HUD consistent with 24 CFR 574.440.  IHFA addressed IAF's concerns under the contract by citing again to section 15 of the 2001 contracts which requires IAF to make available to HUD or IHFA any requested information necessary to conduct program audits.  With respect to the issue of a release, Mr. Kyte explained that HUD's position was that HUD and IHFA are entitled to access to the records even without a release, but that IAF could use a release if it believed one to be necessary.  Mr. Kyte acknowledged in the letter that IHFA was still holding invoices from IAF and offered to pay the invoices provided IAF supply the documentation necessary to confirm recipient and income eligibility and the eligibility of activities as previously requested in IHFA's April 24, 2002 letter.  Mr. Kyte clarified that IHFA was not seeking access to any physician notes, but only to records that

DEFENDANTS' STATEMENT OF MATERIAL FACTS - 9

would establish a recipient's HIV status, income eligibility, and proof of services rendered. (*Id.*, ¶ 26, Exh. GG.)

23. By letter dated February 25, 2003, David Vos, Director of the Office of HIV/AIDS Housing for HUD, confirmed to IHFA that IHFA and HUD must be allowed to have access to appropriate documentation to confirm that project sponsors are providing eligible services to eligible persons. (*Id.* ¶ 27, Exh. HH.)

24. The contracts between IHFA and IAF which were executed in 2001 were not renewed and therefore expired on June 30, 2002. IHFA still has not been provided with access to the records necessary to confirm the eligibility of recipients and services reflected in outstanding invoices from IAF. (*Id.*, ¶ 28.)

DATED this 5th day of August, 2005.

                    MOORE & BASKIN, L.L.P.


By: _____/s/_____
     MARTIN C. HENDRICKSON, of the firm
     Attorneys for Defendants

DEFENDANTS' STATEMENT OF MATERIAL FACTS - 10

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY That on this 5th day of August, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

    Howard A. Belodoff
    Belodoff Law Office
    1524 W. Hays Street, Suite 2
    Boise, ID 83702
    hbelodoff@hotmail.com

    Maria E. Andrade
    Attorney at Law
    250 S. 5th, Suite 660
    Boise, ID 83702
    maria@andradelegal.com
    mandrade@huntleypark.com


                                                    /s/
                                      Martin C. Hendrickson

DEFENDANTS' STATEMENT OF MATERIAL FACTS - 11