Michael W. Moore (ISBN 1919)
Martin C. Hendrickson (ISBN 5876)
MOORE, & BASKIN, L.L.P.
Post Office Box 6756
Boise, Idaho 83707
Telephone: (208) 336-6900
Facsimile: (208) 336-7031

Attorneys for Defendants

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| IDAHO AIDS FOUNDATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No: CIV 04-155-S-BLW |
| | ) | |
| vs. | ) | **AFFIDAVIT OF JULIE H. WILLIAMS** |
| | ) | |
| IDAHO HOUSING & FINANCE | ) | |
| ASSOCIATION, an independent public body | ) | |
| corporate and politic, GERALD M. | ) | |
| HUNTER, JULIE H. WILLIAMS, AND | ) | |
| EARL COOK, in their individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

STATE OF IDAHO )
              : ss:
County of Ada )

      COMES NOW JULIE H. WILLIAMS, being first duly sworn upon oath, and states and affirms the following:

1.    I am Vice President, Community Housing Services for the Idaho Housing and Finance Association (IHFA) and have held this position since December 1992. This affidavit is based

AFFIDAVIT OF JULIE H. WILLIAMS - page 1

upon my own personal knowledge and/or upon records kept by IHFA of acts or events made at or near the time by, or from information transmitted by, a person with knowledge of the information set forth in such records, in the course of regularly conducted business activity as a regular practice of IHFA.

2.     The Defendant Idaho Housing and Finance Association (IHFA) is an independent public body corporate created pursuant to Idaho Code §§ 67-6201 et seq.  IHFA receives and manages grant funds under the Housing Opportunities for People with AIDS ACT (HOPWA) from the United States Department of Housing and Urban Development (HUD) for the purpose of providing housing assistance and supportive services to persons diagnosed with AIDS and their families.

3.     IHFA applied for and received a HOPWA grant from HUD in 2000 in the amount of $1,299.837. A copy of the grant agreement is attached hereto as Exhibit A.

4.     IHFA executed two contracts with the Idaho Aids Foundation (IAF) to provide services under the HOPWA grant.  Copies of the contracts are attached hereto as Exhibits. B and C. The first contract (Exh. B) provided funds for case management, transportation, emergency assistance and housing information services.  The second (Exh. C) provided funds for dental and psychiatric services.

5.     The IHFA-IAF contracts were subsequently renewed in 2001.  The 2001 contracts required that IAF make available to HUD or IHFA any requested information needed to conduct program audits, and that HUD or IHFA could make periodic, on-site inspections for program audits.  The contracts also required IAF to agree to spend grant funds for legitimate activities as set forth in 24 CFR 574. Copies of the 2001 contracts are attached hereto as Exhibits D

AFFIDAVIT OF JULIE H. WILLIAMS - page 2

and E.

6.   In the summer of 2001, IHFA informed IAF that it would be conducting an on-site monitoring visit for the purpose of verifying the eligibility of clients and services. The monitoring would include examination of source documentation, including client files, to verify recipient eligibility, and that the funds were expended for eligible activities. IAF refused to allow such access, citing a concern for confidentiality. IHFA requested guidance from HUD on the need for access to source documentation, including client files. Attached hereto as Exhibit F is a copy of a string of e-mail messages between IHFA and HUD, including a message dated September 6, 2001, from IHFA Grant Programs Manager Earl Cook which describes the visit to IAF, and the denial of access as follows:

> After reviewing the randomly selected client files, to match services reported in the tracking file with those services actually bill [sic], I requested to spot check the actual file containing the notes from the case manager/psychologist to determine that an encounter did actually occur on the date and times reported on the tracking form. I made it clear that I was not going to read the notes, but wanted to see the date, time, and signature of the case manager/psychologist performing the service. The Grantee claimed that providing me with access without a release from the client would violate law, and would jeopardize their license.

7.   In response to IHFA's inquiries, HUD indicated that full access was necessary for auditing the program for compliance with the grant terms, and that IHFA was not authorized to release any funds to IAF in the absence of such access. Attached hereto as Exhibit G is a copy of an e-mail message from Jan Olson of HUD dated September 14, 2001, wherein Mr. Olson instructs IHFA not to "make payments for any service you are refused access to records for." Attached hereto as Exhibit H is a copy of an e-mail message from Mr. Olson

AFFIDAVIT OF JULIE H. WILLIAMS - page 3

to Mr. Cook dated September 17, 2001, wherein Mr. Olson indicates that he has spoken with HUD attorney Don Miller and confirmed that denial of full access to records is a breach of contract by IAF and that a release is not necessary for such access by HUD and IHFA. Also included in Exhibit H is a copy of an e-mail from Harry Garte, HUD HOPWA Program Manager, to Mr. Olson dated September 11, 2001, wherein Mr. Garte confirmed that IHFA was required to monitor IAF's activities and draws of HOPWA funds, and that IHFA could not do so without access to "client information and details." Attached hereto as Exhibit I is a copy of an e-mail message from Mr. Olson dated September 19, 2001, confirming (based upon direction from the Director of HUD's Office of HIV/AIDS Housing) that HUD and IHFA must have "full and unfettered access to client files (including seeing the names of clients). End of story."

8.      HUD's instructions were communicated to IAF by letter from IHFA President and Executive Director Gerald Hunter to Mark Welch dated September 19, 2001, a copy of which is attached hereto as Exhibit J. In the letter, Mr. Hunter informed Mr. Welch that IHFA had consulted with HUD and confirmed that access to client files was essential in order to substantiate that supportive services were actually provided as reflected in the bills. Mr. Hunter further informed Mr. Welch that HUD ordered that further payments to IAF be frozen until the issue of access was resolved. Finally, Mr. Hunter suggested that Mr. Welch speak directly with Mr. Olson of HUD.

9.      On September 25, 2001, I sent a letter to Mark Welch and a copy of IHFA's Annual Monitoring Visit Report, which are attached hereto as Exhibit K. The Report contains the finding that IHFA was not able to determine that IAF conducted eligible activities consistent with 24 CFR 574.300(b), because IHFA was not permitted to review source documentation

AFFIDAVIT OF JULIE H. WILLIAMS - page 4

in the form of a spot-check of random files. The Report contained a corrective action directing that IAF provide HUD and IHFA full access to files in order to determine the provision of eligible services.

10. Despite the confirmation from HUD that full access was required for monitoring the use of grant funds, IAF continued to refuse to allow IHFA and HUD access to client files on the ground that IAF's clients had not consented to disclosure of their confidential information. IAF's position was that it would have to obtain a release from its clients in order to grant such access. Following further discussions amongst IAF, IHFA, and HUD, IHFA was informed by HUD that, pursuant to an agreement reached between Jan Olson of HUD and Mark Welch of IAF, IHFA would be authorized by HUD to release the remainder of the funds requested by IAF for services performed through October 4, 2001, and that IAF would be required to allow full access to client files for purposes of verifying all future services. Pursuant to the agreement reached between Mr. Olson and Mr. Welch, IAF would obtain releases from its clients acknowledging that such records may be reviewed by HUD or IHFA. Attached hereto as Exhibit L is a copy of an e-mail message from Mr. Cook to Mr. Olson dated September 27, 2001, describing the issues and the terms of the agreement, including that IAF would immediately begin use of a release. Also included in Exhibit L is Mr. Olson's reply to Mr. Cook which indicates that Mr. Cook had accurately described the agreement.

11. The agreement reached between Mr. Olson and Mr. Welch was further confirmed by IAF in a letter from IAF attorney John Janis to Gerald Hunter dated September 29, 2001, which is attached hereto as Exhibit M. In that letter, Mr. Janis, on behalf of IAF, proposed the following solution, "IAF will from some date forward have clients sign a release letting them

AFFIDAVIT OF JULIE H. WILLIAMS - page 5

know that federal regulators and their agents will have access to their files."

12.     Based upon the agreement reached between HUD and IAF, I sent a letter to Mark Welch dated October 1, 2001, which modified the corrective action for Finding #1 of the Monitoring Report to conform to the terms of the agreement reached between IAF and HUD. A copy of the letter is attached hereto as Exhibit N. The letter also forwarded to Mr. Welch a sample release.

13.     Attached hereto as Exhibit O is a copy of a letter from me to Mr. Welch dated October 4, 2001, which forwarded payment for services rendered through June 30, 2001, and again confirmed the agreement reached between IAF and HUD that IAF obtain releases from its clients. In the letter, I emphasized that IHFA would expect full access to the files for services rendered after October 4, 2001.

14.     Despite the agreement, IAF continued to refuse to allow access to records containing confidential information in the absence of client consent, and IAF failed to implement the use of a release or acknowledgment form indicating that clients were aware of the possibility that HUD or IHFA may require such access. Attached hereto as Exhibit P is a letter dated November 1, 2001, from me to Mr. Welch again confirming the terms of the agreement between HUD and IAF and informing IAF that it would have to comply with the requirements for access to records in order to receive reimbursement for any services rendered after October 4, 2001. Attached hereto as Exhibit Q is a letter, dated November 7, 2001, sent by IHFA Grant Programs Manager Earl Cook to Mr. Welch again confirming that IHFA and HUD would accept redacted records for services provided before October 4, 2001, and that IAF had agreed to secure releases to allow complete access to records for services rendered after that date. Mr. Cook also identified the specific files that needed to be

AFFIDAVIT OF JULIE H. WILLIAMS - page 6

provided in redacted format.

15.    Attached hereto as Exhibit R is a copy of a letter from Mr. Janis to Robert Kyte, attorney for

IHFA, dated November 8, 2001. IAF took the position at that time that was there was no

agreement by IAF to allow a review of redacted records, that the contract did not require IAF

to allow IHFA to confidential records of its clients, and that IAF would only be willing to

consider having future clients execute releases. Attached hereto as Exhibit S is a copy of a

letter from Mr. Kyte to Mr. Janis dated November 13, 2001. Mr. Kyte stated, based upon

instructions from HUD, that redacted records would be accepted as verification for services

rendered up to October 4, 2001, but that full access to records would be expected for services

rendered after that date. IHFA further informed IAF that full access to records was required

under section 15 of the 2001 contracts.

16.    IHFA and IAF representatives continued to attempt to work through these issues in

December 2001 and January 2002. On December 20, 2001, a meeting was held attended by

representatives of HUD, IHFA and IAF. At that meeting, it was agreed that a HUD

representative would complete monitoring of four redacted files from 2000, that an IHFA

representative would have access to redacted files for services rendered between July and

October of 2001, and that IAF would provide an acceptable release that would allow HUD

and IHFA the necessary access because Mr. Welch was not willing to use the release that had

been proposed by IHFA. Attached hereto as Exhibit T is a letter from Mr. Kyte to Mr. Janis

summarizing the issues addressed at the meeting to IAF's attorneys. IAF's attorneys replied

by letter dated December 28, 2001 (attached as Exhibit U), and indicated that the summary

of the issues was accurate, but that IAF was not willing to reach agreement on those matters

unless payments were unfrozen. Attached hereto as Exhibit V is a January 4, 2002, letter

AFFIDAVIT OF JULIE H. WILLIAMS - page 7

from Mr. Cook to Mr. Welch which summarized the outstanding issues and identified the records that needed to be reviewed by IHFA. This included redacted records of psychiatric services provided by IAF so that IHFA could verify time spent on such services.

17. Attached hereto as Exhibit W is a January 11, 2002 letter from Mr. Kyte to IAF attorney Vicki Looney. The letter refers to a monitoring visit to IAF that was conducted by Earl Cook on January 9, 2002. As a result of the visit, IHFA issued a check to IAF for $25,161.85 for services provided July through September of 2001. IHFA again reiterated to IAF at that time that IAF would need to allow HUD and IHFA full access to the records, without redaction, in the future.

18. A visit to IAF was planned for February 8, 2002, by IHFA and Jan Olson of HUD. Attached hereto as Exhibit X is a letter dated January 25, 2002, that I received from Doug Carlson, HUD Director of Community Planning and Development, confirming the visit. Mr. Carlson also explained that HUD and IHFA were entitled to access to IAF's files in order to confirm eligibility pursuant to 24 CFR Part 84.53(e), and that such access was required to verify the eligibility of recipients and that accounting records are supported by source documentation as required by 24 CFR Part 84.21(a)(7).

19. IHFA was informed that the HUD visit to IAF was cancelled due to a letter received by HUD from an attorney representing IAF which raised questions about the propriety of using a release. Attached hereto as Exhibit Y is a letter dated February 11, 2002, that I wrote to Mr. Carlson at HUD seeking direction as to the ability of IHFA to release funds to IAF based upon monitoring reviews of redacted files, or if full access to the records was required.

20. Attached hereto as Exhibit Z is a letter dated March 25, 2002, that I received from Mr. Carlson responding to IHFA's request for clarification. Mr. Carlson summarized the issue,

AFFIDAVIT OF JULIE H. WILLIAMS - page 8

including the September 26, 2001 agreement reached to allow IAF to provide redacted records up to that point, and then to require clients to sign releases for subsequent services. Mr. Carlson confirmed that, unless directed otherwise by the Office of HIV/AIDS Housing, IHFA was not authorized to make any payments to IAF for services that could not be verified by reviewing source documents, in particular client records. Attached hereto as Exhibit AA is a letter dated March 28, 2002, from me to Ms. Looney forwarding Mr. Carlson's letter and confirming that IHFA must abide by HUD's direction until the issue regarding access to records was resolved.

21. Attached hereto as Exhibit BB is a letter dated March 28, 2002, from David Vos, the Director of HUD's Office of HIV/AIDS Housing, to IAF attorney David Leroy responding to IAF's claim that allowing HUD or IHFA access to confidential client records was not required and would violate federal law. I received a copy of the letter from Mr. Carlson at HUD. In the letter, Mr. Vos explained to IAF that the applicable statutory and regulatory provisions required that HUD and IHFA be allowed full access to records, including confidential files, in order to confirm eligibility of recipients and that funds were used for eligible services. Mr. Vos specifically reaffirmed the position of IHFA communicated to IAF in my October 4, 2001 letter that no funds could be disbursed in the absence of access to the requested records.

22. Attached hereto as Exhibit CC is a letter dated April 9, 2002, from me to IAF attorney Ms. Looney by which I informed IAF that IHFA would need to conduct a monitoring visit to verify eligibility of pending billings, including access to source documentation.

23. Attached hereto as Exhibit DD is a letter dated April 19, 2002, that IHFA attorney Robert Kyte received from Howard Belodoff, an attorney representing IAF. In that letter, IAF maintained that it had complied with its obligations under the contract and federal statutes

AFFIDAVIT OF JULIE H. WILLIAMS - page 9

and regulations to provide necessary documentation. IAF requested additional details on the records that IHFA would need to review in order to release payments and a specific proposal for a monitoring visit.

24.     Attached hereto as Exhibit EE is a letter dated April 24, 2002 from Mr. Kyte to Mr. Belodoff. In that letter, Mr. Kyte summarized the communications exchanged amongst IHFA, IAF, and HUD that occurred in late 2001 and early 2002. IHFA reiterated that the payment to IAF of the outstanding requests totaling $34,055.01 was conditioned on the requirement of unrestricted file access, as addressed by HUD in the letters from Mr. Carlson and Mr. Vos.

25.     Attached hereto as Exhibit FF is a letter from Mr. Belodoff dated May 8, 2002 to Mr. Kyte responding to the April 24, 2002 letter. Mr. Belodoff requested that IHFA provide authority for the proposition that IHFA was entitled to access to confidential records, including medical and clinical information, and any authority for requiring IAF to obtain a release from its clients for the disclosure of such information. IAF also requested guidance on how to deal with any client who refused to consent to such disclosure, and demanded that IHFA agree to indemnify IAF against any claim resulting from such disclosure.

26.     Attached hereto as Exhibit GG is a letter, dated June 24, 2002 from Mr. Kyte again responding to Mr. Belodoff. In that letter, Mr. Kyte explained that the monitoring and auditing requirements that IHFA was insisting upon were based on federal law and directives from HUD. Mr. Kyte explained the statutory and regulatory authority for requiring such access, as well as the purpose for such access, referring to the letters from Mr. Carlson and Mr. Vos for support. Mr. Kyte also explained that any information disclosed during the monitoring process would be kept confidential by IHFA and HUD consistent with 24 CFR 574.440. IHFA addressed IAF's concerns under the contract by citing again to section 15

AFFIDAVIT OF JULIE H. WILLIAMS - page 10

which requires IAF to make available to HUD or IHFA any requested information necessary to conduct program audits. With respect to the issue of a release, Mr. Kyte explained that HUD's position was that HUD and IHFA are entitled to access to the records even without a release, but that IAF could use a release if it believed one to be necessary. Mr. Kyte acknowledged that IHFA was still holding invoices from IAF, and offered to pay the invoices provided IAF supply the documentation necessary to confirm recipient and income eligibility and the eligibility of activities as previously requested in IHFA's April 24, 2002 letter. Mr. Kyte clarified that IHFA was not seeking access to any physician notes, but only to records that would establish a recipient's HIV status, income eligibility, and proof of services rendered.

27.   Attached hereto as Exhibit HH is a copy of a letter dated February 25, 2003, from David Vos, Director of the Office of HIV/AIDS Housing for HUD, confirming that IHFA and HUD must be allowed to have access to appropriate documentation to confirm that project sponsors are providing eligible services to eligible persons.

28.   The contracts between IHFA and IAF which were executed in 2001 were not renewed and therefore expired on June 30, 2002. IHFA has not been provided with access to the records necessary to confirm the eligibility of recipients and services reflected in the outstanding invoices from IAF.

29.   Attached hereto as Exhibit II is a copy of Section E of the Personnel Policy of IHFA, which requires IHFA employees to keep confidential any information obtained in discharge of their duties.

DATED this 5th day of August, 2005.

JULIE H. WILLIAMS

SUBSCRIBED AND SWORN to before me this 5th day of August, 2005.

Notary Public for Idaho
Residing at: Boise
My Commission Expires: 1/15/2011

AFFIDAVIT OF JULIE H. WILLIAMS - page 12

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY That on this 5th day of August, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Howard A. Belodoff
Belodoff Law Office
1524 W. Hays Street, Suite 2
Boise, ID 83702
hbelodoff@hotmail.com

Maria E. Andrade
Attorney at Law
250 S. 5th, Suite 660
Boise, ID 83702
maria@andradelegal.com
mandrade@huntleypark.com


_____/s/_____
Martin C. Hendrickson

# EXHIBIT A

April 28, 2000

Grant Number:  ID-H99-0025
Grant Amount:  $1,299,837
Official Contact Person:  Julie H. Williams
   Vice President, Community Housing Services
   Telephone Number:  208/331-4886
   FAX Number:  208/331/4809
   Email Number:  JulieW@ihfa.org
Tax ID Number:  82-0302333

## HOUSING OPPORTUNITIES FOR PERSONS WITH AIDS (HOPWA) 2000 FORMULA GRANT AGREEMENT

This Grant Agreement is made by and between the United States Department of Housing and Urban Development (HUD) and Idaho Housing and Finance Association.

This Agreement will be governed by the following, as they from time to time may be amended: AIDS Housing Opportunity Act, 42 USC Sec. 12901 et. seq. (the Act), the Housing Opportunities for Persons With AIDS (HOPWA) Program rule, 24 CFR 574 as amended, and the Consolidated Plan rule, 24 CFR 91 as amended (the Regulations); all of which are incorporated herein as part of this Agreement.

The terms "Grant" or "Grant Funds" mean the funds provided under this Agreement.  The term "Application" means the application submissions on the basis of which a Grant was approved by HUD through the consolidated submission under 24 CFR Part 91 used as the Application, limited to the HOPWA elements of the Consolidated Plan, including the certifications and assurances and any information or documentation required to meet any grant award conditions.  The Application is incorporated as part of this Agreement; however, in the event of conflict between a provision of the Application and any provision of this Grant Agreement document, the latter shall control.  "Project Sponsor" means any nonprofit organization or governmental housing agency that receives funds from the Grantee to carry out eligible activities identified in the Application.

In reliance upon the Application, HUD agrees, upon execution of this Grant Agreement, to provide Grant Funds to Grantee in the amount of $ 1,299,837.

    Grantee agrees to and will ensure that each Project Sponsor agrees to:

    (1) operate the program in accordance with the requirements of the applicable HUD regulations;

    (2) conduct an ongoing assessment of the housing assistance and supportive services required by the participants in the program;

(3) assure the adequate provision of supportive services to the participants in the program;

(4) comply with such other terms and conditions, including record keeping and reports (which must include racial and ethnic data on participants) for program monitoring and evaluation purposes, as HUD may establish for purposes of carrying out the program in an effective and efficient manner;

(5) comply with HUD's "Guidance on the Restricted Use of HOPWA funds for AIDS Drugs Assistance and Other Health-care Costs," of January 21, 1998, a copy of which has been supplied to Grantee prior to execution of this Grant Agreement.

Default:  A default shall consist of any use of Grant Funds for a purpose other than as authorized by this Agreement, noncompliance with the Act or Regulations, any material breach of the Agreement, failure to expend Grant Funds in a timely manner (as required by 24 CFR 574.540, within a three-year period from the date of the signing of the grant agreement), or misrepresentations in the Application submission which, if known by HUD, would have resulted in a Grant not being provided.  Upon due notice to the Grantee of the occurrence of any such default and the provision of a reasonable opportunity to respond, HUD may take one or more of the following actions:

(a) direct the Grantee to submit progress schedules for completing approved activities;

(b) issue a letter of warning advising the Grantee of the default, establishing a date by which corrective actions must be completed and putting the Grantee on notice that more serious actions will be taken if the default is not corrected or is repeated;

(c) direct the Grantee to suspend, discontinue or not incur costs for the affected activity;

(d)  reduce or recapture the grant;

(e) direct the Grantee to reimburse the program accounts for costs inappropriately charged to the program;

(f)  other appropriate action including, but not limited to,
any remedial action legally available, such as affirmative litigation seeking declaratory judgment, specific performance, damages, temporary or permanent injunctions and any other available remedies.

No delay or omissions by HUD in exercising any right or remedy available to it under the Agreement shall impair any such right or remedy or constitute a waiver or acquiescence in any Grantee default.

Notwithstanding anything to the contrary in the application, grant funds shall not be used to fund sponsor costs in the amount of $55,121. The $55,121 reduction was necessary due to higher sponsor costs than were allowed under the statute. To reflect this change, the approved grant amount is $1,299,937. A revised budget was submitted to address this condition.

This Grant Agreement is hereby executed by the Parties on the dates set forth below their respective signatures, as follows:

UNITED STATES OF AMERICA
Department of Housing and Urban Development
By: The Secretary

By: _____
    Douglas P. Carlson
    (Signature)

    Director, Community Planning and Development

    5/1/00
    (Date)


GRANTEE

By:   IDAHO HOUSING AND FINANCE ASSOCIATION

    By: _____
    (Signature)

    Gerald Hunter
    President and Executive Director

    5 -05 -2000
    (Date)

# EXHIBIT B

# HOUSING OPPORTUNITIES FOR PERSONS WITH AIDS
## CFDA # 14.24 1
### US Department of Housing and Urban Development

**HUD Project #: ID-1199-0025**        **IHFA Contract # HOPWA-SS-99-04**

Idaho Housing and Finance Association ("IHFA") and Idaho AIDS Foundation, enter into this contract ("Contract") for the purpose of implementing the Idaho Housing Opportunities for Persons with AIDS Collaboration. herein known as Special Needs Housing Program ("SNHP").

SNHP is funded by a grant of $1,299,837 from the U.S. Department of Housing and Urban Development ("HUD"). SNHP will create a continuum of care by linking rental assistance with supportive services to more effectively assist low income persons who have acquired AIDS and related diseases.

Idaho AIDS Foundation hereinafter will be referred to as the GRANTEE.

## TERMS AND CONDITIONS

### Article I - Period of Performance:

The work required to be performed hereunder (the "Project") shall be accomplished from the effective date of the Contract. and shall continue for twelve (12) months with the option for renewal annually for up to two additional years.

### Article II - Grant Amounts and Payments:

The maximum amount of HOPWA assistance awarded is Sixty Two Thousand Ten and 00/100 Dollars ($62,010.00) over 12 months to provide case management and transportation ($40,060.00), emergency assistance ($ 11,442.00), and provide housing information services ($2,500.00) for eligible persons through the GRANTEE's toll free number.

The GRANTEE will assist in the collection of information regarding available community services or resources ($ 4,294.00) for IHFA's Housing Information and Referral Center's (HIRC) database. The remaining $ 3,714.00 is available to cover the GRANTEE's administrative costs directly associated with the HOPWA program.

All expenditures and payments will be made on a reimbursement basis and shall only be made in accordance with Attachment A, Project Budget. HOPWA funds can only be disbursed for activities which occur after HUD and IHFA have executed the Contract.

The effective date of the grant is July 1, 2000.

The GRANTEE may periodically request payment for services provided and for administrative costs associated with the provision of services as outlined in Article III and shall certify that all hours billed have been for services provided under HOPWA. The GRANTEE shall be liable for any discrepancy in documentation. IHFA will pay the amount requested within 15 days of the receipt of the request if IHFA is satisfied with the request and the required source documentation is supplied. The GRANTEE may utilize IHFA's wire transfer system to transfer HOPWA funds directly to the GRANTEE's. The GRANTEE must complete the "Wire Transfer/Endorsement Letter" (Attachment G) and return to IHFA for approval to access the wire transfer service.

The program shall be monitored at least annually.

In the performance of this contract, the GRANTEE shall keep books, records, and accounts of all activities related to the provisions of the contract. The GRANTEE shall maintain records for a four (4) year period after the later of termination of this Contract or audit of this Contract and activities hereunder to demonstrate compliance with the terms of the grant.

### Article III - Activities to be Performed by the Grantee:

I.        Provide case management services in accordance with the Ryan White Case Manager Job Description (Attachment E) to eligible persons as defined in the HOPWA Policies and Procedures Manual (Attachment D) and the HOPWA regulations found at 24 CFR 574, and to provide documentation to be mutually agreed upon by IHFA and GRANTEE of the billable hours spent on these services to be billed at an hourly rate to be mutually agreed upon by IHFA and GRANTEE.

II       Provide emergency housing assistance in accordance with the HOPWA Policies and Procedures Manual (Attachment D) and the HOPWA Regulations found at 24 CFR 574.

III      Provide Resource Identification services for IHFA's Housing Information and Referral Center in accordance with the HOPWA Policies and Procedures Manual (Attachment D).

IV       Cooperate with IFHA and other SNHP contractors in the participation and the nomination of persons living with AIDS to serve on the IHOPWAC Advisory Board, which is the policy making entity for SNHP.

This Contract will be governed by the following, as they from time to time may be amended: AIDS Housing Opportunity Act, 42 USC Sec. 12901 et.sec. (the Act), the Housing Opportunities for Persons With AIDS (HOPWA) Program rule, 24 CER 574 as amended, and the Consolidated Plan rule, 24 CFR 91 as amended (the Regulations); all of which are incorporated herein as part of this Agreement.

The terms "Grant" or Grant Funds" mean the funds provided under this Contract. The term "Application" means the application submissions on the basis of which a Grant was approved by

2

HUD through the consolidated submission under 24 CFR Part 91 used as the Application, limited to the HOPWA elements of the Consolidated Plan, including the certifications and assurances and any information or documentation required to meet any grant award conditions. The Application is incorporated as part of this Contract; however, in the event of conflict between a provision of this Grant Contract document, the latter shall control.

### Article IV - Coordination of Activities:

The GRANTEE shall coordinate activities in Article III with the activities of other private, city, county, regional, State and Federal agencies having allied programs in order to improve services, eliminate duplication of services, develop cooperation, and to enhance the Continuum of Care in the Region and throughout the State.

### Article V Monitoring/Evaluation/Audit:

If the GRANTEE expends $300,000 or more in federal funds annually, the GRANTEE shall provide the IHFA with an annual financial audit in accordance with 0MB Circular A-l 33. The audit shall be completed by the certified public accountant during the regular annual audit cycle. GRANTEES, which have expended $300,000 or more in federal funds shall provide annual audits through the year(s) grant funds are expended. GRANTEES expending less that $300,000 per year in federal funds are exempt from audit requirements. Such exempt GRANTEES will not be reimbursed for audit costs.

The GRANTEE shall undertake a continuing program of project operations monitoring to ensure compliance with all applicable Federal, State, county and city laws, regulations, ordinances and any other directives to ensure safe and efficient operations, and to safeguard the public funds made available for this project.

IHFA may monitor and make periodic, on-site inspections and evaluations of the Project, this grant and all related books and records. IHFA will conduct annual on-site monitoring visits to review GRANTEE's overall performance and will produce a written status report to the GRANTEE.

The GRANTEE shall make available its books and records relating to the Project and the grant to IHFA during regular working hours. These books and records shall be maintained for at least four years following the final audit of the Project. Representatives of the Secretary of HUD, the Inspector General, or the General Accounting Office shall have access to all books, accounts, reports, files and other papers, things or property belonging to or in use pertaining to the administration of this grant and receipt of assistance.

### Article VI - Further Conditions:

IHFA 0007

IHFA may amend this Contract on its own initiative or at the request of the GRANTEE to reflect changes in the design of the Project once written permission has been secured from HUD. Such changes shall be mutually agreed upon. In no case shall the budget be amended to exceed the dollar amount originally granted in this contract. No scope of work costs or services shall be effective until approved in a written contract amendment signed by both parties.

The GRANTEE warrants that nothing of monetary value has been given promised or implied as remuneration for entering into this Contract. The GRANTEE further declares no improper personal, political or social activities have been used or attempted in an effort to influence the outcome of the competition, discussion or negotiation leading to the award of this Contract.

The contracting parties warrant by their signature that no employer-employee relationship is established between IHFA and the GRANTEE by the terms of this Contract.

GRANTEE further indemnifies the State of Idaho and the Idaho Housing and Finance Association and holds them harmless against any and all suits, actions, claims or losses of every kind, nature and description, including costs, expenses and attorney fees that may be incurred by reason of any act or omission, neglect or misconduct of the GRANTEE which may arise out of this Contract.

With the exception of the GRANTEE's staff salaries approved for payment under the contract, no official or employee of the GRANTEE or IHFA shall have any direct or indirect financial interest in the Project.

The GRANTEE shall execute Attachments B, C and F of this Contract. Attachment G is optional.

This Contract is effective on the date indicated in Article I.

The GRANTEE shall not transfer any form of this Contract without the prior written consent of IHFA. IHFA may give its consent to a transfer provided the transferee is an eligible, private, nonprofit organization (meets the definition in 24 CFR 574), agrees in writing (in a form agreeable to IHFA) to comply with all the terms and conditions of this Contract and agrees to serve the same target population. The transferee shall give IHFA a copy of the executed transfer agreement.

## Article VII - Default and Remedies:

Any action arising under this Contract, the prevailing party to such action shall be entitled to reimbursement for reasonable costs, including attorney's fees from the non-prevailing party.

Upon the occurrence of and failure to cure default as provided for above, IHFA shall have any one or more of the following remedies:

4

IHFA 0008

1.     IHFA may require repayment in full of the HOPWA grant provided to GRANTEE hereunder. IHFA may enforce such repayment by action in the district court of Ada County, Idaho or any other remedy available at law or equity.

2.     IHFA may terminate this Contract as provided in Article VIII hereunder.

3.     IHFA may consider default on this contract to be default of any other IHFA contract.

No remedy hereunder shall be exclusive of any other available remedy or remedies. No delay or omission to exercise any right or power accruing in the event of default hereunder shall impair any such right or power or shall be construed to be a waiver thereof. In order to exercise said remedies; it shall not be expressly required under this Contract.

The failure by the GRANTEE to remedy or cure, within thirty (30) days of written notice from IHFA, the GRANTEE's failure to perform any of its covenants, conditions or obligations contained in this Contract, including without limitation, compliance with any applicable state or federal regulations (see Attachment I), shall constitute a default under this Contract to the extend allowed under the regulations. Notice of such failure shall be given by IHFA in writing to the GRANTEE by certified mail, postage prepaid, return receipt requested to the address last known to IHFA. Said notice shall be effective upon mailing.

## Article VIII - Terminations:

IHFA shall have the right to terminate this Contract in whole or in part, at any time before the date of completion, or whenever it is determined that the GRANTEE has failed to comply with the conditions of this Contract. IHFA shall promptly notify the GRANTEE if they have failed to comply with the conditions of this Contract. IHFA shall promptly notify the GRANTEE in writing of the determination and the reasons for the termination, together with the effective date of the termination.

IHFA may terminate this Contract in whole or in part of the convenience of IHFA when both parties agree that the continuation of the project would not produce results commensurate with further expenditure of funds. The two parties shall agree in writing upon termination conditions an effective date and a fair and reasonable payment, as determined by IHFA for all work completed.

## Article IX - Federal Regulations:

5

IHFA 0009

The GRANTEE shall comply with all terms and conditions of Federal Grant Number ID-H99-0025 and all applicable Federal laws and regulations. Additionally, both parties shall adhere to statutes and regulations of the State of Idaho.

**This Contract is hereby executed on this 24th day of October, 2000:**

**Association**

Idaho Housing and Finance Association

BY: _____

Its: _VICE PRESIDENT_____


**Idaho AIDS Foundation**

BY: _____

Its: _EXECUTIVE DIRECTOR_____

6

# EXHIBIT C

# HOUSING OPPORTUNITIES FOR PERSONS WITH AIDS
## CFDA # 14.241
### US Department of Housing and Urban Development

**HUD Project #: ID-H99-0025**          **IHFA Contract # HOPWA-SS-99-01**

Idaho Housing and Finance Association ("IHFA") and Idaho AIDS Foundation ("GRANTEE"), enter into the following Contract for the purpose of implementing the Idaho Housing Opportunities for Persons with AIDS ("HOPWA") Collaboration, herein known as Special Needs Housing Program ("SNHP"). SNHP is funded by a grant of $1,299,837 from the U.S. Department of Housing and Urban Development (HUD). SNHP will create a continuum of care by linking rental assistance with supportive services to more effectively assist low income persons who have acquired AIDS and related diseases.

The terms "Grant" or Grant Funds" mean the funds provided under this Contract. The term "Application" means the application submissions on the basis of which a grant was approved by HUD through the consolidated submission under 24 CFR part 91 used as the Application, limited to the HOPWA elements of the Consolidated Plan, including the certifications and assurances and any information or documentation required to meet any grant award conditions. The Application is incorporated as part of this Contract; however, in the event of conflict between provisions of the Application and this Grant Contract, the Grant Contract shall control.

## TERMS AND CONDITIONS

### Article I - Period of Performance:

The effective date of this Grant is July 1, 2000. The project work required to be performed by the GRANTEE (the "Project") shall be accomplished from the effective date of the Contract ("the Contract"), and shall continue for twelve (12) months with the option for renewal annually for up to two additional years. Such renewal shall be at the annual discretion of IHFA based on IHFA's review of the GRANTEE's performance hereunder during the previous year.

### Article II - Grant Amounts and Payments:

The maximum amount of HOPWA assistance awarded is Forty Five Thousand Four Hundred Eighty Three and 00/100ths Dollars ($45,483.00) per year to provide dental services Twenty One Thousand Three Hundred Seventy Three and 00/100ths Dollars ($21,373.00) and psychiatric services Twenty One Thousand One Hundred Forty Seven and 00/100ths Dollars ($21,147.00) for eligible persons under SNHP. The remaining Two Thousand Nine Hundred Sixty Three and 00/100ths Dollars ($2,963.00) is available to cover the GRANTEE's administrative costs directly associated with the HOPWA program.

IHFA 0011

All expenditures and payments will be made on a reimbursement basis and shall only be made in accordance with Attachment A, Project Budget. SNHP funds can only be disbursed for activities, which occur **after** the Contract has been executed by HUD and IHFA.

The GRANTEE may periodically request payment for services provided and for administrative costs associated with the provision of services as outlined in Article III and shall certify that all hours billed have been for services provided under SHNP. The GRANTEE shall be liable for any discrepancy in documentation. IHFA will pay the amount requested within 15 days of the receipt of the request if IHFA is satisfied with the request and the required source documentation is supplied. The GRANTEE may utilize IHFA's wire transfer system to transfer HOPWA funds directly to the GRANTEE's bank account. The GRANTEE must complete the "Wire Transfer/Endorsement Letter" (Attachment G) and return it to IHFA for approval to access the wire transfer service.

Total permitted Administrative Costs for this Contract shall never exceed seven percent (7%) of the Grant funding.

The program shall be monitored and reviewed at least annually as called for in Article V, below.

## Article III - Activities to be Performed by the GRANTEE:

The following activities shall be performed by GRANTEE:

A. Provide dental and psychiatric services to eligible persons referred by SHNP or Ryan White CARES Title II and Title III case managers (Attachment H) as defined in the Policies and Procedures Manual (Attachment D).

B. Cooperate with IHFA and other SNHP contractors in the participation and the nomination of persons living with AIDS to serve on the Idaho HOPWA Collaboration Advisory Board, which is the policy making entity for SNHP.

C. Undertake a continuing program of project operations monitoring to ensure compliance with all applicable Federal, State, county and city laws, regulations, ordinances and any other directives to ensure safe and efficient operations, and to safeguard the public funds made available for this Project.

## Article IV - Coordination of Activities:

The GRANTEE shall coordinate activities in Article III with the activities of other private, city, county, regional, State and Federal agencies having allied programs in order to improve services, eliminate duplication of services, develop cooperation, and to enhance the continuum of care in the Region and throughout the State.

IHFA 0012

## Article V - Monitoring/Evaluation/Audit:

If the GRANTEE expends $300,000 or more in federal funds annually, the GRANTEE shall provide IHFA with an annual financial audit during any year that Grant Funds are expended, in accordance with OMB Circular A-133. The audit shall be completed by the certified public accountant during the regular annual audit cycle. If the GRANTEE expends less that $300,000 per year in federal funds, GRANTEE is exempt from audit requirements. If a GRANTEE is exempt, then it will not be reimbursed for audit costs. Otherwise, audit costs are reimbursable as part of the GRANTEE'S administrative costs under Article II, above.

IHFA may monitor and make periodic, on-site inspections and evaluations of the Project, the application and use of the Grant Funds and all related books and records. IHFA will conduct annual on-site monitoring visits to review GRANTEE's overall performance and will provide a written status report to the GRANTEE.

The GRANTEE shall make available during regular working hours, its books and records relating to the Project and the grant to IHFA. These books and records shall be maintained for at least four (4) years following the final audit of the Project. Representatives of the Secretary of HUD, the Inspector General, or the General Accounting Office shall have access to all books, accounts, reports, files and other documents, or related property belonging to or in use pertaining to the administration of this Grant and receipt of assistance thereunder.

## Article VI - Further Conditions:

IHFA may amend this Contract on its own initiative or at the request of the GRANTEE upon IHFA's and HUD's approval to reflect changes in the design of the Project. In no case shall the budget be amended to exceed the dollar amount originally granted in this Contract. No scope of work costs or services shall be effective until approved in a written contract amendment signed by both parties.

The contracting parties warrant by their signature that no employer-employee relationship is established between IHFA and the GRANTEE by the terms of this Contract.

GRANTEE indemnifies and holds harmless the State of Idaho and IHFA, their officers, agents, employees and commissioners, against any and all suits, actions, claims or losses of every kind, nature and description, including costs, expenses and attorney fees that may be incurred by reason of any act or omission, neglect or misconduct of the GRANTEE which may arise out of this Contract or its performance.

The GRANTEE shall execute Attachments B, C, and F to this Contract. Attachment G is

IHFA 0012

optional.  All Attachments and Exhibits are hereby incorporated as part of this Contract.

The GRANTEE shall not transfer or assign this Contract or its performance without the prior written consent of IHFA.  IHFA may give its consent to a transfer provided; the transferee is an eligible, private, nonprofit organization (i.e., meets the definition in 24 CFR 574), agrees in writing (in a form agreeable to IHFA) to comply with all the terms and conditions of this Contract and agrees to serve the same target population.   IHFA shall be provided a copy of any IHFA approved assignment or transfer of this Contract.

All notices required under this Contract shall be deemed appropriate if provided under the same notice procedures for default under Article VII.

### Article VII - Default and Remedies:

The GRANTEE's failure to perform any of its covenants, conditions or obligations contained under this Contract, including without limitation, compliance with any applicable state or federal regulations (see Attachment I), shall constitute a default under this Contract to the extent allowed under the Regulations, provided that GRANTEE shall be provided written notice of default and GRANTEE fails to remedy or cure any such default within thirty (30) days of written notice from IHFA.  Notice of such default shall be given by IHFA in writing to the GRANTEE by certified mail, postage prepaid, return receipt requested to GRANTEE's address last known to IHFA.

In any action arising under this Contract, the prevailing party to such action shall be entitled to reimbursement for reasonable costs, including attorney's fees from the non-prevailing party.

Upon the occurrence of and failure to cure any default as provided for above, IHFA shall have any one or more of the following remedies:

1.    IHFA may require repayment in full of the HOPWA Grant provided to GRANTEE hereunder.  IHFA may enforce such repayment by action in the district court of Ada County, Idaho.

2.    IHFA may terminate this Contract as provided in Article VIII hereunder.

3.    IHFA may consider default on this Contract to be default of any other IHFA contract.

4.    Any other remedy available at law or equity.

No remedy hereunder shall be exclusive of any other available remedy or remedies.  No delay or omission to exercise any right or power accruing in the event of default hereunder shall impair any such right or power or shall be construed to be a waiver thereof.

### Article VIII - Terminations:

G:\Special\HOPWA\IAF\SSContract-Rev1109.doc                    4

ILIFA 0014

IHFA shall have the right to terminate this Contract in whole or in part at any time before the date of completion, or whenever it is determined that the GRANTEE is in default under the this Contract. IHFA shall promptly notify the GRANTEE if they have failed to comply with the conditions of this Contract provided notice of default and opportunity to cure has been provided as called for in Article VII.   IHFA shall promptly notify GRANTEE of the determination and the reasons for the termination, together with the effective date of the termination.

This Contract may be terminated in whole or in part when both parties agree that the continuation of the Project would not produce results commensurate with further expenditure of funds. The two parties shall agree in writing upon termination conditions, an effective termination date and a fair and reasonable payment, as determined by IHFA for all work completed.

IHFA may deobligate all or a portion of the amounts approved under this Contract if such amounts are not expended in a timely manner, or the proposed activity for which funding was approved is not provided in accordance with the approved application or according to the Regulations.

## Article IX – Conflict of Interest:

GRANTEE shall comply with all Conflict of Interest provisions under the Regulations applicable to the HOPWA program.

With the exception of the GRANTEE's  reasonable staff salaries which are permitted under this Contract, no official or employee of the GRANTEE or IHFA shall have any direct or indirect financial interest in the Project.

The GRANTEE warrants that nothing of monetary value has been given promised or implied as remuneration for entering into this Contract. The GRANTEE further declares no improper personal, political or social activities have been used or attempted in an effort to influence the outcome of the competition, discussion or negotiation leading to the award of this Contract.

## Article X –Laws and Regulations:

Within the population eligible for assistance under the SNHP, the nondiscrimination and equal opportunity  requirements set for in 24 CFR part 5 and other requirements as listed in 24 CFR part 574 shall apply.

This Contract will be governed by the following laws and regulations, as amended from time to time:  AIDS Housing Opportunity Act, 42 USC § 12901 et.seq. (the "Act"), the Housing Opportunities for Persons With AIDS (HOPWA) Program Regulations, 24 CFR part 574 as amended, and the Consolidated Plan Regulations, 24 CFR part 91 as amended (collectively, the "Regulations"); all of which are incorporated herein as part of this Agreement. The GRANTEE

shall comply with all terms and conditions of Federal Grant Number ID-H99-0025 and all applicable Federal laws and regulations. Additionally, both parties shall adhere to statutes and regulations of the State of Idaho. It is the GRANTEE's responsibility to become familiar with all such laws and regulations and to insure compliance therewith.

This Contract is hereby executed on behalf of the parties as follows:

**Idaho Housing and Finance Association**

Julie H. Williams
Vice President
Community Housing Services

11/9/00
Date

**GRANTEE:**
**Idaho Aids Foundation**

Mark Welsh
Executor Director

11/9/2000
Date

# EXHIBIT D

# Idaho Housing and Finance ASSOCIATION

**HOPWA Award**
**HUD Project # IDH990025-01**
**Cooperative Agreement**

Page 1 of 4

| PROJECT NUMBER | HOPWA 99-01 | DATE | 07/01/01 |
|---|---|---|---|

## *AWARD TERMS*

1   This contract is made and entered into between the Idaho Housing and Finance Association, State of Idaho, Contractor (hereinafter referred to as IHFA), and Idaho AIDS Foundation, hereinafter referred to as the RECIEPIENT.

2   The project work required to be completed hereunder shall be accomplished from the effective date of July 1, 2001, and continue for a one year period ending June 30, 2002.

3   The amount Housing Opportunities for Persons with AIDS (HOPWA) awarded to Idaho AIDS Foundation is **$42,520**. The RECIPIENT will adhere to the budget as outlined in the Special Conditions. The total award from HUD was **$45,284** from which IHFA will reimburse **$2,764** for administrative costs associated with the administration of this grant.

4   All expenditures and payments will be made on a reimbursement basis and shall only be made in accordance with the Special Conditions.  HOPWA funds can only be disbursed for eligible activities that occur **after** the effective date or after the contract have been executed by HUD and IHFA as indicated below.

5   The RECIPIENT may periodically request payment under supportive services up to ten percent (10%) of the grant amount each month and shall certify that all work is complete as billed and shall be liable for any discrepancy in documentation. Administrative reimbursements are limited to six and five-tenth percent (6.5%) of each request up to the time administrative funds are fully expended.  IHFA will reimburse the recipient for eligible activities within 20 days of receiving the draw-down request. The RECIPIENT may utilize IHFA's wire transfer system to transfer HOPWA funds.  If so, the RECIPIENT must complete the "Wire Transfer/Endorsement Letter" and return to IHFA for approval to access the wire transfer service.

6   The program may be subjected to annual audits.  Ten percent (10%) of the grant amount may be held by IHFA until the GRANTEE has demonstrated acceptable levels of performance during the grant period.

END



**Idaho Housing and Finance** ASSOCIATION

HOPWA Award
HUD Project # IDH990025-01
Cooperative Agreement

Page 2 of 4

| PROJECT NUMBER | HOPWA 99-01 | DATE | 07/01/01 |
|---|---|---|---|

## SPECIAL CONDITIONS

1   The recipient agrees to comply with the organizational audit requirements of OMB Circular, A-133, Audits of States, Local Governments and Non-Profit Organizations which is hereby included by reference.

2   The recipient agrees that federal funds under this award will be used to supplement but not supplant state, or local funds, pursuant to §101(g) of H.R. 728, 104th Congress (1995).

3   The recipient agrees to spend grant funds for legitimate activities as outlined in 24 CFR 574 and OMB Circular A-122 which is hereby included by reference.

4   The recipient agrees to submit one copy of any publication (written, visual or sound) funded by this award to IHFA for approval 20 days prior to public release. All publications funded by this award must contain the following statement: "This project was supported by Grant No. HOPWA 99-01 awarded by the U.S. Department of Housing and Urban Development and the Idaho Housing and Finance Association. Points of view in this document are those of the author and do not necessarily represent the official opinion of HUD or IHFA."

5   The recipient agrees this award document constitutes the obligation of federal funds for use by the recipient in execution of the program or project covered by this award. Such obligation may be terminated without further cause if the recipient fails to affirm its timely utilization of the award or by not accepting the award and Special Conditions within 45 calendar day from the date of the award.

6   The recipient agrees to reimburse IHFA 100% of all unauthorized or illegitimate expenses within 30 days of written notification. The recipient also agrees to forfeit claim to any unused or un-obligated funds at the end of the granting period unless otherwise agreed upon by IHFA.

7   The recipient agrees to submit all requests for draw-down within 60 calendar days from the time the services were provided.

8   The recipient agrees to one 12-month renewal obligation and expenditure period. All funds must be expended within that time period except as amended by IHFA.

9   The recipient agrees that buildings for which HOPWA grants are administered meet state and local safety and sanitation standards.

10   The recipient acknowledges that IHFA may use one or more of the following remedies when it is known that the terms of the grant are not followed: demand full or partial repayment; terminate contract; and Civil litigation in the district court of Ada County.

11   The recipient agrees to submit an official IHFA progress report within 30 days after the end of a 12-month granting period.

CONTINUED



**Idaho Housing and Finance** A S S O C I A T I O N

HOPWA Award
HUD Project # IDH990025-01
Cooperative Agreement

Page 3 of 4

| PROJECT NUMBER | HOPWA 99-01 | DATE | 07/01/01 |
|---|---|---|---|

## *SPECIAL CONDITIONS CONTINUED*

12  The recipient agrees to provide annual assurances that all HOPWA funds have been used by the terms specified in the grant application and the technical submission (HUD form 10110-B).

13  The recipient agrees to provide information (excluding information categorized as confidential by law) for any national or state evaluations conducted by HUD or IHFA.

14  The recipient agrees to maintain records and accounts for all activities relating to this award and that the records will be kept for a four- (4) year period after the grant has officially expired.

15  The recipient agrees to make available to HUD or IHFA any requested information needed to conduct program audits.

16  The recipient agrees that either HUD or IHFA may make periodic, on-site inspections for program audits as identified in OMB Circular A-133.

17  The recipient agrees that IHFA may amend or terminate any or all parts of this contract without further cause if it is determined that funds allocated for this project have been misused or used for ineligible activities. The recipient further agree that IHFA may terminate this contract if it is apparent that funds are not being used in an expeditious manner or is not being used in a manner consistent with the intent of the application

18  The recipient agrees to receive IHFA approval prior to reallocating funds from in any fashion other than is listed in these Special Conditions.

19  The recipient agrees to abide by Idaho Codes §30-3-1through 30-3-81 and Idaho Code §18-1359-18-1361 identifying conflicts of interest by Public and Non-Profit employees. The recipient further agrees that nothing of monetary value has been given, promised or implied as remuneration for entering into this contract and that there will be no personal financial gain by the executive director/director, employees or their family member of employees as a result of this contract.

20  The recipient agrees to comply with IHFA requirements to collect data for homeless tracking.

21  The recipient agrees to expend funds of legitimate activities in the following budget categories:

- Dental/Psychiatric         $42,520
- Administration             $ 2,764

IHFA 0024



**Idaho Housing and Finance** ASSOCIATION

HOPWA Award
HUD Project # IDH990025-01
Cooperative Agreement

Page 4 of 4

| PROJECT NUMBER | **HOPWA 99-01** | DATE | **07/01/01** |
|---|---|---|---|

### CONTRACT SIGNATURES

This agreement is made by and between Idaho Housing and Finance Association (IHFA) and Idaho AIDS Foundation (recipient).

This agreement constitutes the entire agreement between the parties hereto, and may be amended as necessary and executed only in writing by IHFA and the recipient. The recipient shall not change the focus and scope of the project authorized by this agreement without prior approval from IHFA.

By signing below, the recipient listed certifies that they will abide by the Terms and Conditions of this contract.

This agreement is hereby executed on behalf of the parties as follows:

IDAHO HOUSING AND FINANCE ASSOCIATION

BY: _____
(signature)

Julie H. Williams, VP Comm. Housing Services
(Printed Name and Title)

07/16/01
(Date)

RECIPIENT

BY: _____
(signature)

MARK WELCH
(Typed/Printed Name)

_____
(Title)

07/10/01
(Date)

IHFA 0025

# EXHIBIT E



**Idaho Housing and Finance** ASSOCIATION

HOPWA Award
HUD Project # IDH990025-04
Cooperative Agreement

Page 1 of 4

| PROJECT NUMBER | HOPWA 99-04 | DATE | 07/01/01 |
|---|---|---|---|

## AWARD TERMS

1. This contract is made and entered into between the Idaho Housing and Finance Association, State of Idaho, Contractor (hereinafter referred to as IHFA), and Idaho AIDS Foundation, hereinafter referred to as the RECIEPIENT.

2. The project work required to be completed hereunder shall be accomplished from the effective date of July 1, 2001, and continue for a one year period ending June 30, 2002.

3. The amount Housing Opportunities for Persons with AIDS (HOPWA) awarded to Idaho AIDS Foundation is **$58,296** The RECIPIENT will adhere to the budget as outlined in the Special Conditions. The total award from HUD was **$61,969** from which IHFA will reimburse **$3,673** for administrative costs associated with the administration of this grant.

4. All expenditures and payments will be made on a reimbursement basis and shall only be made in accordance with the Special Conditions. HOPWA funds can only be disbursed for eligible activities that occur **after** the effective date or after the contract have been executed by HUD and IHFA as indicated below.

5. The RECIPIENT may periodically request payment under supportive services up to ten percent (10%) of the grant amount each month and shall certify that all work is complete as billed and shall be liable for any discrepancy in documentation. Administrative reimbursements are limited to six and three-tenth percent (6.3%) of each request up to the time administrative funds are fully expended. IHFA will reimburse the recipient for eligible activities within 20 days of receiving the draw-down request. The RECIPIENT may utilize IHFA's wire transfer system to transfer HOPWA funds. If so, the RECIPIENT must complete the "Wire Transfer/Endorsement Letter" and return to IHFA for approval to access the wire transfer service.

6. The program may be subjected to annual audits. Ten percent (10%) of the grant amount may be held by IHFA until the GRANTEE has demonstrated acceptable levels of performance during the grant period.

END



| **Idaho Housing and Finance** ASSOCIATION | HOPWA Award<br>HUD Project # IDH990025-04<br>Cooperative Agreement |
|---|---|
| | **Page 2 of 4** |

| PROJECT NUMBER | **HOPWA 99-04** | DATE | **07/01/01** |
|---|---|---|---|

### *SPECIAL CONDITIONS*

1. The recipient agrees to comply with the organizational audit requirements of OMB Circular, A-133, Audits of States, Local Governments and Non-Profit Organizations which is hereby included by reference.

2. The recipient agrees that federal funds under this award will be used to supplement but not supplant state, or local funds, pursuant to §101(g) of H.R. 728, 104th Congress (1995).

3. The recipient agrees to spend grant funds for legitimate activities as outlined in 24 CFR 574 and OMB Circular A-122 which is hereby included by reference.

4. The recipient agrees to submit one copy of any publication (written, visual or sound) funded by this award to IHFA for approval 20 days prior to public release. All publications funded by this award must contain the following statement: "This project was supported by Grant No. HOPWA 99-01 awarded by the U.S. Department of Housing and Urban Development and the Idaho Housing and Finance Association. Points of view in this document are those of the author and do not necessarily represent the official opinion of HUD or IHFA."

5. The recipient agrees this award document constitutes the obligation of federal funds for use by the recipient in execution of the program or project covered by this award. Such obligation may be terminated without further cause if the recipient fails to affirm its timely utilization of the award or by not accepting the award and Special Conditions within 45 calendar day from the date of the award.

6. The recipient agrees to reimburse IHFA 100% of all unauthorized or illegitimate expenses within 30 days of written notification. The recipient also agrees to forfeit claim to any unused or un-obligated funds at the end of the granting period unless otherwise agreed upon by IHFA.

7. The recipient agrees to submit all requests for draw-down within 60 calendar days from the time the services were provided.

8. The recipient agrees to one 12-month renewal obligation and expenditure period. All funds must be expended within that time period except as amended by IHFA.

9. The recipient agrees that buildings for which HOPWA grants are administered meet state and local safety and sanitation standards.

10. The recipient acknowledges that IHFA may use one or more of the following remedies when it is known that the terms of the grant are not followed: demand full or partial repayment; terminate contract; and Civil litigation in the district court of Ada County.

11. The recipient agrees to submit an official IHFA progress report within 30 days after the end of a 12-month granting period.

CONTINUED



| | HOPWA Award |
|---|---|
| **Idaho Housing and Finance** ASSOCIATION | HUD Project # IDH990025-04 Cooperative Agreement |

Page 3 of 4

| PROJECT NUMBER | **HOPWA 99-04** | DATE | **07/01/01** |
|---|---|---|---|

## *SPECIAL CONDITIONS CONTINUED*

12. The recipient agrees to provide annual assurances that all HOPWA funds have been used by the terms specified in the grant application and the technical submission (HUD form 10110-B).

13. The recipient agrees to provide information (excluding information categorized as confidential by law) for any national or state evaluations conducted by HUD or IHFA.

14. The recipient agrees to maintain records and accounts for all activities relating to this award and that the records will be kept for a four- (4) year period after the grant has officially expired.

15. The recipient agrees to make available to HUD or IHFA any requested information needed to conduct program audits.

16. The recipient agrees that either HUD or IHFA may make periodic, on-site inspections for program audits as identified in OMB Circular A-133.

17. The recipient agrees that IHFA may amend or terminate any or all parts of this contract without further cause if it is determined that funds allocated for this project have been misused or used for ineligible activities. The recipient further agree that IHFA may terminate this contract if it is apparent that funds are not being used in an expeditious manner or is not being used in a manner consistent with the intent of the application

18. The recipient agrees to receive IHFA approval prior to reallocating funds from in any fashion other than is listed in these Special Conditions.

19. The recipient agrees to abide by Idaho Codes §30-3-1through 30-3-81 and Idaho Code §18-1359-18-1361 identifying conflicts of interest by Public and Non-Profit employees. The recipient further agrees that nothing of monetary value has been given, promised or implied as remuneration for entering into this contract and that there will be no personal financial gain by the executive director/director, employees or their family member of employees as a result of this contract.

20. The recipient agrees to comply with IHFA requirements to collect data for homeless tracking.

21. The recipient agrees to expend funds of legitimate activities in the following budget categories:

- Case Management/Transportation    $40,060
- Homeless Prevention    $11,442
- Resource Identification    $ 4,294
- Housing Information    $ 2,500
- Administration    $ 3,673

IHFA 0028



**Idaho Housing and Finance**
A S S O C I A T I O N

HOPWA Award
HUD Project # IDH990025-04
Cooperative Agreement

Page 4 of 4

| PROJECT NUMBER | HOPWA 99-04 | DATE | 07/01/01 |
|---|---|---|---|

## CONTRACT SIGNATURES

This agreement is made by and between Idaho Housing and Finance Association (IHFA) and Idaho AIDS Foundation (recipient).

This agreement constitutes the entire agreement between the parties hereto, and may be amended as necessary and executed only in writing by IHFA and the recipient. The recipient shall not change the focus and scope of the project authorized by this agreement without prior approval from IHFA.

By signing below, the recipient listed certifies that they will abide by the Terms and Conditions of this contract.

This agreement is hereby executed on behalf of the parties as follows:

IDAHO HOUSING AND FINANCE ASSOCIATION

BY: _____
(signature)

Julie H. Williams, VP Comm. Housing Services
(Printed Name and Title)

07/16/01
(Date)

RECIPIENT

BY: _____
(signature)

MARK WELCH
(Typed/Printed Name)

_____
(Title)

07/10/01
(Date)

# EXHIBIT F

## Earl Cook

**From:**     Jan_Olson@HUD.GOV
**Sent:**     Friday, September 14, 2001 11:23 AM
**To:**       juliew@ihfa.org
**Cc:**       earlc@ihfa.org
**Subject:**  RE: HOPWA Monitoring


----- Forwarded by Jan Olson/CPD/POR/HUD on 09/14/01 10:37 AM -----

Jan Olson
                 To:     David Vos/CPD/HHQ/HUD@HUD
09/14/01         cc:     Doug Carlson/CPD/POR/HUD@HUD
10:21 AM         Subject:    RE: HOPWA Monitoring


Hi David,

I left you a voice mail but thought I'd send on this e-mail I forwarded to
David Harre earlier.  Unfortunately David has not had a chance to reply
however I did get a response from Harry Garte who said we and the grantee
should have full access to records.  I see that 24 CFR Part 84.53(e) and 24
CFR Part 85.42(e) both state this.

Unfortunately the grant sponsor in Idaho (Idaho Aids Foundation) absolutely
refuses full access (even after being notified of the regulatory basis)
saying they would loose their license and violate State law if they allowed
full access to client records.  They are threatening to sue the grantee for
breach of contract because the grantee does not want to pay for services
which can't be fully verified.  I support the grantee in that decision.

What is your position on this?   I expect if we continue down this path
that we will need to go to court to back up the grantee.

Thanks.

jan

----- Forwarded by Jan Olson/CPD/POR/HUD on 09/14/01 10:23 AM -----

Jan Olson
                 To:     David S. Harre/CPD/HHQ/HUD@HUD
09/07/01         cc:
07:58 AM         Subject:    RE: HOPWA Monitoring


Good morning David,

My grantee has asked some key questions about access to client records.  In
going from an OMB perspective, we should have access to any and all records
necessary for us to verify the eligibility of a client and that they have
been provided the services the sponsor has sought reimbursement for.  Does
HOPWA have some special rules whereby we will not view any record which has
the name of the HOPWA client?

RE: IHFA Records Access Questions

IHFA 0230

Please review the comments below which describe the delema being faced by
our grantee attempting to adequately monitor a HOPWA sponsor.

Thanks very much for your input.

jan

----- Forwarded by Jan Olson/CPD/POR/HUD on 09/07/01 08:07 AM -----

       Earl Cook
       <EarlC@IHFA.O    To:    "'Jan_Olson@HUD.GOV'" <Jan_Olson@HUD.GOV>
       RG>       cc:    Julie Williams <JulieW@IHFA.ORG>, Mike
       Dittenber <MikeD@IHFA.ORG>
       09/06/01    Subject:   RE: HOPWA Monitoring
       06:30 PM

Jan:

Thank you for checking into this issue for us. This is a hot-button item
for us these days. As a follow-up to our discussion this afternoon, and
because we wish to advise the grantee precisely as to what HUD (minimally)
requires to meet the monitoring threshold, I would like to summarize the
issues.

Article V of the our HOPWA Contract has standard verbiage with respect to
monitoring ...

"IHFA may monitor and make periodic, on-site inspections and evaluations of
the Project, this grant and all related books and records. IHFA will
conduct annual on-site monitoring visits to review GRANTEE'S overall
performance and will produce a written status report to the GRANTEE".

In my verification of client files, there were three areas where I felt
additional spot checking of underlying documentation was appropriate; 1)
determination of eligible services, 2) verification of participants HIV
status, and 3) verification of participant income.

Eligible Services
The supportive services provided by this grantee included case management,
psychiatric, and dental services. In order to maintain confidentiality of
the clients medical/clinical records, the project sponsor created a
separate
client tracking file for each HOPWA client - annotating each day that case
management and/or psychiatric services were provided by in-house staff.
After reviewing the randomly selected client files, to match services
reported in the tracking file with those services actually bill, I
requested
to spot check the actual file containing the notes from the case
manager/psychologist to determine that an encounter did actually occur on
the date and times reported on the tracking form. I made it clear that I
was not going to read the notes, but wanted to see the date, time, and
signature of the case manager/psychologist performing the service. The
Grantee claimed that providing me with access without a release from the
client would violate law, and would jeopardize their license. A compromise
was (tentatively)stuck, whereby I would give a specific dates and client
files requested, and the grantee would provide a sanitized copy of the case
notes with all but the date, time, and signature of the provider blocked
out. This seems acceptable to me, as I am not interested in the content of

IHFA 0231

the case notes - just in the knowledge that they exist and reflect an
eligible service.

HIV Status
Currently, each participant in the HOPWA program who receives Supportive
Services must complete an Information Form which includes a "Certification
of HIV/AIDS Status", signed by a Medical Professional or HOPWA Case
Manager.
The certification reads:

"By signing below I certify that the person named above meets the following
program criteria; The person above has the disease of Acquired
Immunodeficiency Syndrome or any conditions arising from the etiologic
agent
for Acquired Immunodeficiency Syndrome, including infection with the Human
Immunodeficiency Virus (HIV)."

In all of the tracking files reviewed, the Certifications were completed by
the Grantee's executive director, a licensed MSW.  As part of my due
diligence, I asked to spot check several files to see that documentation
was
on site that backed up the certification.  My intention in doing so was to
gain assurance that a process was in place to obtain documentation - not to
question the analysis of such documentation (I wouldn't have the foggiest
notion of what to look for anyway).  The response from the grantee was that
the Case manager's certification was the industry standard for
documentation, and that we could not have access to the case manager's
ability to assess.  I accepted that response, and frankly felt that it was
immaterial to delve further.  I have also learned, since discussing with
Julie Williams, that Public Housing accepts a Medical professionals
certification for terminal preference for Section 8 vouchers, and so, would
seem to be acceptable for HOPWA, as well.  However, if what I understood
you
to say this afternoon is true about this verification step being required
as
part of the monitoring, then I believe we have a problem on our hands.
Hopefully, the response from Mr. Harre will clear this up.

Income Verification
The contract reads that the HOPWA Program ... "will create a continuum of
care by linking rental assistance with supportive services to more
effectively assist low income persons who have acquired AIDS and related
diseases".  In the Policies & Procedures attached as an addendum
"Low-Income" is defined as "any individual or family whose income does not
exceed 80% of median income for the area, as determined by HUD".  On the
Information Form, a sub-heading reads; "SOURCES OF HOUSEHOLD INCOME (To be
verified by primary case manager)". Just below this section, it reads: "All
verification must be retained in client files". The grantee contends that
the industry standard for income verification is self-certification. On the
otherhand, I contend that we have a major finding on our hands.  What I
need
is some guidance as to how to advise the grantee to cure the finding; Do I
require that they collect VOEs on all clients, will a 20% sample suffice,
etc.

Thank you in advance for your consideration and prompt response to my long
message.

ec

>-----Original Message-----
>From: Jan_Olson@HUD.GOV [mailto:Jan_Olson@HUD.GOV]
>Sent: Thursday, September 06, 2001 4:12 PM

3

>To: David_S._Harre@HUD.GOV
>Cc: earlc@ihfa.org
>Subject: HOPWA Monitoring
>
>
>Hi David,
>
>I just received a call from our HPAC grantee in Idaho who did
>an on-site
>monitoring of a provider and was refused access to client
>records due to
>confidentiality concerns.
>
>I see that 574.440 says sponsors shall agree to maintain
>confidentiality of
>client names but does that mean even from HUD and the grantee?  Doesn't
>make sense to me.   Although I see the memo David Vos sent out
>on 2/13/98
>regarding review of HOPWA APRs he says  "HUD reserves the
>right to review
>the information used to complete this report, except for names
>and other
>personal identification."
>
>I understand the concerns of the service providers but how are we/the
>grantees supposed to verify service delivery down to the activity level
>(person)?
>
>Thanks for any guidance you can provide.
>
>jan
>

IHFA 0233

# EXHIBIT G

**Earl Cook**

| | |
|---|---|
| **From:** | Julie Williams |
| **Sent:** | Friday, September 14, 2001 11:26 AM |
| **To:** | Gerald Hunter |
| **Cc:** | Earl Cook; Lisa Stevens; Mike Dittenber |
| **Subject:** | FW: HOPWA Housing vouchers |

**Importance:**        High

This is Jan's response to the request for voucher payments to be unfrozen. Jan is fine with referring Mr. Welch to him regarding our restriction from paying any further funds to Idaho AIDS Foundation . Jan's title is "Financial Analyst".

-----Original Message-----
From: Jan_Olson@HUD.GOV [mailto:Jan_Olson@HUD.GOV]
Sent: Friday, September 14, 2001 11:02 AM
To: JulieW@IHFA.ORG
Cc: lisas@IHFA.ORG
Subject: Re: HOPWA Housing vouchers


Okay I'll unfreeze your account.  DO NOT however make payments for any
service you are refused access to records for.

jan


> Julie
> Williams          To:    "'Jan_Olson@HUD.gov'" <Jan_Olson@HUD.gov>
> <JulieW@IHFA.       cc:    Earl Cook <EarlC@IHFA.ORG>, Gerald Hunter
> ORG>                      <GeraldH@IHFA.ORG>, Lisa Stevens <LisaS@IHFA.ORG>,
>                    Mike Dittenber <MikeD@IHFA.ORG>, "Rick Skinner
> 09/14/01            (E-mail)" <rskinner@skinnerfawcett.com>
> 10:04 AM           Subject:   HOPWA Housing vouchers




Hi Jan,

One further note:  I request that continuing funds for payment of the
housing vouchers currently in place be authorized. We have had no
difficulty
verifying income eligibility documentation for housing voucher clients
because we control the paperwork and files. Please discuss any questions on
this issue with Lisa Stevens, Rental Assistance Programs Manager.

- Julie

1

IHFA 0234

# EXHIBIT H

**Rick Skinner**

| | |
|---|---|
| **From:** | Earl Cook [EarlC@IHFA.ORG] |
| **Sent:** | Tuesday, September 18, 2001 1:19 PM |
| **To:** | 'Jan_Olson@HUD.GOV' |
| **Cc:** | Doug_Carlson@HUD.GOV; 'Rick Skinner' |
| **Subject:** | RE: HOPWA Monitoring |

Jan:

As a follow-up to our discussion this morning, our attorney should have an opinion on the (State) confidentiality vs. (HUD) unrestricted access provisions. In the absence of a resolution to this stalemate, the only recourse might be to terminate the contract, and request that the funds be returned from the Idaho Aids Foundation (AIF).

Be that as it may, we have several immediate mini-crises that have arisen as a result of AIF's refusal to provide services (due to the "frozen" funds). We have received several calls from a Ryan White Title III case manager - who typically refers his clients to AIF for emergency housing services - indicating that IAF will not honor a commitment to pay a security deposit on a HOPWA client.

Providing we can verify client eligibility with respect to income and HIV status, we would like to have the flexibility to handle emergency situations on a case by case basis. Until we resolve the issues with the IAF contract, we would like to utilize the deobligated portion of the 2000 program year funds (approx. $15,000 - not including the $6,900 "frozen IAF funds) to handle these cases.

I would appreciate if you could respond as to whether HUD approves that this is an appropriate measure for us to take in the interim.

Thank you!

ec

-----Original Message-----

| | |
|---|---|
| **From:** | Jan_Olson@HUD.GOV [mailto:Jan_Olson@HUD.GOV] |
| Sent: | Monday, September 17, 2001 9:50 AM |
| To: | EarlC@IHFA.ORG |
| Cc: | Doug_Carlson@HUD.GOV |
| Subject: | RE: HOPWA Monitoring |

Hi Earl,

Very well written.

I discussed it with our legal eagle, Don Miller. Redaction of records is a
good idea because as you've said, we don't need to know what the psychiatrist says about the patient. However, allowing IAF to deny full
access to records is a breach of contract. We should not accede to their
demand that a client release form is necessary. It is NOT. If they refuse to allow unfettered access we can not guarantee our funds are being
used for an eligible purpose and as such may take deobligation actions as
permitted under 24 CFR Part 574.540.

IHFA 0304

Keep me posted.

Tel:  503-326-7017/Fax: 503-326-3684

Earl Cook

&lt;EarlC@IHFA.O        To:
"'Jan_Olson@HUD.GOV'" &lt;Jan_Olson@HUD.GOV&gt;
RG&gt;              cc:    Mike
Dittenber &lt;MikeD@IHFA.ORG&gt;
Subject:       RE:
HOPWA Monitoring
09/16/01

03:19 PM

Jan:

Attached please find the draft of our Monitoring Report to the
Idaho AIDS
Foundation. Could you please review to see if my suggested corrective
actions are appropriate.
Thank you!

ec

-----Original Message-----
From:  Jan_Olson@HUD.GOV [mailto:Jan_Olson@HUD.GOV]
Sent:     Tuesday, September 11, 2001 8:06 AM
To:       earlc@ihfa.org; juliew@ihfa.org; miked@ihfa.org
Subject:       RE: HOPWA Monitoring

Here's the response from HQs.  The sponsor must allow full
access to you.

jan

----- Forwarded by Jan Olson/CPD/POR/HUD on 09/11/01 07:19 AM -----

Harry A. Garte

To:     Jan

IHFA 0305

Olson/CPD/POR/HUD@HUD
09/11/01 06:59      cc:

AM           Subject:    RE:
HOPWA Monitoring(Document link: Jan
Olson)

Jan,  The grantee is covered by the same Confidentiality
requirement in our
regulation that the sponsor is also required to operate under.
The grantee
is further required to monitor the sponsors activities and
draws of HOPWA
funds.  You cannot monitor the details and fact if you do not have the
client information and details...   The sponsor is employed by the
grantee... the grantee should have  a contract with the
sponsor...which
indicates a fiduciary relationship... I believe some of the
AIDS service
organizations who get Ryan White funds may be confused as to who they
report to ( the grantee) and need to be re-confirmed that
1) sponsor, you work for me! 2). I need client data to verify
funds are
used as per the regulations etc... 3) the grantee must also  keep
client data confidential as well.   HUD may need to assert
themselves with
the sponsors who fail to cooperate?  Let me know if you need
any additional
assistance/Hg

(See attached file: Monitoring-Visit010904.doc)

IHFA 0306

# EXHIBIT I

**Earl Cook**

**From:** Jan_Olson@HUD.GOV
**Sent:** Wednesday, September 19, 2001 8:30 AM
**To:** earlc@ihfa.org; miked@ihfa.org; juliew@ihfa.org
**Cc:** CPD-Portland@HUD.GOV
**Subject:** Access to Client Records in Monitoring of HOPWA Grants

Hi Earl,

I just got off the phone with David Vos who is the Director, Office of
HIV/AIDS Housing, CPD. He said HUD and the grantee must have full and
unfettered access to client files (including seeing the names of clients).
End of story.

As to you being able to work directly with the IAF subcontractors (such as
Ryan White Title III case managers) Mr. Vos said there wasn't any
regulatory problem with it. When you return from your monitoring in
northern Idaho let's discuss how you want to change the program. We'll
need to amend the grant.

Keep up the good work!

jan

Jan S. Olson, Financial Analyst
Community Planning and Development Division
US Department of Housing and Urban Development
400 SW 6th Avenue, Suite 700, Portland, OR 97204

Tel: 503-326-7017/Fax: 503-326-3684

EMAIL. JAN OLSON, 9/19/01
RE: David Vos response/Access

1

IHFA 0229

# EXHIBIT J

**Idaho Housing
and Finance**
A S S O C I A T I O N

P.O. Box 7899

(565 W. Myrtle Street)

Boise, Idaho 83707-1899

208-331-4882

Fax 208-331-4802

www.ihfa.org

TDD 800-545-1833 Ext. 400

September 19, 2001

Mr. Mark Welch, Executive Director
Idaho Aids Foundation
6023 Clinton Road
Boise, ID 83704

Dear Mr. Welch:

Thank you for spending some time with Ms. Julie Williams and me on September 13, 2001 regarding the HOPWA grant process. I wanted to follow up the meeting with a brief letter summarizing what I believe to be the meeting results and intended actions.

First, Ms. Williams indicated she would provide you with appropriate forms to assist in meeting necessary "Income Verification" documentation for clients receiving supportive services. Also, Ms. Williams will be providing a written authorization that identifies eligible billing categories for these services. It is my understanding that this information had been verbally communicated to you, but you desired the written authorization for clarification purposes.

The primary concern discussed during our meeting, I believe, was the documentation standard needed to substantiate that supportive services are provided as billed. As indicated, our understanding of HUD's directive on this matter requires that HUD or their agent have access to source documentation, or client files, as necessary. Of course, your concern dealt with whether this was legal under Idaho law, and unnecessarily violated client confidentiality. Our interest in this issue is to ensure that, as HUD's agent, we administer the HOPWA grant consistent with HUD's regulations so as not to invalidate the grant.

We indicated that we would continue to communicate with HUD to determine whether your proposed documentation standard was adequate, and to request HUD's on-site review of your documentation and processes. Ms. Julie Williams did make another contact with our Portland HUD representative and requested that HUD's national program manager also be consulted on this matter. The result of this communication was a confirmation by HUD that access to the client files was essential. Additionally, in light of the current inability to access appropriate source documentation, as defined by HUD, we were directed to freeze all disbursements until this issue is resolved. This directive includes the final $6,902.86 disbursement under the 2000 contract that we indicated would soon be mailed to you.

IHFA 0302



September 19, 2001
TO:  Mr. Mark Welch
Pg. 2 of 2

Because of this action, Ms. Williams requested an on-site visit as soon as possible by appropriate HUD representatives.  Additionally, our Portland representative indicated a willingness to discuss this issue directly with you.  His name is Mr. Jan Olson and he can be reached at (503) 326-7017.   Ms. Williams is handling all of these communications at this point, and I encourage you to contact her for questions or future direction on this matter.  We are hopeful of facilitating a meeting with HUD as soon as possible.

Sincerely,

Gerald M. Hunter
President and Executive Director

cc:     Julie Williams
         Earl Cook

IHFA 0303

# EXHIBIT K

**Idaho Housing
and Finance**
ASSOCIATION

P.O. Box 7899
Cf65 W Myrtle Street
Boise Idaho 83707-1899
208-331-4882
Fax 208-331-4802
www.ihfa.org
TDD 800-545-1833 Ext. 400

September 25, 2001

Mark Welch
Executive Director
Idaho AIDS Foundation
6023 Clinton Street
Boise, ID 83705

RE: <u>HOPWA Monitoring Report</u>

Dear Mr. Welch:

Attached please find the monitoring report prepared by the Grant Programs Department, identifying the concerns and findings resulting from their on-site monitoring review visits of August 22 and September 5, 2001. The work reviewed covered services provided and billed for reimbursement by the Idaho Aids Foundation prior to June 30, 2001.

IHFA is using a standard monitoring report format which details areas of review and concern identified as either *Findings, Observations or Concerns* and provides suggestions for corrective actions which will satisfy any regulatory violations that may be noted. Please provide IHFA with your written response to each item in this report no later than thirty (30) days from receipt of this letter.

This monitoring review will be closed when corrective actions, or mutually agreed upon substituted actions are completed. Please provide documentation to ensure that the findings and concerns are resolved and systems are in place to prevent reoccurrence. Once this information is reviewed and if all corrective measures are in compliance with program requirements, we will send you a letter closing out this review.

Mr. Gerald Hunter indicated in his letter to you dated September 19, 2001 that I would provide appropriate forms to assist in meeting necessary "Income Verification" documentation. The specific forms of acceptable documentation are listed in the corrective actions noted following Finding # 2.

The importance of remedying Finding #1 cannot be over emphasized. Failure on the part of the IAF to allow IHFA to audit source files and documentation may result in actions on HUD'S part to modify the HOPWA grant administrative structure. Potential administrative remedies could include a new disbursement program that provides funds directly to current regional providers of housing counseling, psychiatric and dental services agreeing to comply with source documentation requirements.

If you should have questions, please do not hesitate to contact me at (208) 331-4889.

Sincerely,

Julie H. Williams
Vice President
Community and Housing Services

 

IHFA 0287

**Annual Monitoring Visit Report**
**Housing Opportunities for Persons with AIDS (HOPWA)**
**Idaho AIDS Foundation**
**HOPWA Contracts SS-99-01 and SS-99-04**

## BACKGROUND

The Housing Opportunities for Persons with AIDS (HOPWA) Program is designed to provide States and localities with resources and incentives to devise long term strategies for meeting the housing needs of persons with acquired immunodeficiency syndrome (AIDS) or related diseases and their families (24 CFR section 574.3). On August 22, 2001, Mike Dittenber and Earl Cook from IHFA visited the IAF to conduct the required annual monitoring review.  Earl Cook returned on September 5, 2001, to complete the review of client files.

## PROGRAM PROCEDURES

The Department of Housing and Urban Development (HUD) awarded Idaho Housing and Finance Association (IHFA) $1,299,837 on April 28, 2000 through a competitive grant process. Idaho is one of those States that do not qualify for formula awards and is governed by the following regulations: AIDS Housing Opportunity Act, 42 USC Sec. 12901 et.sec. (the Act), the Housing Opportunities for Persons With AIDS Program rule, 24 CER 574 as amended, and the Consolidated Plan rule, 24 CFR 91 as amended (the Regulations); all of which were incorporated into both  IAF contracts.

Under 24 CFR Section 574.420(a), IHFA (as the grantee) has obligated to ensure that project sponsors contracted with IHFA cooperate as follows:

> "The grantee shall agree, and shall ensure that each project sponsor agrees, to cooperate and coordinate in providing assistance under this part with the agencies of the relevant State and local governments responsible for services in the area served by the grantee for eligible persons and other public and private organizations and agencies providing services for such eligible persons."

Accordingly, HUD expects that each Sponsor perform program procedures that are required of IHFA as the grantee as well.

## COMPLIANCE REQUIREMENTS

### Activities Allowed or Unallowed

HOPWA funds may be used to assist all forms of housing designed to prevent homelessness, including emergency housing, shared housing arrangements, apartments, single room occupancy (SRO) dwellings, and community residences.  Appropriate supportive services must be provided as part of any HOPWA assisted housing, but HOPWA funds may also be used to provide services independently of any housing activity.  The IAF contract provides that the following activities may be carried out with HOPWA funds:

- housing information services,

- resource identification to establish, coordinate and develop housing assistance resources for eligible persons,
- short-term rent, mortgage and utility payments to prevent the homelessness of the tenant or the mortgagor of a dwelling,
- supportive services, including case management, and the coordination of statewide dental and psychiatric services, and
- administrative expenses.

As part of the IHFA review of IAF records and client files, the reviewers selected client files at random to test whether the services provided were allowable. The reviewers also were required to determine that grant funds were not used to make payments for case management, psychiatric and dental services that may have been previously made under the Idaho Ryan White Title II Program, under an insurance policy, or under any Federal or State health benefits program.

### Eligibility for Individuals
A person eligible for assistance under this program means one with AIDS or a related disease who is a low-income individual, as defined in 24 CFR section 574.3, and the person's family. The eligibility of those tenants who were admitted to the program should be determined by:
     (1) obtaining signed applications that contained all the information needed to determine eligibility, income, rent and order of selection; and
     (2) obtaining third party verifications or documentation of expected income, assets, unusual medical expenses, and any other pertinent information.
As part of the monitoring visit, the reviewers randomly selected client files in order to check for the appropriate signed applications and third party verifications.

### Homelessness Prevention
Rent, mortgage and utility payments to prevent the homelessness of the tenant or the mortgagor of a dwelling may not be provided to such an individual for costs accruing over a period of more than 21 weeks in any 52 week period. A review of the client billing sheets submitted over the contract period did contain any cases where services were provided approaching this maximum threshold.

### HUD-40110, Annual Progress Report (APR)
This report is due from each grantee within 90 days after the close of its program year. As the Program year ended June 30, 2001, this APR was not available at the time of the monitoring visit.

## REVIEW OF CLIENT FILES
Reviewing source documents to determine clients' eligibility for HOPWA assistance is part of IHFA's performance monitoring. The HUD administrative requirements, in the regulations at 24 CFR 574.605, reference HUD's uniform administrative requirements and applicable Office of Management and Budget (OMB) Circulars. OMB Circular A-102, implemented by 24 CFR Part 85, Administrative Requirements for Grants and Cooperative Agreements to State, Local and Federally Recognized Indian Tribal Governments, specifically states at 24 CFR 85.42(e) that the awarding agency, or any of their authorized representatives, have the right of access to any pertinent documents and records of the grantee and subrecipients.

IHFA 0289

As a result of the review of client files on September 5, following are two findings, two concerns, and one recommendation:

## Finding #1 - Eligible Activities
**IHFA was not able to determine that IAF conducted eligible activities consistent with 24 CFR 574.300(b). Article V of the HOPWA Contract provides that IHFA "may monitor and make periodic, on-site inspections and evaluations of the Project, this grant and all related books and records. IHFA will conduct annual on-site monitoring visits to review GRANTEE'S overall performance and will produce a written status report to the GRANTEE."**

Eligible services could not be verified by the source documentation - which was not provided as part of the client-tracking file. The supportive services provided by this grantee included case management, psychiatric, and dental services. In an effort to maintain confidentiality of the clients medical/clinical records, the project sponsor had created a separate client tracking file for each HOPWA client - annotating each day that case management and/or psychiatric services were provided by in-house staff.

After reviewing the selected client tracking files, to match services reported in the tracking file with those services actually bill, the reviewer requested that a random spot check of four (4) case files containing casenotes from the case manager/psychologist to determine that an encounter did occur on the date and times reported on the tracking form. The reviewer made it clear that he did not need to read the notes, but wanted to see the date, time, and signature of the case manager/psychologist performing the service. The sponsor claimed that providing access without a release from the client would violate state law, and would jeopardize their license.

HUD officials advised IHFA that a release from the client was not necessary in order for IAF to provide HUD, or IHFA as its representative, unrestricted access to the client files. HUD explained that IHFA is subject to the provisions of 24 CFR 574.440, which ensures the confidentiality of any records of individuals receiving assistance. They also explained that these confidentiality provisions were consistent with the standard administrative requirements referenced in 24 CRF 574.605 - specifically the requirements of 24 CFR part 85, and OMB Circular A-110 (attached as Exhibit "A"), and in no way limits or restricts access by HUD, or IHFA as its representative.

## Corrective Action:
For all supportive services for clients where services are intended to be billed to HOPWA, the Sponsor shall provide IHFA and HUD full access to files as specifically required by 24 CFR 85.42(e) in order to determine the provision of eligible services. For purposes of completing the monitoring review of randomly selected files, the Sponsor shall provide IHFA access to the following case files:

| Client ID | Date | Service |
|---|---|---|
| EJ7394-0266 | 7/05/00 | 2 CM/1.5 MH |
| | 8/15/00 | 2 CM/1.5 MH |

IHFA 0290

|               | 9/11/00  | .5 CM/1MH   |
|               | 10/3/00  | 1 CM/2 MH   |
|               | 11/6/00  | 1 MH        |
|               | 11/25/00 | 1 MH/1 CM   |
| LB9877-0058   | 11/10/00 | 2 CM        |
|               | 3/19/01  | 2 CM/1 MH   |
| QD5024-0279   | 4/5/01   | 1 MH/1 CM   |
|               | 5/23/01  | 1 MH/1 CM   |
| DD8805-1064   | 9/21/00  | 2 CM        |
|               | 12/2/00  | 1 CM/1.5 MH |

## Finding #2 - Income Verification

**IHFA was not able to determine whether the clients served by IAF were low-income individuals as defined in 24 CFR 574.3, and therefore may not be eligible to receive services under HOPWA. The HOPWA contract indicates that the HOPWA Program ... "will create a continuum of care by linking rental assistance with supportive services to more effectively assist low income persons who have acquired AIDS and related diseases".**

The Policies and Procedures attached to the contract as an addendum further indicated that "Low-Income" is defined as "any individual or family whose income does not exceed 80% of median income for the area, as determined by HUD". On the *Supportive Services ONLY Information Form*, a sub-heading reads; "SOURCES OF HOUSEHOLD INCOME (To be verified by primary case manager)". Just below this section, it reads: "All verification must be retained in client files". The Sponsor indicated that it was their understanding that self-certification was the threshold for documentation of income under the HOPWA contract language referenced above. Following is a brief summary of the client tracking files reviewed:

**Client EJ7394-0266**
Listed monthly income as $563.00 from social security disability ($6,756 annual income) on the Information Form signed by the client. No documentation existed in the client-tracking file to back up the income. The tracking form from July 3 through July 26, 2000 noted that the client was "in process of being placed in HOPWA housing". However, there was no explanation or resolution of the client's housing situation noted beyond July 26 although services were continued through March 2001, at which time the client passed away. In total, the client received 138 hours of mental health services totaling $10,350 and 38 hours of case management totaling $1,710 from July 2000 through March 2001.

**Client LB9877-0058**
Listed no sources of income on the Information Form and no *Statement of No Income Form SS-05* existed in the file. According to the HOPWA Policies and Procedures (Page 8), the Form SS-05 is specifically requested as documentation.

**Client QD5024-0279**
Listed monthly income as $800 from wages on the Information Form signed by the client. No verification of Employment (VOE) exists in the file to verify income. Two invoices for Homelessness Prevention had been processed for this client in addition to case management and

IHFA 0291

mental health services.  However, no documentation existed in the file to back up the basis for the decision to pay emergency rental assistance.

**Client DD8805-1064**
Listed monthly income from wages as $512 on Information Form.  No Verification of Employment (VOE) in file the verify income.  No indication of client's current housing situation on tracking form.

**Corrective Action:**
Provide source documentation of household income for all HOPWA clients to verify that household income is below 80% of the Area's Median Income as reflected in the table for the Boise Metropolitan Statistical Area listed below.  Please note that Form SS-05 "Statement of No Income", provided as part of the Policies and Procedures (copy attached as Exhibit "B"), must be obtained from any applicant for services who does not have any income - and must be completed quarterly.  Copies of the "Statement of Benefits" received from public agencies are sufficient documentation for applicants receiving public assistance (i.e. SSI, SSDI, etc.).  In lieu of third-party verification of income from employers, copies of pay stubs covering a two-month period of work will be acceptable for applicants who receive wages - and should be verified periodically, but at least, once every six-months.

| % of Median Income | Number of Persons in Household | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 80% | 28,100 | 32,150 | 36,150 | 40,150 | 43,350 | 46,600 | 49,800 | 53,000 |

## Concern #1: Homelessness Prevention
The HOPWA Policies and Procedures Manual provides much flexibility for the case managers to utilize these Emergency Housing Assistance funds.  In the previous contract year, the use of these funds did not require the client to have an eviction notice, foreclosure notice, or a utility termination notice in order to receive assistance.  However, the client tracking file for Client QD5024-0279 did not evidence the circumstances or the decision-making process that went into determining that the situation warranted payment as an emergency.

**Corrective Action:**
For future emergency assistance, require that clients provide copy of eviction or foreclosure notice or utility termination notice.  This change to the procedures will be discussed at the next HOPWA Advisory Group meeting and will be incorporated into an updated Policies and Procedures Manual.

## Concern #2: HUD-40110, Annual Progress Report (APR)
Pursuant to 24 CFR 574.520(b), the grantee is required to submit to HUD annually a report describing the use of the funds received. The deadline for submission of the APR from project sponsors to IHFA was September 14, 2001, and was due from IHFA, as grantee, to HUD on September 30, 2001.  The AIF is the only remaining service provider that has not submitted their APR. The APR is now overdue, and IHFA must now request an extension to the APR submission date from HUD.  If we do not receive the APR from the IAF shortly, this concern will become a finding.

IHFA 0292

**Corrective Action:**

Submit the APR as soon as possible, but no later than 30 days from the date of receipt of this monitoring review.

## Recommendation #1: Verification of HIV Status

Each participant in the HOPWA program who receives Supportive Services ONLY must complete an Information Form which includes a "Certification of HIV/AIDS Status", signed by a Medical Professional or HOPWA Case Manager. The certification reads:

> "By signing below I certify that the person named above meets the following program criteria; The person above has the disease of Acquired Immunodeficiency Syndrome or any conditions arising from the etiologic agent for Acquired Immunodeficiency Syndrome, including infection with the Human Immunodeficiency Virus (HIV)."

In all of the tracking files reviewed, the Sponsor's executive director, a licensed MSW, completed the Certifications. HUD recognizes the Ryan White Title II Case Manager's as an acceptable certifying party. The sponsor also accepts referrals from a Title III clinic within the service area, and IHFA recommends that a copy of the Form SS-01 be obtained with the applicable certification from a medical provider or Ryan White case manager. However, it is not required that the sponsor obtains the source documentation of HIV status (i.e. clinical lab results, etc.).

IHFA 0293

Exhibit "A"


## Federal References

**24 CFR Sec. 574.440  Confidentiality**
**24 CFR Sec. 574.605  Applicability of OMB circulars**
**24 CFR Sec. 85.42  Retention and access requirements for records**
**24 CFR Sec. 84.53  Retention and access requirements for records**
**OBM   CIRCULAR NO. A-110, Sec. 53 Retention and access requirements for records**

[Code of Federal Regulations]
[Title 24, Volume 3]
[Revised as of April 1, 2001]
From the U.S. Government Printing Office via GPO Access
**[CITE: 24CFR574.440]**

[Page 207]

## TITLE 24--HOUSING AND URBAN DEVELOPMENT

## CHAPTER V--OFFICE OF ASSISTANT SECRETARY FOR COMMUNITY PLANNING AND DEVELOPMENT, DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

PART 574--HOUSING OPPORTUNITIES FOR PERSONS WITH AIDS--Table of Contents

Subpart E--Special Responsibilities of Grantees and Project Sponsors

Sec. 574.**440**  Confidentiality.

    The grantee shall agree, and shall ensure that each project sponsor agrees, to ensure the confidentiality of the name of any individual assisted under this part and any other information regarding individuals receiving assistance.

===========================================================

[Code of Federal Regulations]
[Title 24, Volume 3]
[Revised as of April 1, 2001]
From the U.S. Government Printing Office via GPO Access
[CITE: 24CFR574.605]

[Page 209]

## TITLE 24--HOUSING AND URBAN DEVELOPMENT

## CHAPTER V--OFFICE OF ASSISTANT SECRETARY FOR COMMUNITY PLANNING AND DEVELOPMENT, DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

PART 574--HOUSING OPPORTUNITIES FOR PERSONS WITH AIDS--Table of Contents

Subpart G--Other Federal Requirements

Sec. 574.605  Applicability of OMB circulars.

The policies, guidelines, and requirements of 24 CFR part 85 (codified pursuant to OMB Circular No. A-102) and OMB Circular No. A-87 apply with respect to the acceptance and use of funds under the program by States and units of general local government, including public agencies, and Circulars Nos. A-110 and A-122 apply with respect to the acceptance and use of funds under the program by private non-profit entities. (Copies of OMB Circulars may be obtained from E.O.P. Publications, room 2200, New Executive Office Building, Washington, DC 20503, telephone (202) 395-7332. (This is not a toll-free number.) There is a limit of two free copies.

=====================================================

[Code of Federal Regulations]
[Title 24, Volume 1]
[Revised as of April 1, 2001]
From the U.S. Government Printing Office via GPO Access
[**CITE: 24CFR85.42**]

[Page 504-505]

TITLE 24--HOUSING AND URBAN DEVELOPMENT

PART 85--ADMINISTRATIVE REQUIREMENTS FOR GRANTS AND COOPERATIVE AGREEMENTS TO STATE, LOCAL AND FEDERALLY RECOGNIZED INDIAN TRIBAL GOVERNMENTS--Table of Contents

Subpart C--Post-Award Requirements

Sec. 85.**42**  Retention and access requirements for records.

(a) Applicability. (1) This section applies to all financial and programmatic records, supporting documents, statistical records, and other records of grantees or subgrantees which are:
(i) Required to be maintained by the terms of this part, program regulations or the grant agreement, or
(ii) Otherwise reasonably considered as pertinent to program regulations or the grant agreement.
(2) This section does not apply to records maintained by contractors or subcontractors. For a requirement to place a provision concerning records in certain kinds of contracts, see Sec. 85.36(i)(10).
(b) Length of retention period. (1) Except as otherwise provided, records must be retained for three years from the starting date specified in paragraph (c) of this section.
(2) If any litigation, claim, negotiation, audit or other action involving the records has been started before the expiration of the 3-

year period, the records must be retained until completion of the action and resolution of all issues which arise from it, or until the end of the regular 3-year period, whichever is later.

(3) To avoid duplicate recordkeeping, awarding agencies may make special arrangements with grantees and subgrantees to retain any records which are continuously needed for joint use. The awarding agency will request transfer of records to its custody when it determines that the records possess long-term retention value. When the records are transferred to or maintained by the Federal agency, the 3-year retention requirement is not applicable to the grantee or subgrantee.

(c) Starting date of retention period--(1) General. When grant support is continued or renewed at annual or other intervals, the retention period for the records of each funding period starts on the day the grantee or subgrantee submits to the awarding agency its single or last expenditure report for that period. However, if grant support is continued or renewed quarterly, the retention period for each year's records starts on the day the grantee submits its expenditure report for the last quarter of the Federal fiscal year. In all other cases, the retention period starts on the day the grantee submits its final expenditure report. If an expenditure report has been waived, the retention period starts on the day the report would have been due.

(2) Real property and equipment records. The retention period for real property and equipment records starts from the date of the disposition or replacement or transfer at the direction of the awarding agency.

(3) Records for income transactions after grant or subgrant support. In some cases grantees must report income after the period of grant support. Where there is such a requirement, the retention period for the records pertaining to the earning of the income starts from the end of the grantee's fiscal year in which the income is earned.

(4) Indirect cost rate proposals, cost allocations plans, etc. This paragraph applies to the following types of documents, and their supporting records: Indirect cost rate computations or proposals, cost allocation plans, and any similar accounting computations of the rate at which a particular group of costs is chargeable (such as computer usage chargeback rates or composite fringe benefit rates).

(i) If submitted for negotiation. If the proposal, plan, or other computation is required to be submitted to the Federal Government (or to the grantee) to form the basis for negotiation of the rate, then the 3-year retention period for its supporting records starts from the date of such submission.

(ii) If not submitted for negotiation. If the proposal, plan, or other computation is not required to be submitted to the Federal Government (or to the grantee) for negotiation purposes, then the 3-year retention period for the proposal plan, or computation and its supporting records starts from end of the fiscal year (or other

IHFA 0297

accounting period) covered by the proposal, plan, or other computation.

(d) Substitution of microfilm. Copies made by microfilming, photocopying, or similar methods may be substituted for the original records.

(e) Access to records--(1) Records of grantees and subgrantees. The awarding agency and the Comptroller General of

[[Page 505]]

the United States, or any of their authorized representatives, shall have the right of access to any pertinent books, documents, papers, or other records of grantees and subgrantees which are pertinent to the grant, in order to make audits, examinations, excerpts, and transcripts.

(2) Expiration of right of access. The rights of access in this section must not be limited to the required retention period but shall last as long as the records are retained.

(f) Restrictions on public access. The Federal Freedom of Information Act (5 U.S.C. 552) does not apply to records Unless required by Federal, State, or local law, grantees and subgrantees are not required to permit public access to their records.

<hr>

[Code of Federal Regulations]
[Title 24, Volume 1]
[Revised as of April 1, 2001]
From the U.S. Government Printing Office via GPO Access
[CITE: 24CFR84.53]

[Page 465-466]

TITLE 24--HOUSING AND URBAN DEVELOPMENT

PART 84--UNIFORM ADMINISTRATIVE REQUIREMENTS FOR GRANTS AND AGREEMENTS WITH INSTITUTIONS OF HIGHER EDUCATION, HOSPITALS, AND OTHER NON-PROFIT ORGANIZATIONS--Table of Contents

Subpart C--Post-Award Requirements

Sec. 84.53  Retention and access requirements for records.

(a) This section sets forth requirements for record retention and access to records for awards to recipients. HUD shall not impose any other record retention or access requirements upon recipients.

(b) Financial records, supporting documents, statistical records, and all other records pertinent to an award shall be retained for a

period of three years from the date of submission of the final expenditure report or, for awards that are renewed quarterly or annually, from the date of the submission of the quarterly or annual financial report, as authorized by HUD. The only exceptions are the following.

(1) If any litigation, claim, or audit is started before the expiration of the 3-year period, the records shall be retained until all litigation, claims or audit findings involving the records have been resolved and final action taken.

(2) Records for real property and equipment acquired with Federal funds shall be retained for 3 years after final disposition.

(3) When records are transferred to or maintained by HUD, the 3-year retention requirement is not applicable to the recipient.

(4) Indirect cost rate proposals, cost allocation plans, etc. as specified in Sec. 84.53(g).

(c) Copies of original records may be substituted for the original records if authorized by HUD.

(d) HUD shall request transfer of certain records to its custody from recipients when it determines that the records possess long term retention value. However, in order to avoid duplicate recordkeeping, HUD may make arrangements for recipients to retain any records that are continuously needed for joint use.

(e) HUD, the Inspector General, Comptroller General of the United States, or any of their duly authorized representatives, have the right of timely and unrestricted access to any books, documents, papers, or other records of recipients that are pertinent to the awards, in order to make audits, examinations, excerpts, transcripts and copies of such documents. This right also includes timely and reasonable access to a recipient's personnel for the purpose of interview and discussion related to such documents. The rights of access in this paragraph (e) are not limited to the required retention period, but shall last as long as records are retained.

(f) Unless required by statute, HUD shall not place restrictions on recipients that limit public access to the records of recipients that are pertinent to an award, except when HUD can demonstrate that such records shall be kept confidential and would have been exempted from disclosure pursuant to the Freedom of Information Act (5 U.S.C. 552) if the records had belonged to HUD.

(g) Indirect cost rate proposals, cost allocation plans, etc. Paragraphs (g)(1) and (g)(2) of this section apply to the following types of documents, and their supporting records--indirect cost rate computations or proposals, cost allocation plans, and any similar accounting computations of the rate at which a particular group of costs is chargeable

[[Page 466]]

(such as computer usage chargeback rates or composite fringe benefit rates).

(1) If submitted for negotiation. If the recipient submits to HUD or the subrecipient submits to the recipient the proposal, plan, or other computation to form the basis for negotiation of the rate, then the 3-year retention period for its supporting records starts on the date of such submission.

(2) If not submitted for negotiation. If the recipient is not required to submit to HUD or the subrecipient is not required to submit to the recipient the proposal, plan, or other computation for negotiation purposes, then the 3-year retention period for the proposal, plan, or other computation and its supporting records starts at the end of the fiscal year (or other accounting period) covered by the proposal, plan, or other computation.

# CIRCULAR A-110
## (REVISED 11/19/93, As Further Amended 9/30/99)

CIRCULAR NO. A-110
Revised

____.53 Retention and access requirements for records.

(a) This section sets forth requirements for record retention and access to records for awards to recipients. Federal awarding agencies shall not impose any other record retention or access requirements upon recipients.

(b) Financial records, supporting documents, statistical records, and all other records pertinent to an award shall be retained for a period of three years from the date of submission of the final expenditure report or, for awards that are renewed quarterly or annually, from the date of the submission of the quarterly or annual financial report, as authorized by the Federal awarding agency. The only exceptions are the following.

(1) If any litigation, claim, or audit is started before the expiration of the 3-year period, the records shall be retained until all litigation, claims or audit findings involving the records have been resolved and final action taken.

IHFA 0300

(a) Awards may be terminated in whole or in part only if (1), (2) or (3) apply.

(1) By the Federal awarding agency, if a recipient materially fails to comply with the terms and conditions of an award.

(2) By the Federal awarding agency with the consent of the recipient, in which case the two parties shall agree upon the termination conditions, including the effective date and, in the case of partial termination, the portion to be terminated.

(3) By the recipient upon sending to the Federal awarding agency written notification setting forth the reasons for such termination, the effective date, and, in the case of partial termination, the portion to be terminated. However, if the Federal awarding agency determines in the case of partial termination that the reduced or modified portion of the grant will not accomplish the purposes for which the grant was made, it may terminate the grant in its entirety under either paragraphs (a)(1) or (2).

(b) If costs are allowed under an award, the responsibilities of the recipient referred to in paragraph ____.71(a), including those for property management as applicable, shall be considered in the termination of the award, and provision shall be made for continuing responsibilities of the recipient after termination, as appropriate.

____.62 Enforcement.

(a) Remedies for noncompliance. If a recipient materially fails to comply with the terms and conditions of an award, whether stated in a Federal statute, regulation, assurance, application, or notice of award, the Federal awarding agency may, in addition to imposing any of the special conditions outlined in Section ____.14, take one or more of the following actions, as appropriate in the circumstances.

(1) Temporarily withhold cash payments pending correction of the deficiency by the recipient or more severe enforcement action by the Federal awarding agency.

(2) Disallow (that is, deny both use of funds and any applicable matching credit for) all or part of the cost of the activity or action not in compliance.

(3) Wholly or partly suspend or terminate the current award.

(4) Withhold further awards for the project or program.

(5) Take other remedies that may be legally available.

(b) Hearings and appeals. In taking an enforcement action, the awarding agency shall provide the recipient an opportunity for hearing, appeal, or other administrative proceeding to which the recipient is entitled under any statute or regulation applicable to the action involved.

(c) Effects of suspension and termination. Costs of a recipient resulting from obligations incurred by the recipient during a suspension or after termination of an award are not allowable unless the awarding agency expressly authorizes them in the notice of suspension or termination or subsequently. Other recipient costs during suspension or after termination which are necessary and not reasonably avoidable are allowable if (1) and (2) apply.

# EXHIBIT L

**Earl Cook**

| | |
|---|---|
| **From:** | Earl Cook |
| **Sent:** | Wednesday, October 03, 2001 5:59 PM |
| **To:** | Jan Olson (E-mail) |
| **Subject:** | FW: Summary of Phone Conference between HUD |

Jan:

One item that I did not memorialize in my recap was the issue of the $6,900 "frozen" funds. I recall that you agreed that it was fair for us to hold on to the funds until IAF provided IHFA to the "sanitized" and "redacted" files.

In a separate email, I believe that Julie has requested clarification whether we may release the funds prior to working out the details regarding to scope of the file review.

Thank you!

ec


>-----Original Message-----
>From: Jan_Olson@HUD.GOV [mailto:Jan_Olson@HUD.GOV]
>Sent: Thursday, September 27, 2001 11:04 AM
>To: EarlC@IHFA.ORG
>Subject: Re: Summary of Phone Conference between HUD
>
>
>
>Hi Earl,
>
>This is an excellent recap of our conversation.
>
>While the regulations do require full and unfettered access to
>all records,
>the assumption is that clients are made aware of the
>requirement when they
>receive HOPWA-funded services.  According to Mr. Welch this
>was not done.
>I did not fully appreciate that point when this issue was
>first brought up.
>
>The actions you originally proposed in the monitoring report regarding
>confidentiality were in fact appropriate.  Sorry for the misdirection.
>
>jan
>
>
>
>Jan S. Olson, Financial Analyst
>Community Planning and Development Division
>US Department of Housing and Urban Development
>400 SW 6th Avenue, Suite 700, Portland, OR 97204
>
>Tel:  503-326-7017/Fax: 503-326-3684
>
>
>
>
>               Earl Cook
>

1

IHFA 0598

```
>              <EarlC@IHFA.O       To:    "Jan Olson
>(E-mail)" <Jan_Olson@HUD.GOV>
>              RG>          cc:    Julie
>Williams <JulieW@IHFA.ORG>
>                        Subject:    Summary
>of Phone Conference between HUD
>              09/27/01
>
>              10:00 AM
>
>
>
>
>
>
>
>
>Jan:
>
```
>As a follow-up to our discussion yesterday afternoon after your phone
>conference with the executive director of the Idaho Aids
>Foundation (IAF),
>Mark Welch, I would like to recap several of the issues.
>
>I assume that Mark called you in response to Mr. Hunter's letter of
>September 19, 2001. The letter outlined IAF's primary concern that the
>documentation standards required of HOPWA grantees violated client
>confidentiality.
>
>Based on the advise received by yourself, and confirmed by
>Harry Gart, the
>national HOPWA Program Manager, and David Vos, the Director of
>the Office
>of
>HIV/AIDS Housing, CPD, Mr. Hunter communicated to Mr. Welch
>that access to
>the client files was essential.  Prior to receiving such
>definitive advice
>from HUD, I had prepared the following corrective action plan
>to address
>the
>documentation weakness, and had submitted to you for your
>review and input:
>
>   "Corrective Action:  For all future services for clients where
>services
>are intended to be billed to HOPWA, the Sponsor shall include
>IHFA and HUD
>on release form (sample attached as Exhibit "A")and shall
>provide IHFA full
>access to review the case notes in order to determine the provision of
>eligible services.
>
>For those randomly selected files, the Sponsor shall provide
>"sanitized"
>case notes with all clinical and/or psychiatric evaluation notations
>redacted - other than the date, time, and signature of the case manager
>and/or psychologist performing the service. "
>
>In your email response of September 17, 2001, you commented as follows:
>
>" I discussed it with our legal eagle, Don Miller. Redaction
>of records is

IHFA 0500

>a good idea because as you've said, we don't need to know what the
>psychiatrist says about the patient. However, allowing IAF to deny full
>access to records is a breach of contract. We should not
>accede to their
>demand that a client release form is necessary. It is NOT. If
>they refuse
>to
>allow unfettered access we can not guarantee our funds are
>being used for
>an eligible purpose and as such may take deobligation actions
>as permitted
>under 24 CFR Part 574.540."
>
>According to our discussion, you indicated that the previous corrective
>action may be appropriate --- and that full, unrestricted access to the
>client files for those who sought services last year may not
>be necessary.
>As I understand your reasoning - which I understand was
>communicated to,
>and
>agreed to by Mr. Welch - the client should have been given a
>choice at the
>time of intake, as to whether they wished to participate in the HOPWA
>Program.  Had client had been given a choice to participate,
>part of the
>decision whether to participate in the HOPWA Program should
>have been based
>on the client's understanding that the records be made
>available to IHFA -
>pursuant to various HUD regulations.  At that point, the
>client should have
>been presented with the alternative to either refuse to
>participate (and
>thereby NOT receive any services funded through HOPWA) or agree to
>participate.  Accordingly, IHFA should have required that IAF obtain a
>release from the client granting HUD and IHFA, as it's
>representative, full
>access, etc.
>
>Your recommendation to me was that IHFA amend Finding #1 of it's HOPWA
>Monitoring Report of September 25, 2001, and incorporate the previous
>corrective action plan. You also indicated that we should
>communicate this
>amendment expeditiously, and that we make the requirement for obtaining
>releases effective immediately.
>
>Since Mr. Welch did not raise the issue of income verification in his
>conference with you, I can only assume that Julie William's letter of
>September 25, 2001 which was sent with the HOPWA Monitoring
>Report was NOT
>in Mr. Welch's possession at the time you spoke with him yesterday
>afternoon.  Either that, or Mark did have the letter in his
>possession, but
>did not have a issue with the finding. You indicated to me that the
>corrective action suggested for Finding #2 was appropriate.
>
>It is not clear to me how the topic of the APR came up in your
>conference
>with Mr. Welch, but you indicated the Mr. Welch was not aware of the
>requirement to submit an annual report. If you will recall, I responded
>with
>astonishment - since we have met several times to discuss the
>APR ... and
>Mr. Welch represented on a number of occasions that he was working on a

3

IHFA 0600

>system to capture statewide utilization of services for psychiatric and
>dental care.  In fact, it was such representations that
>convinced IHFA to
>award the SS-99-01 contract for P&D services to IAF in the
>first place.  Be
>that as it may, Mr. Welch's denial that he had any knowledge of annual
>reporting requirements in simply untrue.
>
>In conclusion, I would appreciate if you could acknowledge whether my
>representation of the items covered in your conference with
>Mr. Welch is
>accurate.  IHFA will prepare an amendment to the Monitoring
>Report based on
>the new information, and we wish to avoid any  decrepancies in our
>communications with IAF.
>
>Thank you very much for your prompt attention to this matter.
>
>ec
>
>
>
>
>
>
>
>

# EXHIBIT M

(208) 343-7510
Fax: (208) 342-2982
537 West Bannock Street
P. O. Box 2582
Boise, ID 83701-2582

# HEPWORTH, LEZAMIZ & JANIS, CHTD.

## LAW OFFICES

- *ESTABLISHED 1952* -

TWIN FALLS OFFICE
(208) 734-7510
Fax: (208) 734-4115
133 Shoshone Street North
P. O. Box 389
Twin Falls, ID 83303-0389

J. Charles Hepworth*
John J. Janis

*Member CA Bar

John C. Hepworth
John T. Lezamiz
Robyn M. Brody
Benjamin J. Cluff
V. Lane Jacobson
Wm. L. Nungester, Of Counsel

September 29, 2001

Gerald Hunter, Executive Director
Idaho Housing and Finance Association
P.O. Box 7899
Boise, Idaho 83707

Re:    HOPWA Contracts with the Idaho Aids Foundation
       HL&H File No. 01-2-053

Dear Mr. Hunter:

Our law firm represents the Idaho Aids Foundation (IAF). I am writing in regards to the 2000 and 2001 HOPWA contracts. It is our hope to get these issues resolved as soon as possible, get the frozen payments released, and revise the terms of the contracts so they work for all parties concerned.

As per a suggestion in your September 19, 2001, letter to Mr. Mark Welch, IAF contacted Mr. Jan Olsen, the HUD representative from Portland. Mr. Olsen was most helpful and suggested we contact IHFA with the following recommendations to bring closure to this matter.

1.  With regard to carte blanc access to past client files, Mr. Olsen was in agreement that to give anyone access to these files without the appropriate releases would be inappropriate. In the future, it would be possible to have IAF clients sign releases to allow such access by federal funding agencies and their agents to alleviate this problem.

2.  With regard to perceived inadequacies in the collecting of information regarding income verification, IAF used forms provided by IHFA and relied on the fact that the information requested would be adequate. Mr. Olsen agreed that such reliance was reasonable and that history could not expect to be recreated at this point. Again, for the future, we could arrange for different forms or otherwise memorialize the financial verification requirements deemed appropriate.

IAF is committed to make this program work. We propose the following solutions:

Reply to Boise office

Gerald Hunter, Executive Director
Idaho Housing and Finance Association
September 29, 2001
Page 2

1. IAF will from some date forward have clients sign a release letting them know that federal regulators and their agents will have access to their files.

2. IAF will be happy to gather the necessary financial information required by HUD and IHFA as soon as a form or other document is presented that meets the requirements of both agencies.

3. Additionally, we propose an open dialogue wherein IHFA meet its obligations to inform the IAF of its duties as per the HUD contract and the attendant federal rules and regulations. To this end, we would appreciate your providing us with a copy of the contract between IHFA and HUD.

Also, please be advised that although IAF is in a consolatory stance regarding its willingness to fix the problems from this date forward, we consider IHFA in breach of the contracts by freezing payments. We have reviewed the contracts and pertinent regulations extensively, and there does not appear to be any authority, contractual or legal in nature, to freeze payments, particularly when there is no evidence that IAF has failed to perform. On the contrary, IAF fulfilled all of the requirements that were imposed, including all submittals being on the forms provided by IHFA to begin with. IAF therefore requests that back payments be payed immediately and further payments be made according to the terms of the contract until the contract is amended to reflect any agreed upon changes.

IAF is anxious to make the HOPWA program work to the advantage of individuals with HIV/Aids as it was intended. If you have any questions, please do not hesitate to contact me immediately.

Very truly yours,

HEPWORTH, LEZAMIZ & JANIS

By _____
John J. Janis

JJJ/hcm
cc:    Mr. Jan Olsen, HUD Portland
       Ms. Julie Williams, Idaho Housing and Finance Association

# EXHIBIT N



**Idaho Housing
and Finance**
ASSOCIATION

P.O. Box 7899

565 W. Myrtle Street

Boise, Idaho 83707-1899

208-331-4882

Fax 208-331-4802

www.ihfa.org

TDD/800-545-1833 xt 400

October 1, 2001

*VIA Registered #*
*7000 1670 0003 8698 2746*

Mark Welch
Executive Director
Idaho AIDS Foundation
6023 Clinton Street
Boise, Idaho ~~83814~~ 83704

SUBJECT:   HOPWA Monitoring Report (Amended)

Dear Mr. Welch

Pursuant to the report that we received from Jan Olson of HUD, regarding your telephone conference of September 26, 2001, I wish to advise you of an amendment to the Monitoring Report of September 25, 2001

I assume that your call to Mr. Olson was in response to Mr. Hunter's letter of September 19, 2001  Mr Hunter's response and my subsequent letter sent with the results of the Grant Department's Monitoring Report of September 25, 2001, were based on the advice received by Mr. Olson, and confirmed by various HUD officials  Essentially, Mr. Hunter communicated to you that access to the client files was essential, and Finding #1 of the Monitoring Report set forth a corrective action plan based on that requirement

Accordingly, the corrective action required of Finding #1 shall be amended as follows

> Corrective Action:
> For all future services for clients where services are intended to be billed to HOPWA, the Sponsor shall include IHFA and HUD on release form (sample attached as Exhibit "A") and shall provide IHFA full access to review the case notes in order to determine the provision of eligible services  Said release form shall be used for future services even though clients have received services, and IAF has been paid for services in the past. For those randomly selected files addressed in the September 25, 2001 Monitoring Report, the Sponsor shall provide "sanitized" case notes with all clinical and/or psychiatric evaluation notations redacted - other than the date, time, and signature of the case manager and/or psychologist performing the service

Please be advised that all of the corrective actions for the other Findings, two Concerns, and one Recommendation require a response no later than thirty (30) days from receipt of the September 25, 2001 letter

If you should any further questions or concerns, please feel free to contact me at (208) 331-4758

Sincerely,

Julie H  Williams, Vice President
Community Housing Services

EC JHW/krh
Attachment
kris branch monitoring visit-followup\Mark Welch doc




IHFA 0285

Exhibit "A"

## IDAHO HOUSING AND FINANCE ASSOCIATION
## HOPWA PROGRAM

## RELEASE OF INFORMATION

This Release authorizes the Idaho Aids Foundation (IAF) to release information collected about me to Idaho Housing and Finance Association's (IHFA) and the U S. Department of Housing and Urban Development (HUD). I understand that this information is collected for persons seeking services under the Housing Opportunities for Persons With AIDS (HOPWA) Program. The released information may include, but is not limited to case management notes, and billings statement and notes from third party mental health providers and dental providers that are maintained at the offices of the IAF This information may be used for the evaluation of needs of persons who are low-income and have contracted HIV-AIDS, and to prepare reports to State and Federal governments. This release will also allow IHFA and HUD access to my file in the course of regular on-site monitoring visits.

This authorization is a valid document until revocation in writing by the signed individual below.

Signed _____        _____
                                        Date

Witness _____       _____
                                        Date

Service Provider· Please retain this Release in the client's file for review by IHFA during on-site monitoring visits

IHFA 0286

# EXHIBIT O

**Idaho Housing
and Finance**
A S S O C I A T I O N

October 4, 2001

P.O. Box 7899
(565 W. Myrtle Street)
Boise, Idaho 83707-1899
208-331-4882
Fax 208-331-4802
www.ihfa.org
TDD 800-545-1833 Ext. 400

<u>VIA FACSIMILE (208) 321-2772 and U.S. REGISTERED MAIL</u>

Mark Welch
Executive Director
Idaho AIDS Foundation
6023 Clinton Street
Boise, Idaho 83704

RE:   HOPWA 99-04 Contract

Dear Mr. Welch:

Enclosed please find the check for $6,902.86 that constitutes payment in full for services rendered from July 1, 2000, through June 30, 2001 under the subject contract.

As indicated in Mr. Hunter's letter of September 19, 2001, HUD had directed IHFA to freeze all disbursements until the issue of access to appropriate source documentation was resolved. We are releasing the funds pursuant to your discussion with Jan Olson on September 26, 2001, and HUD's acknowledgement that IHFA may examine redacted files in lieu of full access to client files. The amended corrective action for this documentation requirement was conveyed in my letter of October 1, 2001. Upon receipt of this payment, there are no outstanding amounts due under the year 2000-2001 contract. And, to my knowledge, IAF has not submitted any invoices for services rendered after July 1, 2001, under the 2001-2002 contract.

Please be advised that for all future services for clients where services are intended to be billed to HOPWA, IAF shall have clients sign a release, letting clients know that HUD and IHFA will have access to their files. A sample release was included as Attachment "A" to my letter of October 1, 2001, and should be utilized for this purpose. IHFA expects that IAF shall initiate the process of obtaining releases effective immediately. Accordingly, IHFA shall expect to have full, unrestricted access to client files for services rendered after October 4, 2001.

Although the amended grant contract for between IHFA and IAF indicates that reimbursement requests must be submitted to IHFA no later than 60 days following the provision of services, those requests will be honored for the next 30 days, in light of the delay brought about by the communication and compliance difficulty. For services rendered from July 1, 2001, through October 4, 2001, IHFA will honor those eligible services that can be verified based on the review of redacted files.

We look forward to your response and a successful resolution of the outstanding findings and concerns identified in the Monitoring Report of September 25, 2001. As soon as your response is received, we will schedule an onsite visit to review the redacted files for prior services, and work toward closing out the annual review.

Sincerely,

Julie H. Williams
Vice President
Community Housing Services

IHFA 0184

# EXHIBIT P



**Idaho Housing and Finance**
ASSOCIATION

P.O. Box 7899

(565 W. Myrtle Street)

Boise, Idaho 83707-1899

208-331-4882

Fax 208-331-4802

www.ihfa.org

TDD 800-545-1833 Ext. 400

November 1, 2001

Mr. Mark Welch, Executive Director
Idaho Aids Foundation
6023 Clinton Street
Boise, ID 83814

Subject:     HOPWA Monitoring Report

Dear Mr. Welch,

Thank you for your letter of October 30, 2001 in response to IHFA's Monitoring Report. In reviewing your comments, I failed to find indication of your intent to comply with documentation requirements set forth in my letter of October 4, 2001, specifically regarding the use of releases for client information to facilitate audit access to client files, the redacting of prior file information for audit completion, and the appropriate form of submission of future reimbursement requests.

It is my understanding that the requirements related in my letter were based upon a verbal agreement between you and Mr. Jan Olson of HUD in your conversation of September 26, 2001. It is my understanding that HUD offered two compromises which were acceptable to you. The first required the Idaho Aids Foundation to provide redacted file information for client services rendered and reimbursed prior to October 4, 2001. The second required the securing of and sharing with IHFA of releases for future services, such that HUD's audit requirements could be accommodated with no breach of client confidentiality. It is my understanding that these corrective actions represent HUD's minimum compliance standards for future funds reimbursement for services provided to eligible clients by the Idaho Aids Foundation and affiliated service provider organizations.

IHFA is anxious to move forward in resolving the past requests for reimbursement.   Can you please indicate to us if and when you plan to turn over the pre-October 4, 2001 redacted documentation. Further, please confirm for us your intent to use the appropriate release documentation for all reimbursements after October 4, 2001, to allow you to release the required documentation for your clients to IHFA for reimbursement.   If you do not plan to submit such documentation that is required for reimbursement, please provide us a brief statement to that effect as well.

Your prompt response to this letter will be appreciated. No further funds reimbursement requests will be processed until your response and required documentation is received.

Sincerely,

Julie H. Williams
Vice President
Idaho Housing and Finance Association

Cc:     Bob Kyte, Skinner Fawcett
        Jan Olson, HUD
        Gerald Hunter, IHFA

 

IHFA 0150

# EXHIBIT Q



**Idaho Housing
and Finance**
A S S O C I A T I O N

P.O. Box 7899

(565 W. Myrtle Street)

Boise, Idaho 83707-1899

208-331-4882

Fax 208-331-4802

www.ihfa.org

TDD 800-545-1833 Ext. 400

November 7, 2001

<u>**VIA FACSIMILE and U.S. REGISTERED MAIL**</u>

Mark Welch, Executive Director
Idaho AIDS Foundation
6023 Clinton Street
Boise, Idaho 83704

**RE:**    HOPWA Contracts 99-01 and 99-04
<u>July through September Reimbursement Requests</u>

Dear Mark:

Thank you for submitting the reimbursement request by the November 5, 2001 deadline as stipulated in the October 4, 2001 letter from Julie Williams. Notwithstanding the current unresolved issue regarding program compliance, IHFA can only process certain portions of your requests, as they are incomplete and lack appropriate documentation.

I am returning your original requests with comments explaining the deficiencies. Additionally, I am providing you with an identical set of requests (prepared by IHFA) for you to sign and return with the additional information necessary to process your entire request. The following information needed is:

*<u>Homeless Prevention Documentation</u>*
Each request for Homeless Prevention (Emergency Housing Assistance) must have the appropriate Application for Assistance. If you are processing this request following the guidance from the 1999/2000 HOPWA Policy (Attachment A, page 10), your are required to "provide IHFA's Boise Office with . . . [Form *SS-02*]." If you are processing this request under the guidance sent to your office on August 7, 2001 (Attachment B), you are required to use the *HOPWA Homeless Prevention Worksheet.* Again, this form (either one) needs to be completed for every Homeless Prevention request. Your request did not include either form for any homeless prevention request.

*<u>Psychiatric Services</u>*
When requesting reimbursement for Psychiatric Services, you must have the appropriate documentation for the service provided. If you are processing this request following the guidance from the 1999/2000 HOPWA Policy (Attachment A, page 8), you are required to "complete [Form SS-03] indicating the date of service, the client identifier for the individual, the type of service provided, the unit of time billed in increments of one-quarter hours, and the hourly rate." If you are processing this request under the guidance sent to your office on August 7, 2001 (Attachment B), you are required to use the *Client Billing Sheet.* Again, this form (either one) needs to show the hourly rate and hours of service provided. Your request did not include hourly rates and hours of service provided for any client.





### Client Transportation

While this issue has not been specifically communicated to you in any previous guidance, it has been HUD's guidance that only transportation costs associated with transporting persons to eligible activities is allowed.  Transportation costs by the client to and from HOPWA funded services is eligible.  ***Transportation costs to Non-HOPWA activities in not an eligible activity.***  As with other client services, IHFA requires a client name/identifier, the amount of service received.  All transportation costs should be linked to other supportive services provided.  You provided the correct information on one request, but did not include the necessary information on the other request.

### Redacted Files

As a part of our telephone conversation on Tuesday, October 23, 2001, you indicated to me that you had some concerns about the redaction of files required to clear up the outstanding findings in the Monitoring Report of September 25, 2001.  You told me then that you planned to convey those concerns in your response to the Monitoring Report.  In reviewing your response, it still remains unclear to me whether you intend to comply with the suggested corrective actions.  This concern has already been conveyed to you in a letter delivered by Julie Williams on Friday, November 2, 2001 - reiterating the fact that IHFA is requesting nothing more than what was agreed upon between you and Jan Olson of HUD in your conversation of September 26, 2001.

To reiterate, HUD offered two compromises that we understood were acceptable to you - the first being that IAF would provide redacted file information for client services rendered prior to October 4, 2001. The second compromise requires IAF to secure and share with IHFA client releases for services rendered after October 4, 2001, thereby satisfying HUD's audit requirements with no breach of client confidentiality. Accordingly, since the invoices that you have submitted are for services rendered prior to October 4, 2001, we request that you provide the following files in a redacted format so that we may review prior to approving payment of your July - September invoices:

| Client No. | Date | Service | Hours/Cost |
|---|---|---|---|
| HB6889-0475 | 7/31/01 | Case Management | 4 |
| | 8/16/01 | Case Management | 2.5 |
| | 8/31/01 | Case management | 4 |
| | 9/10/01 | Case Management | 1 |
| | 9/25/01 | Case Management | 8 |
| CT0603-0757 | 7/16/01 | Resource Identification | 1 |
| | 8/12/01 | Psychiatric Services | ? |
| | 8/16/01 | Housing Information | 2.25 |
| HM0880-0574 | 7/9/01 | Case Management | 0.5 |
| | 7/9/01 | Psychiatric Services | ? |
| | 7/20/01 | Resource Identification | 1.5 |



| LB9887-0158 | 6/27/01 | Homelessness Prevention | $113.24 |
| | 7/6/01 | Homelessness Prevention | $166.34 |
| | 7/8/01 | Case Management | 1 |
| | 7/3/01 | Housing Information | 0.5 |
| | 7/21/01 | Case Management | 2 |
| | 8/3/01 | Resource Identification | 2.25 |
| | 8/9/01 | Transportation | $432.92 |

IHFA requests that IAF resubmit its reimbursement request with the additional information needed to process your entire request, including the redacted files. Please provide IHFA with the additional information no later than ten (10) days from receipt of this letter. I might also take this opportunity to remind you that we will need to resolve the outstanding findings from the Monitoring Report before we can pay for additional services. Accordingly, you might also wish to include the redacted files that were identified as part of the corrective action set forth in the September 25, 2001 Report.

If you need any assistance or further clarification, please make your request in writing to Idaho Housing and Finance Association, Grant Programs Department, 4th Floor, P.O. Box 7899, Boise, Idaho, 83707.

Sincerely,

Earl M. Cook
Manager, Grant Programs


cc:    Julie Williams
       Gerald Hunter
       Robert Kyte

# EXHIBIT R

BOISE OFFICE
(208) 343-7510
Fax: (208) 342-2927
537 West Bannock Street
P. O. Box 2582
Boise, ID 83701-2582

HEPWORTH, LEZAMIZ & JANIS, CHTD.

## L A W   O F F I C E S

*- Established 1952 -*

NOV 14 2001

RECEIVED

V. Lane Jacobson
Wm. L. Nungester, Of Counsel

J. Charles Hepworth*
John J. Janis

*Member CA Bar

November 8, 2001

**VIA FACSIMILE & U.S. MAIL**

Robert E. Kyte
SKINNER FAWCETT
515 S. 6th Street
P.O. Box 700
Boise, ID 83701-0700

      Re:   Idaho Aids Foundation
             HL&H File No. 01-2-053

Dear Mr. Kyte:

      Idaho Aids Foundation ("IAF") received a letter dated November 1, 2001, from Ms. Julie Williams, Vice President of Idaho Housing and Finance Association ("IHFA"). That letter indicates a copy was sent to you, but for convenience purposes an extra copy is enclosed here. Ms. Williams' letter was referred to me by IAF for a response.

      To begin with, it appears that IHFA is attempting to unilaterally impose changes to an already existing one-year written contract. I am frankly not aware of any contractual or legal right to do this. While the parties can certainly reach a mutual agreement to renegotiate terms or the like, as IAF has been and continues to be willing to do, neither party has the legal right to unilaterally impose changes or additional requirements on the other. In the absence of a mutual bilateral agreement to amend, the existing contract is otherwise valid and binding on both IHFA and IAF. In fact, the contract in question specifically states that:

            This agreement constitutes the entire agreement between the parties
            hereto and may be amended as necessary and executed <u>only in</u>
            <u>writing by IHFA and the recipient [IAF]</u>.

The written contract then concludes with both parties certifying "that they will abide by the Terms and Conditions of <u>this contract</u>."

**Reply to Boise office**

IHFA 0146

Robert E. Kyte
November 8, 2001
Page 2

IHFA is also once again taking the step of freezing payments, and making payments to IAF conditioned upon IAF's succumbing to their demands. Ms. Williams' letter ends with stating that: "No further funds reimbursement requests will be processed until your response and required documentation is received." Here again, I am not aware of any contractual or legal right to do this. To my knowledge, IAF has fully complied with all of the terms of the existing written contract. As far as the "required documentation" IAF has complied with submitting the documentation required of the existing contract. In fact, the documentation required by the existing contract is on forms provided originally by IHFA when the contract was executed. Nevertheless, IHFA is now apparently taking the position it can unilaterally change the contract and the "required documentation" in midstream before the contract period expires, and withhold payment until IAF just gives in to their demands. We do not believe, however, there is any legal authority for this seemingly heavy-handed position.

Simply put, there is no provision in the 2001 contract between IHFA and IAF, which again represents the "entire agreement" between the parties, that allows for a suspension of payments. Likewise, the payments for which IHFA is contractually bound to make to IAF are in no way dependent upon HUD or any contract issues between HUD and IHFA. The subject contract is between IHFA and IAF and there is nothing in that 2001 contract that authorizes suspension of payments under the circumstances here.

We thus request that IHFA make the overdue payments immediately. We believe a refusal to do so is unwarranted and improper, and constitutes a default and breach of the existing contract, as well as a breach of the implied covenant of good faith and fair dealing.

Notwithstanding the above, IAF remains willing to try and work with IHFA to at least try and address the relevant concerns by all involved. I would have expected this to be a friendly negotiation process, however, with each side making reasonable good faith efforts to address the other's concerns, while at the same time trying to protect their own. I have heard a story, however, regarding IAF making the phone call effort to discuss these issues and concerns, only to be told to put in writing, give it to the attorneys, and then being hung up on.

We believe IAF's concerns about releases applying to past clients and/or services already provided are legitimate ones. IAF has repeatedly expressed a concern about having releases apply to those who have already received services under circumstances where they did not provide informed consent or sign a release of confidentiality form. Ms. Williams' letter is thus inaccurate in reflecting an understanding that there was some kind of verbal agreement between IAF and Mr. Olsen of HUD that required IAF "to provided redacted file information for client services rendered and reimbursed prior to October 4, 2001." There was never any such

Robert E. Kyte
November 8, 2001
Page 3

agreement reached with Mr. Olsen in the conversation of September 26, 2001, or at any other time.

On the contrary, as previously reported, Mr. Olsen was very understanding of IAF's concerns in this regard, and that it would be inappropriate for anyone to access the files without informed consent and a release. He also expressed the belief that redacted files would not be acceptable. I would also note that the written contract between IHFA and IAF provides that IAF "agrees to provide information (excluding information categorized as confidential by law) for any national or state evaluations conducted by HUD or IHFA." Obviously, no patient or client has been historically asked to waive the confidentiality, because no such requirement was ever requested or mandated by anyone. IAF is very concerned about the confidentiality issues under state statutes, codes, and professional standards and regulations. They have accordingly never agreed to obtain releases that allow access to information for which no prior release was ever given. IAF understood that the HUD representative was in agreement with this, and also that getting redacted files was also problematic.

It is for this reason that I previously indicated that IAF would potentially be willing to have future clients execute a release, which would appear to address all the confidentiality issues and concerns. Such a release, however, would not allow access to the past records or files but only those generated after the release was signed. I wrote this in my letter of September 29, 2001, to the executive director of IHFA, which was forwarded on to you. At that point, the date of October 4, 2001, would have worked, but we would obviously have to pick a new date at this point. In any event, IAF is still willing to obtain releases from the patient/clients in the future, from some chosen date forward, in the interest of helping make the HOPWA program work efficiently, while at the same time addressing other legitimate issues and concerns.

IAF would also be willing to negotiate or discuss the types of financial information forms to be utilized, again for the future clients/patients. Until now, however, IAF has complied with the "required documentation" by utilizing the forms that were originally prepared by IHFA under the currently existing contract. As indicated above, IAF is willing to attempt a mutual negotiation of this matter which would hopefully result in a mutually acceptable agreement. At that point the parties can then execute a written amended agreement, which, as indicated above, is the only way to comply with the current contract's requirement that the existing agreement "may be amended as necessary and executed only in writing" by both parties.

We would appreciate your discussing these matters with your client, and then getting back to me to let me know where we stand and/or where we can go from here. We are,

Robert E. Kyte
November 8, 2001
Page 4

of course, particularly anxious to receive the overdue funds that have been frozen or withheld.
We would appreciate your response on that subject as soon as practicable.

Thank you again for your time and consideration.

Very truly yours,

HEPWORTH, LEZAMIZ & JANIS

By _____
John J. Janis

JJJ/hcm
Enclosure

HHEA 0140