# EXHIBIT S

# SKINNER FAWCETT
## LAW OFFICES

RICHARD A. SKINNER
CHARLES W. FAWCETT
DENNIS GIBALA
ROBERT E. KYTE

515 SOUTH 6TH STREET
POST OFFICE BOX 700
BOISE, IDAHO 83701-0700
TELEPHONE (208) 345-2663
TELECOPIER (208) 345-2668
E-MAIL: bobkyt@skinnerfawcett.com

November 13, 2001

Mr. John J. Janis, Esq.
Hepworth, Lezamiz & Janis, Chtd.
Post Office Box 2582
Boise, ID 83701

      RE:    Idaho Aids Foundation Contract with Idaho Housing and Finance
                Association

Dear Mr. Janis:

        I received your letter dated November 8, 2001, in follow up to a letter sent by
Julie Williams, Vice President of Idaho Housing and Finance Association ("IHFA") to
the Mr. Welch of the Idaho Aids Foundation ("IAF"). No doubt, a subsequent letter
dated November 7, 2001, from Earl Cook, IHFA Grant Programs Manager will also find
its way to you from Mr. Welch, its recipient. I am including a copy of Mr. Cook's letter
for your convenience. Mr. Cook's letter deals with the same subject matter but provides
specific documentation requests of IAF in order for IHFA to release reimbursement
funds.

        There seems to be a basic misunderstanding on how this matter was to be resolved
that goes back to a telephone conversation of September 26, 2001, between Mr. Welch
and Jan Olson of the United State Department of Housing and Urban Development
("HUD"). Upon receipt of your November 8 letter, I asked IHFA representatives to
contact Mr. Olson to verify his understanding of the content and agreement coming from
the telephone conversation. I was especially perplexed by what I was hearing from IHFA
and what you were indicating Mr. Welch had said about Mr. Olson's belief that the use of
redacted files would not be acceptable.

        I have received confirmation from Mr. Olson as to his perspective of the
conversation. When asked if he felt that the use of redacted files would be an appropriate
method to verify past services, Mr. Olson commented regarding his conversation with
Mr. Welch:

> *I said redacted records would be accepted for past services since the*
> *participants had not signed a release. I said that effectively* [sic]
> *immediately IAF needed to contact the service providers and tell them to*

IHFA 0140

John J. Janis, Esq.
November 13, 2001
Page 2

> *start having clients sign a release so we/you* [IHFA] *would have full and*
> *unfettered access. If the clients chose not to sign the release then our*
> [HUD] *funds could not be used to serve them.*

There certainly does not seem to be any equivocation on the part of Mr. Olson as
to the content of the telephone call.   Mr. Olson left the phone call with the understanding
that IAF would provide redacted files for past reimbursement requests and immediately
initiate the use of releases for future reimbursements.   It was from this telephone call that
IHFA concluded that all parties had agreed to move forward with redaction of files for
the past and effective October 4, 2001, with signing of releases by recipients of the
benefits of the HOPWA funds.   You indicate in your letter that IAF is still not using
release forms which I don't understand in light of all the discussions that have taken
place.   You indicate that "we would obviously have to pick a new date at this point."   I
guess I need to know what more it will take to trigger IAF moving forward with getting
releases for future activities.

You state that the contract between IAF and IHFA controls all aspects of the
relationship between IAF and IHFA.   Let's look briefly at the contract, HOPWA 99-01
dated July 1, 2001. You reference to Section 13 that states the recipient agrees to provide
information (excluding information categorized as confidential by law) for any national
or state evaluations conducted by HUD or IHFA. I do not believe this provision speaks
directly to the issue of reimbursement of funds for sub-recipients but rather evaluations of
how the overall HOPWA program is being managed and its impact.   If this were not the
case, then why would there be need for Section 15 that requires the recipient to make
available to HUD or IHFA *any requested information* needed to conduct program audits
(emphasis added).

As IAF is knowledgeable about the HOPWA program and the funds it is
receiving and the reporting requirements that IAF should be accustomed to, it seems
unusual to me that IAF did not initiate steps to assure that it could provide the details of
files for benefit recipients by simply having releases signed, or at least raise this concern
with IHFA from the commencement of performance of the contract.   That not being
done, IHFA and HUD have attempted to resolve this problem for past reporting by
simply allowing the files to be redacted removing personal identifying information of
benefit recipients.   IAF's concern for adherence to confidentiality laws seems to be
strained when provided the opportunity to keep all such identifying data confidential by
redacting it from the records presented to IHFA.   Of course, the future file reviews
should be addressed by having recipients of HOPWA benefits sign releases.

It really becomes unnecessary to discuss the applicability of confidentiality laws
when HUD and IHFA have agreed to accept the documentation for past records without
the information that would make the files confidential, i.e. identifying information.

IHFA is not asking for an onerous file presentation by IAF.  For past files, Mr.
Cook in his letter of November 7 simply asked for four (4) redacted files.  For the present

IHFA 0141

John J. Janis, Esq.
November 13, 2001
Page 3

pending disbursement, another four (4) redacted files will suffice. For all future reimbursements, releases must be obtained and in place to allow for IHFA/HUD to have the detailed information.

I really do not see that working through these requirements can be characterized as IHFA "attempting to unilaterally impose changes to an already existing one-year written contract." Rather, IHFA is simply trying to work with IAF to resolve how IAF's requirements under the contract, specifically in Section 15, can be met while addressing IAF's concerns for confidentiality. It is interesting to note that these are non-issues to other grantees that have moved forward with implementation of the HOPWA program.

IHFA would like to move forward amicably to resolve this issue as outlined in this letter and the letters of Ms. Williams and Mr. Cook. IHFA has taken these steps to move forward with IAF with what is a reasonable solution to issues of reporting requirements and confidentiality. I trust that IAF has or, immediately will implement obtaining releases for all future reimbursements so that we do not prolong or exacerbate this process in the future. I can assure you, IHFA is willing to release the funds to IAF upon receipt of the requested documentation that is very limited in scope and allows IHFA to satisfy the minimum expected reporting needed to satisfy the requirements of the HOPWA program.

Please advise me how IAF plans to move forward on this matter. Thank you.

Very truly yours,

SKINNER FAWCETT

Robert E. Kyte

REK:sg
Enclosure
cc:     Gerald Hunter, IHFA
        Julie Williams, IHFA
        Earl Cook, IHFA

# EXHIBIT T

515 S. 6th Street
P.O. Box 700
Boise, ID 83701-0700
Phone: 208-345-2663
FAX: 208-345-2668

# facsimile transmittal

| To: | John Janis, Esq.<br>Mike Reardon, Esq. | Fax: | 208-342-2927<br>342-5749 383-0412 |
|-----|----------------------------------------|------|--------------------------------------|
| From: | Robert E. Kyte | Date: | December 24, 2001 |
| Re: | Meeting Report: 12/20/01 | Pages: | including cover page |
| cc: | | Fax: | |

☐ Urgent      ☐ FYI      ☐ Please Comment      ☐ Please Reply      ☐ Please Recycle

**Notice:**
The information contained in this FAX message is attorney privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at: 208-345-2663 or the sender's e-mail address.

**Message:**

John and Mike:

Herewith is a short follow-up of action items from the meeting last week between HUD, Idaho Aids Foundation and Idaho Housing and Finance Association as put together by the IHFA representatives. Please have Mr. Welch review this, as well as anyone else who attended the meeting to be sure that it comports with the understanding of the Idaho Aids Foundation. We simply want to be sure that we are moving forward with understanding by all the participants.

I will ask Earl Cook from IHFA to communicate this to HUD as well. I will be out of the office until December 28, 2001 and will be happy to discuss this and any other suggestions you might have at that time. I hope that we can move forward to an amicable resolution of these issues between our clients. Thank you again for your positive involvement in the meeting last week. All the best of the holiday season to you and your families.

Very truly yours,

**SKINNER FAWCETT**

*(mailed with out signature to avoid delay)*

ROBERT E. KYTE

REK/ndp
Attachment

IHFA 0136

## MEETING REPORT – 12-20-01 (HUD, IAF AND IHFA)

1) Clear Monitoring Report Findings from 2000 contract

   Jan Olson from HUD's Portland office will complete past monitoring file review on four (4) 2000 files identified in 9/25/01 Monitoring Report. Since no releases are obtained from the clients, Mr. Olson will only have access to redacted files but he will have full access to copies of the files with the personal identification blocked out.

2) Verify services received under current 2001 contract

   An IHFA representative will be permitted to view redacted files for the July – October 2001 files that were identified in Earl Cook's letter of November 7, 2001 requesting additional information to process the payment request. Such review will include all copies of case notes, and invoices with the personal identity blocked out.

3) Releases for Future Services

   Mr. Welch indicated he did not find the IHFA Release acceptable. Mariah Ybarra is to provide sample Releases to the IAF and IHFA. Mr. Welch will provide a sample Release that he feels is acceptable to IAF. IHFA is willing to agree to a different Release provided it provides IHFA and HUD with full access to the client files for complete review of all eligibility information (applicant eligibility and activity eligibility), including back up documentation needed by HUD and/or IHFA to verify all such eligibility, requirements and expenses, as well as demographic composition information required.

4) Privacy Act of 1974 issues

   Doug Carlson of HUD committed to researching with the contact person at HUD (the Privacy Act Officer in the OIG) to determine whether the Privacy Act was "invoked" prior to the implementation of the ServicePoint Homeless Management Information System (HMIS). Mr. Welch will provide the name of contact person at HUD to Mr. Carlson.

# EXHIBIT U

BOISE OFFICE
(208) 343-7510
Fax: (208) 342-2933
537 West Bannock Street
P. O. Box 2582
Boise, ID 83701-2582

# H. WORTH, LEZAMIZ & JANIS C. TD

## L A W   O F F I C E S

(208) 734-7510
Fax: (208) 734-4115
133 Shoshone Street North
P. O. Box 389
Twin Falls, ID 83303-0389

*- ESTABLISHED 1952 -*

J. Charles Hepwo
John J. Janis

*Member CA Bar

John C. Hepworth
John T. Lezamiz
Robyn M. Brody
Benjamin J. Cluff
V. Lane Jacobson
Wm. L. Nungester, Of Counsel

*[handwritten: Janis 869-9792 Cell 2:30]*

December 28, 2001

*[handwritten: hlhboise@aol.com]*

**VIA FACSIMILE**

*[handwritten: John Cell - 869-9792 email hlhboise@aol.com]*

Robert E. Kyte
SKINNER FAWCETT
515 S. 6th Street
P.O. Box 700
Boise, ID 83701-0700

> Re:   Idaho Aids Foundation Contract with IHFA
>        HL&H File No. 01-2-053

Dear Mr. Kyte:

We have a significant problem in the above-referenced matter. Your list of action items appears to correctly list subjects that were discussed at our meeting. However, throughout those discussions, we were of the understanding that an assumed part of any actual agreement reached would include IHFA releasing the funds which they have frozen. I had, of course, complained about that subject in all of our prior communications leading up to that meeting. At the end of the meeting, by which time some of the participants had left, you dropped what was considered by some to be a bombshell that IHFA would continue not to make the payments until the other terms which were discussed during the meeting were completed. The meeting basically ended on that note, with no further discussion or argument about it. My clients have reviewed the matter with their board following the meeting, and they were not pleased with the outcome, to say the least.

At this point IAF is not willing to reach agreement on those matters discussed during last week's meeting unless there is a reciprocal agreement to release the funds which are being withheld by IHFA. I have, in fact, been instructed to file suit to collect those sums.

It would obviously be preferable for all parties to reach agreement without litigation on all outstanding issues. However, IAF feels very strongly that they are entitled to be paid for the services provided, and that there is no contractual or legal right by IHFA to withhold payment of those funds.

Reply to Boise office

IHFA 0134

Robert E. Kyte
December 28, 2001
Page 2

       As a practical matter, I will not be able to do anything about this until late next week at the earliest, given the holidays and the like. If, before then, there is any interest in following up on this matter further, please let me know.

       Thank you.

               Very truly yours,

               HEPWORTH, LEZAMIZ & JANIS

               By _____
                   John J. Janis

JJJ/hcm

# EXHIBIT V



**Idaho Housing
and Finance**
A S S O C I A T I O N

January 4, 2002

P.O. Box 7899

(565 W. Myrtle Street)

Boise, Idaho 83707-1899

208-331-4882

Fax 208-331-4802

www.ihfa.org

TDD 800-545-1833 Ext. 400

## VIA FACSIMILE and U.S. REGISTERED MAIL

Mark Welch, Executive Director
Idaho AIDS Foundation
6023 Clinton Street
Boise, Idaho 83704

RE:     HOPWA Contracts 99-01 and 99-04
        July through September Reimbursement Requests

Dear Mark:

The letter is in response to my visit to your office on Monday, December 31, 2001. At the request of IHFA counsel, Mr. Kyte, and IAF attorney, Mr. Janis, I understood that I was expected to complete my review of the redacted files requested in my letter of November 7, 2001. Instead, you, Ms. Looney, and I spent the afternoon discussing the documentation requirements required to complete the review process. Following is a listing of the items I will need to review when I return next week.

### *Homeless Prevention (Emergency Housing Assistance)*
Your current Request for Funds did not include the Form SS-02 for these services. On Monday when we discussed this matter, you indicated that you had not been required to submit these forms in the past. I was quite confident that you had, and committed to faxing you copies of the forms once I located them in the files. In reviewing the IAF files from last year, you are correct that you did not provide the SS-02 forms. Apparently, we overlooked this requirement in approving last year's payment. The Form SS-02 is the minimum level of documentation that may be acceptable to approve these services.

On page 10 of the 1999/2000 HOPWA Procedures, the section entitled *Short Term Rent, Mortgage or Utility Payments to Prevent Homelessness* states the following:

> b) Billing Requirements. Contracted case managers will be granted budget authority for an allocation of emergency housing assistance under HOPWA. To access these funds Case Managers must provide IHFA's Boise Office with the following completed documents:
> 1) Emergency Housing Assistance Fund Application (Form SS-02). This form must be completed by the case manager and signed by the tenant.
> 2) Client Billing Form (Form SS-03)
> 3) Request for Funds (Form SS-04)

Accordingly, in the absence of the Form SS-02, I will need to verify that these clients were eligible to receive these services, and that IAF made the payments to the third-party landlords, mortgage company, or utility company. You may redact the files in any manner you feel is necessary to block the client name. However, at a minimum, IAF must produce the Form SS-01, indicating certification of HIV status and verification of income. IAF will also need to produce evidence that payment was made to the third-party providers listed on the SS-02 form, and produce copies of the cancelled checks for the following clients receiving Homelessness Prevention services:




| Date | Client ID | Amount |
|------|-----------|--------|
| 7/11/01 | HA-5844-1161 | $695.38 |
| 9/5/01 | MW-0756-0961 | $635.00 |
| 8/3/01 | WM-9652-0462 | $675.00 |
| 9/5/01 | WM-9652-0462 | $675.00 |
| 7/18/01 | RG-3826-0552 | $442.00 |
| 9/6/01 | RG-3826-0552 | $432.00 |

### *Psychiatric Services*

On page 8 of the 1999/2000 HOPWA Procedures, under the section entitled *HOPWA Case Managers,* the following guidance is provided for completing the Client Billing Sheet (Form SS-03):

> "Case Managers must complete the Special Needs Housing Program Client Billing Sheet (SS-03) indicating the Date of Service, the Client Identifier fir the individual, the type of service provided, the unit of time billed in increments of one-quarter hours, and the hourly rates".

Although this section refers explicitly to billing for case management services, I see that you did utilize this system last year for billing for mental health services. Attached please find a copy of a Billing Sheet from your February 2001 statement that is billed appropriately. To simplify the process for redacting files, might I suggest that you only provide copies of the actual invoice from third-party psychiatric providers. It will not be necessary for me to review any redacted files those third-party providers who are unaffiliated with IAF. Copies of the third-party billings with the client names blocked out will suffice - as long as I can determine the dates and amount billed are the same as those listed on your request for reimbursement.

However, for those mental health services provided by IAF staff, I will need to review the redacted case notes for clients. Please be advised that I am not seeking to review any medical information with respect to the treatment plan. I only need to see the backup that supports the number of hours billed. As I have mentioned on a number of occasions, I am only concerned with documenting "the time and space" for the hours.

Accordingly, I would appreciate if you could separate the third-party billings from the IAF staff billings for mental health services, and have the following files ready for my review when I return to your offices to complete the Request for Funds review:

| Date | Client ID | Amount |
|------|-----------|--------|
| 8/12/01 | GK-7890-0763 | $262.50 |
| | | $87.50 |
| | | $87.50 |
| 8/25/01 | RK-2849-0665 | $310.00 |
| 8/25/01 | LB-9887-0158 | $390.00 |

### *Client Transportation*

As I indicated to you on Monday, although documentation requirements are not specified in the Policy and Procedures, it has been HUD's guidance that only transportation costs associated with transporting persons to eligible activities is allowed. Although we might quibble over whether bus passes to provide a client to buy groceries at the market is any more or less important than providing transportation to seek medical treatment - the fact of the matter is that the clients have to be eligible, and the transportation must be tied to receiving eligible services. *Transportation costs to Non-HOPWA activities in not an eligible activity.* At a minimum, IHFA requires a client name/identifier, the amount of service received. All transportation costs should be linked to other supportive services provided. You did not include the minimum necessary information on the September 2001 request - you simply requested "9/5/2001 BUS PASSES $486.00"

IHFA 0130

## *Other Redacted Files*

We agreed that I might return on Wednesday, January 4, 2002, to complete the review of files related to your first Request for Funds of the 2001/2002 contract. As I understand the agreement from our conference call with HUD officials, Jan Olson will be completing the review of last year's files to close out the findings from my Monitoring Review of September 25, 2001 for the 2000/2001 contracts.

Accordingly, in addition to the files requested above, and to complete my review of the invoices submitted for services rendered from July 1, 2001 through September 30, 2001, I request that you provide access to the following files that were requested in my letter of November 7, 2001:

| Client No. | Date | Service | Hours/Cost |
|---|---|---|---|
| HB6889-0475 | 7/31/01 | Case Management | 4 |
| | 8/16/01 | Case Management | 2.5 |
| | 8/31/01 | Case management | 4 |
| | 9/10/01 | Case Management | 1 |
| | 9/25/01 | Case Management | 8 |
| CT0603-0757 | 7/16/01 | Resource Identification | 1 |
| | 8/12/01 | Psychiatric Services | ? |
| | 8/16/01 | Housing Information | 2.25 |
| HM0880-0574 | 7/9/01 | Case Management | 0.5 |
| | 7/9/01 | Psychiatric Services | ? |
| | 7/20/01 | Resource Identification | 1.5 |
| LB9887-0158 | 6/27/01 | Homelessness Prevention | $113.24 |
| | 7/6/01 | Homelessness Prevention | $166.34 |
| | 7/8/01 | Case Management | 1 |
| | 7/3/01 | Housing Information | 0.5 |
| | 7/21/01 | Case Management | 2 |
| | 8/3/01 | Resource Identification | 2.25 |
| | 8/9/01 | Transportation | $432.92 |

We had agreed that I should return on Wednesday, January 9th, at 10am. If there is any problem with this timetable for producing the redacted files, please call me at 331-4760.

Sincerely,

Earl Cook
Manager, Grant Programs

cc:    Mr. Janis
        Mr. Kyte

IHFA 0131

# SPECIAL NEEDS HOUSING PROGRAM
## CLIENT *MENTAL HEALTH*
### BILLING SHEET  (FORM SS-03)

For The Month of February 2001

| CLIENT IDENTIFIER | ACTIVITY CODE (SEE BELOW) | COST OF SERVICE HOURLY RATE/ FEE | TIME SPENT FOR CLIENT (IN 15 MIN. INCREMENTS) | TOTAL COST FOR SERVICE |
|---|---|---|---|---|
| RK77120665 | MH | 75.00 | 1.00 | 75.00 |
| DD88051064 | MH | 75.00 | 1.00 | 75.00 |
| EJ73940266 | MH | 75.00 | 1.00 | 75.00 |
| DJ93460353 | MH | 75.00 | 1.00 | 75.00 |
| LB98870158 | MH | 75.00 | 1.00 | 75.00 |
| EJ73940266 | MH | 75.00 | 1.00 | 75.00 |
| RK77120665 | MH | 75.00 | 1.00 | 75.00 |
| EJ73940266 | MH | 75.00 | 1.00 | 75.00 |
| DJ93460353 | MH | 75.00 | 1.00 | 75.00 |
| QD50240279 | MH | 75.00 | 1.00 | 75.00 |
| TS68720262 | MH | 75.00 | 1.00 | 75.00 |
| EJ73940266 | MH | 75.00 | 1.00 | 75.00 |
| EJ73940266 | MH | 75.00 | 1.00 | 75.00 |
| LB98870158 | MH | 75.00 | 1.00 | 75.00 |
| EJ73940266 | MH | 75.00 | 1.00 | 75.00 |
| RK77120665 | MH | 75.00 | 1.00 | 75.00 |
| EJ73940266 | MH | 75.00 | 1.00 | 75.00 |
| DJ93460353 | MH | 75.00 | 1.00 | 75.00 |
| TS68720262 | MH | 75.00 | 1.00 | 75.00 |
| QD50240279 | MH | 75.00 | 1.00 | 75.00 |
| EJ73940266 | MH | 75.00 | 1.00 | 75.00 |
| EJ73940266 | MH | 75.00 | 1.00 | 75.00 |
| LB98870158 | MH | 75.00 | 1.00 | 75.00 |
| EJ73940266 | MH | 75.00 | 1.00 | 75.00 |
| RK77120665 | MH | 75.00 | 1.00 | 75.00 |
| EJ73940266 | MH | 75.00 | 1.00 | 75.00 |
| QD50240279 | MH | 75.00 | 1.00 | 75.00 |
| TS68720262 | MH | 75.00 | 1.00 | 75.00 |
| EJ73940266 | MH | 75.00 | 1.00 | 75.00 |
| DJ93460353 | MH | 75.00 | 1.00 | 75.00 |
| EJ73940266 | MH | 75.00 | 1.00 | 75.00 |
| LB98870158 | MH | 75.00 | 1.00 | 75.00 |
| EJ73940266 | MH | 75.00 | 1.00 | 75.00 |
| RK77120665 | MH | 75.00 | 1.00 | 75.00 |
| EJ73940266 | MH | 75.00 | 1.00 | 75.00 |
| DJ93460353 | MH | 75.00 | 1.00 | 75.00 |
| | | | SUB TOTAL | $2700.00 |
| | | | ADMIN | $189.00 |
| | | | TOTAL | $2889.00 |

HOPWA
Idaho Aids Foundation SS 99-01

Page 1 of 2

# EXHIBIT W

# SKINNER FAWCETT
LAW OFFICES

RICHARD A. SKINNER
CHARLES W. FAWCETT
DENNIS GIBALA
ROBERT E. KYTE

515 SOUTH 6TH STREET
POST OFFICE BOX 700
BOISE, IDAHO 83701-0700
TELEPHONE (208) 345-2663
TELECOPIER (208) 345-2668
E-MAIL: bobkyt@skinnerfawcett.com

January 11, 2002

Vicki Looney, Esq.
Idaho Aids Foundation
PO Box 421
Boise ID 83701

RE:   HOPWA PROGRAM MATTERS

Dear Ms. Looney:

Thank you for your letter of January 8, 2002, reviewing our telephone conversation of earlier that day. Since many of the issues in your letter pertain to the subsequent review of 2001 files by Mr. Cook on January 9, 2002, which has already taken place, I will not comment on any specifics of your letter.

I have also received a copy of your letter of January 9, 2002, addressed to Mr. Cook regarding his visit to conduct the document review.  I have also spoken with Mr. Cook who affirms the good monitoring visit that was conducted.  He commended you for the good job and efforts you expended to wrap up the verification of the July through September 2001 files.  I understand that Idaho Housing and Finance Association (IHFA) is in the process of issuing a check for this review period in the amount of $25,161.85 for services provided from July 2001 through September 2001. I also understand that Mr. Cook will be reviewing the October and November 2001 reimbursement requests from Idaho Aids Foundation (IAF) and will work with you on a similar basis for any monitoring review work for these requests for release of the $8,890.93 that is pending for those requests.

I have also learned that Mr. Olson from HUD is planning to do the follow up 2000 document review on Friday, January 25, 2001. I trust this will work for IAF and that the 2000 issues can be resolved at that time.

Now then, in order to move forward to the next step, the future release of information to IHFA and HUD without redaction, it is essential that IAF move forward in preparing and using a release that will allow for unrestricted release of the

Vicki Looney, Esq.
January 11, 2002
Page 2

documentation required for HOPWA compliance.   Based on our December 20, 2001 telephone conference with HUD, I understand that such documentation must include all eligibility requirements (applicant eligibility and activity eligibility), including back up documentation needed by HUD and/or IHFA to verify all such eligibility requirements are met and expenses documented, as well as the demographic composition information that is required.   While we are happy to cooperate in preparing or reviewing such a release, and I understand that HUD is willing to cooperate in this process, the real issue is getting a release that will work to provide this documentation to IHFA in a form that no longer requires redaction.   I would appreciate if you could assure me so that I can assure IHFA that this is either in place or when it will be.

By the way, I am a little unsure who I should be directing these comments to as IAF has three attorneys.  Be assured I want to conform to whatever communication preferences IAF and its attorneys' desire.  I also want to thank you for your work in assisting IHFA and Mr. Cook during his monitoring review of the 2001 files.    I look forward to hearing from you regarding the release and moving forward on this matter.

Very truly yours,

**SKINNER FAWCETT**

Robert E. Kyte

REK:sg

cc:    Mike Reardon, Esq.
       John Janis, Esq.
       Earl Cook, IHFA
       Julie Williams, IHFA

# EXHIBIT X



**U.S. Department of Housing and Urban Development**
Oregon State Office
Community Planning & Development Division
400 Southwest Sixth Avenue, Suite 700
Portland, OR 97204-1632

January 25, 2002

Julie H. Williams,
Vice-President, Community Housing Services
Idaho Housing and Finance Association
PO Box 7899
Boise, ID 83707-1899

Dear Ms. Williams:

SUBJECT: Housing Opportunities for Persons With AIDS (HOPWA)
Competitive Grant Program
Grant Number: ID-H99-0025
Limited On-Site Monitoring



During a HOPWA monitoring your office performed at Idaho Aids Foundation (IAF) last summer, your staff asked to inspect certain client files to verify that expenses charged to the grant were eligible as required under 24 CFR Part 85.40(a), *Administrative Requirements for Grants and Cooperative Agreements to State, Local and Federally Recognized Indian Tribal Governments*. IAF denied your staff access to the requested files based on concerns regarding client confidentiality (they stated that client release of information forms were needed before access could be given).

As we discussed on several occasions, 24 CFR Part 84.53(e), *Grants and Agreements with Institutions of Higher Education, Hospitals, and Other Nonprofits*, gives HUD and its representatives (such as IHFA) unrestricted access to any records in order to make audits. As a compromise communicated directly to IAF (Mr. Welch) on September 26, 2001, we agreed to allow redacted client records for services up to that point but required full access for services from that point forward. You confirmed our position in your letter delivered to IAF on October 1, 2001 by stating that unrestricted access to client records was needed beginning October 4, 2001 in order to receive HUD-funding for grant services.

This office has learned that IAF is now requesting reimbursement from the grant for services performed between October through November 2001 without allowing unrestricted access to records as required under 24 CFR Part 84.53.

As communicated to IAF by your office, this office, and the HUD Office of HIV/AIDS, it is imperative that original source documents be reviewed by this office and its representatives in order to determine that clients meet eligibility requirements and that accounting records are supported by source documentation as required under 24 CFR Part 84.21(a)(7).

IHFA 0220

As agreed to in a telephone conference on December 20, 2001 between IAF, your office, and HUD, Mr. Olson of my staff will go to IAF to perform a review of the HOPWA grant which will *include* an inspection of the files first requested by IHFA but in a redacted form. IAF has agreed to a date of February 8, 2002 for the review. Mr. Olson should arrive at IAF at approximately 10:30 a.m. to begin his review.

Please advise IAF that Mr. Olson will want to view the following files and records on February 8, 2002 as permitted under 24 CFR Part 84.53(c):

1) Redacted files with the following client identifiers:  EJ7394-0266, LB9877-0058, QD5024-0279, and DD8805-1064.

2) IAF's written financial procedures.

3) Psychologists by name and location of service provision (city/county) for the period 7/1/00-6/30/01.

4) Volunteer time contributed to the HOPWA program by name, hours, and category of work for the period 7/1/99-6/30/01.

5) Provide methodology for determining eligibility for homeless prevention assistance.

Please don't hesitate to contact Mr. Olson at 503-326-7017 if you have any questions.

Sincerely,

Doug Carlson, Director
Community Planning and Development

# EXHIBIT Y

(565 W. Myrtle Street)
Boise, Idaho 83707-1899
208-331-4882
Fax 208-331-4802
www.ihfa.org
TDD 800-545-1833 Ext. 400

February 11, 2002

Doug Carlson, Director
U.S. Department of Housing and Urban Development
Community Planning & Development Division
400 Southwest Sixth Avenue, Suite 700
Portland OR 97204-1632

RE:    Housing Opportunities for Persons with AIDS (HOPWA)
       Grant Number: ID-H99-0025
       Contract with Idaho Aids Foundation

Dear Mr. Carlson:

This serves to follow up to your letter of January 25, 2002 regarding HOPWA monitoring
with the Idaho Aids Foundation (IAF). I understand that in follow up to a letter from
IAF's attorney, David LeRoy, HUD determined it advisable to not have Mr. Olson come
to Boise to perform a monitoring follow up visit with IAF. Further, if HUD determines it
is appropriate to fulfill this monitoring, it will schedule a date at that time.

In your letter of January 25, 2002, you refer to our monitoring of IAF and the use of
redacted files.    While we had anticipated that this matter would be resolved by now and
that IAF would begin using a Release Form to accommodate the unrestricted release of
monitoring information, this apparently has not taken place at IAF.    Mr. LeRoy's letter
to HUD's national office is continuing to pursue IAF's position that such release of
information would be inappropriate. IHFA presently has reimbursement requests from
IAF for dates subsequent to the end of September, 2001. IHFA has released funds
through September, 2001 based on review of redacted files. Apparently, IAF expects
that IHFA will continue to release funds based on review of redacted files until the issue
of release of information without redaction can be resolved on the basis of whether it is
appropriate or not.

My point in writing today is to determine HUD's position with regard to IHFA's release
of funds to IAF based on the use of redacted file review for dates subsequent to the end of
September, 2001 until such time as the issue of privacy concerns raised by IAF is
addressed by HUD in response to Mr. LeRoy's letter.    We need to know if IHFA
should proceed with monitoring reviews using redacted files and releasing funds on that
basis.



IHFA 0216

By the way, for your information, I am enclosing a copy of a letter dated February 8, 2002, from our attorney, Robert Kyte, to in-house counsel for IAF responding to some of the latest issues raised concerning the status of the IAF current contract.

I would appreciate response on these matters at your earliest convenience.    Thank you.

Very truly yours,

Julie H. Williams
Vice President, Community Housing Services

/Enclosure

cc: Robert Kyte, Esq.
    Earl Cook, IHFA
    Gerald Hunter, IHFA

# EXHIBIT Z



U.S. Department of Housing and Urban Development
Oregon State Office
Community Planning & Development Division
400 Southwest Sixth Avenue, Suite 700
Portland, OR 97204-1632

March 25, 2002

Julie H. Williams,
Vice President, Community Housing Services
Idaho Housing and Finance Association
PO Box 7899
Boise, ID 83707-1899

Dear Ms. Williams:

SUBJECT:  Housing Opportunities for Persons with AIDS (HOPWA) Program
          Grant Number: ID-H-99-0025
          Contract with Idaho Aids Foundation (IAF)
          Financial Hold

This is in response to your letter of February 11, 2002 which asked for this office's position regarding the acceptance of redacted records from IAF in lieu of original source documents for payment under the HOPWA program.

To recap this issue:

- On August 22, 2001 your agency performed a monitoring review at IAF, a HOPWA sponsor, and attempted to verify that grant funds were being used for eligible purposes. You were denied access to client record source documents by the sponsor due to confidentiality concerns. Since you were unable to verify that clients or services were eligible you asked this office for guidance on how to proceed.

- We contacted the Office of HIV/AIDS Housing, (Travis Emory, HOPWA Specialist for the Western Region, and David Voss, Director of the Office of HIV/AIDS Housing), and verified that by regulation, sponsors are required to provide full access to records so that eligibility of clients and services can be determined.

- This information was relayed to you at which time you composed a response (reviewed and approved by this office) and delivered it to IAF on September 25, 2001. Your letter contained two findings: 1) Failure to provide full access to client files and 2) inadequate documentation to support low-income status of clients. The required action was for the sponsor to provide access to certain records so that eligibility could be determined. Your letter also included the name and telephone number for Mr. Jan Olson of this office in case IAF wished to discuss the regulatory basis for the findings.

IHFA 0212

- On September 26, 2001, the executive director of IAF telephoned Mr. Olson to protest the findings in the monitoring letter. Mr. Olson agreed to a compromise which allowed redacted records up to that point but required that clients sign release forms for services henceforth. IAF was instructed to immediately inform their service providers of that requirement for continued funding. This compromise was communicated to your organization by Mr. Olson. As a result of the conversation your office released a payment for IAF which had been held in abeyance pending this office's direction. Also, in response to the conversation, IAF's attorney sent a letter to IHFA which made inaccurate references to the comments made by Mr. Olson. In an attempt to fully clarify HUD's expectations regarding the need for access to records, IHFA sent a letter (which was coordinated with this office) to IAF on October 4, 2001 which reiterated the need for access to client records effective immediately.

- Between October 4th and January 30, 2002, a variety of letters were exchanged between IAF, IHFA, Office of HIV/AIDS Housing and this office, along with numerous e-mails and telephone calls. On January 30th, an attorney representing IAF sent a letter to the Office of HIV/AIDS Housing which conveyed their belief that providing access to confidential client records, without informed consent, would violate Federal law.

A response to the IAF attorney's letter is still under review at Office of HIV/AIDS Housing. Unless directed otherwise by that office, IHFA is not authorized to make any payments to IAF for services which can not be verified by reviewing source documents; in particular confidential client records. The requirement for access to records before reimbursement, as related in IHFA's letter to IAF on October 4, 2001 stands unless changed by the direction of Office of HIV/AIDS Housing.

If you have any questions please contact Mr. Jan Olson at 503-326-7017.

Sincerely,

Doug Carlson, Director
Community Planning and Development

cc:

Don Miller
David Vos
Lynn Morgan

# EXHIBIT AA

**Idaho Housing
and Finance**
A S S O C I A T I O N

P.O. Box 7899

(565 W. Myrtle Street)

Boise, Idaho 83707-1899·

208-331-4882

Fax 208-331-4802

www.ihfa.org

TDD 800-545-1833 Ext. 400

March 28, 2002

Vicki Looney, Esq.
Disability Advocate
Idaho AIDS Foundation
P. O. Box 421
Boise, ID 83701

RE:  Outstanding Requests for Disbursements of HOPWA Funds

Dear Ms. Looney,

Recently you submitted requests through our attorney, Bob Kyte, to Earl Cook for disbursement of HOPWA funds for the Idaho AIDS Foundation for activities subsequent to October 4, 2002.   In light of previous discussions with HUD pertaining to such release of funds based on redacted files, on February 11, 2002, I requested clarification and direction on these requests from to Mr. Doug Carlson, Director of Community Planning and Development at the HUD office in Portland.

I received Mr. Carlson's letter of reply on March 25, 2002, a copy of which is attached. In that letter, IHFA is clearly directed to make no further "payments to IAF for services which cannot be verified by reviewing source documents, in particular confidential client records."  Until the current impasse between IAF and HUD in regards to this requirement is satisfactorily resolved, IHFA must abide by HUD's direct and is unable to disburse requested funds to the Idaho AIDS Foundation.

If you have any further questions on the subject, please contact our attorney, Mr. Bob Kyte.

Sincerely,

Julie H. Williams
Vice President, Community Housing Services

JHW/me

cc:  ✓Bob Kyte, Skinner Fawcett
      Earl Cook, IHFA
      Doug Carlson, HUD

# EXHIBIT BB

OFFICE OF ASSISTANT SECRETARY
FOR COMMUNITY PLANNING AND DEVELOPMENT

MAR 2 8 2002

Mr. David H. Leroy
Attorney at Law
P.O. Box 193
Boise, ID 83701

Dear Mr. Leroy:

This is in response to your letter of January 30, 2002, in which you raised concerns about Housing Opportunities for Persons with AIDS (HOPWA) grant with the Idaho Housing and Finance Association (ID-H-99-0025) in Idaho. In addition, this letter addresses matters on the confidentiality of client information that were included in other letters to Mr. Doug Carlson, Director, Office of Community Planning and Development for the Oregon State HUD Office.

HUD awarded a HOPWA competitive grant in the amount of $1,299,837 to this grantee on September 5, 1999 and signed a grant agreement on May 1, 2000. Your client, The Idaho AIDS Foundation, was selected by the Grantee as one of the project sponsors in order to provide supportive services to persons with HIV/AIDS in connection with housing assistance. I understand that the grant amounts to the Foundation are for the periods of 7/1/00 to 6/30/01 and 7/1/01 to 6/30/02 for the total amounts of $107,493 and $107,493 respectively. The statutory and regulatory requirements of the AIDS Housing Opportunity Act, 42 U.S.C. S. 12901 et seq. (1990) (the Act) and 24 CFR 574 apply to the funds. Section 12905(f) of the Act requires your client to keep financial records, sufficient in HUD's determination to ensure proper accounting and disbursing of grant funds and to provide the Grantee and HUD with access to those records. See also the program regulations at 574.500(b)(4), Responsibility for grant administration; 574,530, Recordkeeping; and 574.605, Applicability of OMB Circulars, which applies 24 CFR 84.53(e) to the grant.

I appreciate your concern that client medical and clinical information must be kept confidential under this program. This requirement is found at 574.440, Confidentiality, and is a restatement of the statutory requirement in section 12905 of the Act. However, it is my understanding that your client has consistently refused members of the Grantee's and HUD's staff access to program records for the purpose of confirming compliance with program requirements, notwithstanding the clear statutory and regulatory purpose and authorization for that access. I regret that you have also refused to follow the practical advice offered in our attempt to mediate this matter in consultation with our technical assistance provider, which is based on the successful operations of other nonprofit organizations in maintaining client records. Ultimately, this Department must be able to ensure that eligible persons are being appropriately assisted with these Federal funds. At this point, it appears that your client is either unable or unwilling to prove that funds it received were spent as required by law.

IHFA 0205

In addition, you have raised issues about converting competitive grant contracts into performance-based contracts; about the Homeless Management Information System (HMIS) and the applicability of The Privacy Act 5 USC 552a to grant program records your client maintains. Please be advised that the Federal Acquisition Regulation, Title 48 CFR, (FAR) does not apply to HOPWA grants. FAR applies only to acquisition by contract of supplies and services by and for the use of the federal government, 48 CFR 2,101 Further, HUD awarded funds in the grant with the Idaho Housing and Finance Association for the express purpose of data collection on project outcomes. This component was established as a provision of HUD's notice of funding availability under which this project application was selected for funding. In part, this component helps to implement performance elements that are established for the HOPWA program. The Department is working with the HOPWA competitive grant recipients to make use of these funds to advance the quality of their evaluation efforts and to share information and lessons learned in the operation of these projects with other communities. The grantee may work to integrate their HOPWA efforts in tracking support provided to clients within related information technology systems that are in use in the community, such as a Homeless Management Information System. However, HUD has not required the use of an information technology system for performance reporting on HOPWA activities for our competitively selected grants. If such systems are used, HOPWA activities must be undertaken in a manner that would retain confidentiality for HOPWA clients, as required by the Act and program regulations. This may include using client identifiers rather than names.

Finally, with regard to the Privacy Act issues you raise, the Privacy Act prohibits Federal agencies from disclosing records contained in its system of records. To the extent HUD gets information from our grantees and it becomes part of our records, we comply with the Privacy Act and do not disclose the records outside of the agency. The requirements of the Privacy Act do not apply to the Grantee or your client, as they are not federal agencies within the definition found at 5 USC 552(a)(a)(1). Neither have we designated the Grantee or your client an agent of HUD.

In our view, the Department and the Grantee have repeatedly attempted to resolve this matter with your client and to provide practical advice on how to meet our common objectives while preserving the confidentiality of client records. The persistent lack of cooperation by your client has made it impossible to verify the eligibility of its activities. For that reason, you were notified by letter dated and delivered on October 4, 2001, by Julie H. Williams, Vice President, Community Housing Services, Idaho Housing and Finance Association, that no further HOPWA funds would be disbursed for payments of client services if client records were not made available for inspection by IHFA. That decision remains in effect. The Department fully supports that decision. Please note that refusal by your client to comply with the statutory and regulatory provisions for the HOPWA program could result in further enforcement actions for noncompliance under 24 CFR 574.500(c) of the HOPWA regulations, and 24 CFR part 85.43, Administrative Requirements for Grants and Cooperative Agreements to State, Local and Federally Recognized Indian Tribal Governments; and 24 CFR Part 84.62, Grants and Agreements with Institutions of Higher Education, Hospitals, and Other Nonprofit

IHFA 0206

Organizations. The enforcement action could include the suspension of the award to the Idaho AIDS Foundation and the reimbursement for all HOPWA funds disbursed to the Foundation.

Sincerely,

David Vos
Director
Office of HIV/AIDS Housing

# EXHIBIT CC

**IHFA** Housing
and Finance
A S S O C I A T I O N

P.O. Box 7899

(565 W. Myrtle Street)

Boise, Idaho 83707-1899

208-331-4882

Fax 208-331-4802

www.ihfa.org

TDD 800-545-1833 Ext. 400

April 9, 2002

**VIA U.S. REGISTERED MAIL**

Vicki Lynn Looney, Esq.
Idaho AIDS Foundation
6023 Clinton Street
Boise, Idaho 83705

RE:    Outstanding Requests for Disbursements of HOPWA Funds

Dear Ms. Looney,

On April 3, 2002, IHFA was provided a copy of Mr. David Voss's letter of March 28, 2002 addressed to your counsel, Mr. David Leroy, responding to the confidentiality concerns set forth by the Idaho AIDS Foundation. I assume that you have by now received and reviewed the referenced letter.

Mr. Voss's letter serves as a directive to IHFA to pursue the grant monitoring activities suspended since October 4, 2001 pending clarification of HUD's audit requirements. According to this directive, prior to reimbursing any pending billings submitted by the IAF, it will be necessary for IHFA to complete a monitoring visit to conclude the review of tenant services source documentation and issues documented in Earl Cook's letter of September 25, 2001. It will also be necessary to review an appropriate number of files and documentation to support all requests for reimbursements from the IAF provided after October 4, 2002, as well as those included in your letter of March 28, 2002.

Following is a summary of all the unprocessed billings received for services provided after October 4, 2001 - the date from which releases of IAF clients records were required:

| Date | Contract | Services | Amount |
|------|----------|----------|--------|
| October 2001 | 99-01 | Psychiatric Services | $ 2,501.50 |
| | | Administrative Fees | $ 162.60 |
| October 2001 | 99-04 | Client Transportation | $ 180.47 |
| | | Case Management | $ 5,467.50 |
| | | Resource Identification | $ 97.50 |
| | | Homeless Prevention | $ 982.07 |
| | | Administrative Fees | $ 423.84 |



IHFA 0080

Idaho AIDS Foundation letter, page 2

| | | | |
|---|---|---|---|
| November 2001 | 99-04 | Client Transportation | $ 94.50 |
| | | Case Management | $ 4,927.50 |
| | | Housing Information | $ 115.00 |
| | | Homeless Prevention | $ 732.44 |
| | | Administrative Fees | $ 369.77 |
| December 2001 | 99-04 | Client Transportation | $ 135.00 |
| | | Case Management | $ 5,557.50 |
| | | Administrative Fees | $ 358.63 |
| January 2002 | 99-04 | Client Transportation | $ 81.00 |
| | | Case Management | $ 6,142.50 |
| | | Administrative Fees | $ 392.09 |
| February 2002 | 99-04 | Client Transportation | $ 81.00 |
| | | Case Management | $ 4,936.50 |
| | | Administrative Fees | $ 316.10 |
| Grand Total | | | $34,055.01 |

Please contact Mr. Cook to make appropriate arrangements to expedite the conclusion of last year's monitoring, including identification of any other files that might be required for services provided from October 2001 through February 2002. Mr. Cook will also need to review the following items:

- A listing of the psychologists by name and location (city/county) for the contract period, 7/1/00 through 6/30/01.
- A listing of the volunteer time contributed to the HOPWA program by name, hours, and category of work for the contract period.
- The methodology for determining eligibility for homeless prevention assistance.

My comments presume a cooperative position on the part of the IAF in regards to timely participation in the requisite compliance reviews directed by HUD. As IHFA is currently preparing a grant extension request for immediate submission to HUD, it is necessary for you to respond to this letter no later than April 19, 2002, indicating whether or not the IAF will engage in the necessary monitoring visit. Please feel free to call Mr. Cook directly at 331-4760 to arrange a mutually convenient time to complete the monitoring review.

Sincerely,

Julie H. Williams
Vice President
Community Housing Services

Cc:   Bob Kyte, Skinner Fawcett
       Doug Carlson, HUD

# EXHIBIT DD

# HOWARD A. BELODOFF
## BELODOFF LAW OFFICE
2402 W. Jefferson St.
Boise, Idaho 83702
(208) 331-3378


April 19, 2002


*Via Fax: (208) 345-2668*


Robert E. Kyte
Skinner Fawcett Law Offices
PO Box 700
Boise ID 83701

Dear Mr. Kyte:

I am writing to respond to Ms. Julie Williams' letter of April 9, 2002 addressed to Vicki Looney of the Idaho Aids Foundation, Inc. (IAF). I have been retained to represent the IAF in all future matters concerning the Idaho Housing and Finance Association's HOPWA contract. I would note that David Leroy will continue to represent IAF on the issues he has been addressing. I feel it is appropriate at this time that all further communications regarding the outstanding issues with the HOPWA contract be directed to my office and unless I am instructed otherwise, I will correspond directly with you as counsel for IHFA.

Before I address the issues raised by Ms. Williams I feel the need to clarify some of the statements which she made in her letter. Ms. Williams' letter incorrectly indicated that the grant monitoring activities had been suspended since October 4, 2001 pending clarification of HUD's audit requirements. As you are aware, and the correspondence clearly reflects, grant monitoring activities were not suspended on October 4, 2001. This is the first time IAF has been informed that this had occurred. I would refer to your letter of January 11, 2002 in which you stated "I have spoken with Mr. Cook who affirms the government monitoring visit that was conducted." Mr. Cook monitored IAF and met with Ms. Looney to resolve any monitoring issues. According to Ms. Looney's letter of January 9, 2002 to Mr. Cook, he "seemed to be in agreement that I [Ms. Looney] was able to present you [Mr. Cook] with information and attendant explanations that addressed your [Mr. Cook's] concerns and met documentation requirements necessary to pave the way for payment of outstanding billables."

IHFA 0077

Robert Kyte
April 19, 2002
Page 2

Ms. Looney's correspondence of January 14, 2002 to you reflects an agreement with IHFA to an additional monitoring visit by Jan Olsen of the U.S. Department of Housing and Urban Development on February 8, 2002. As you know, Mr. Olsen canceled his visit with one day's notice on February 7, 2002. In your letter of February 8, 2002, you indicated that the visit would be rescheduled when HUD determines it to be appropriate. Ms. Looney subsequently continued to provide Mr. Cook with all the supporting documentation he required. To date, IAF has never received from IHFA any correspondence which questioned a single outstanding billing which was not fully addressed to Mr. Cook's satisfaction.

The IAF has, within the terms of its contract and in compliance with federal statutes and regulations, state law, and ethical obligations, cooperated with the IHFA and has continually provided all the required and necessary documentation to enable the monitoring of the contract. In an effort to resolve all pending monitoring issues, the IAF will again cooperate in Ms. Williams' request to conduct yet another monitoring visit when the necessary information which I have requested below has been provided to IAF by the IHFA

In Ms. Williams' letter, she states "It will be necessary to review an appropriate number of files and documentation to support all requests for reimbursements from the IAF. . . ." Please provide me with the number of files which the IHFA believes to be the appropriate number and indicate the client identifier and billings they are requesting to review so IAF can prepare for the visit. IAF will need time to gather this information because, due to IHFA's unilateral freeze on the contract and refusal to pay IAF pursuant to the terms of the contract, IAF has had to lay off most of its staff. Ms. Williams' letter also requests that IAF contact Mr. Cook to make "appropriate arrangements" regarding last year's monitoring, including the identification of other files that might be required for services provided from October 2001 through February 2002. I believe at this time it is more appropriate for IHFA to provide IAF with a written request stating what specifically Mr. Cook proposes to review besides the list of three items stated in the letter. This should include a specific description of each item he requests to review.

IAF will expect to receive full payment of all outstanding billings within five (5) business days of the monitoring visit unless the IHFA provides a specific objection for each billing it is disputing, including the factual and legal basis for the objection. The IAF insists on expediting payments under the contract because due to the IHFA's continuing refusal to provide reimbursement IAF has been unable to provide critical services to eligible recipients of HOPWA funds as required by the terms of the contract. As you know these services have had to be terminated as a result of the IHFA's delay in reimbursing IAF under the terms of the contract. These HOPWA services were specifically intended by Congress to serve the needs of a specific disabled population and their families. In Idaho the actions of the IHFA have been deprived these persons and their families of necessary housing,

Robert Kyte
April 19, 2002
Page 3

medical, psychologically and other supportive services on which their lives depend. IHFA's
actions have intentionally and reckless caused an already fragile population and their families
to needlessly suffer hardship, harm and aggravated their medical conditions.

In summary, the IAF continues to agree to cooperate with all reasonable and legal
monitoring requests by the IHFA in accordance with the terms of the contract. I will arrange
with you a mutually agreeable time for Mr. Cook to visit for this purpose once I receive and
can review the IHFA's a response to my requests. IAF will need a reasonable amount of
time to prepare the documentation requested in Ms. Williams' letter before any monitoring
visit can be schedule.

If you have any questions please contact my office. Thank you.

Sincerely,

Howard A. Belodoff

HAB:B
cc:    Julie Williams, IHFA
       Earl Cook, IHFA
       Mark Welsh, IAF

# EXHIBIT EE

# SKINNER FAWCETT
## LAW OFFICES

RICHARD A. SKINNER
CHARLES W. FAWCETT
DENNIS GIBALA
ROBERT E. KYTE

515 SOUTH 6TH STREET
POST OFFICE BOX 700
BOISE, IDAHO 83701-0700
TELEPHONE (208) 345-2663
TELECOPIER (208) 345-2668
E-MAIL: bobkyt@skinnerfawcett.com

April 24, 2002

Howard A. Belodoff, Esq.
Belodoff Law Office
2402 W. Jefferson St.
Boise, ID 83702

   RE: Idaho Housing and Finance Association – Idaho Aids Foundation

Dear Mr. Belodoff:

   This responds to your letter of April 19, 2002, regarding the outstanding amounts that your client, Idaho Aids Foundation (IAF), has submitted for payment to our client, Idaho Housing and Finance Association (IHFA), under the HOPWA program.  I want to assure you that IHFA will be very pleased to have all outstanding issues pending with IAF resolved.

   By way of review and to clarify some of the issues you raised in your letter regarding monitoring visits and the October 4, 2001 date issue, let me explain.   A problem of monitoring arose when IAF declined to allow IHFA to monitor its recipient files for HOPWA compliance.  The HOPWA program (HUD) requires that the grantee, IHFA, provide assurances that only eligible recipients are receiving benefits for eligible activities and have access to recipient files for that purpose.  IAF did not feel it was legal to release this information to IHFA or HUD without proper documentation of releases by recipients.  In an effort to compromise and move this matter forward, HUD and IHFA agreed that for all reimbursement requests up to that date, October 4, 2001, it would provide reimbursements based on redacted files.   Subsequent to October 4, 2001, it was to be IAF's responsibility to assure the steps necessary to release the file information without redaction was provided.  This was documented in a hand delivered letter to IAF of that date from Julie Williams, Vice President of IHFA.  It was IHFA's understanding that this compromise, to be applied only up to that date, had been agreed to between Mr. Welch of IAF and Mr. Jan Olson, of HUD.  Mr. Welch has subsequently denied any such understanding with Mr. Olson, but Mr. Olson has continued to affirm this understanding to IHFA.  On November 9, 2001, Mr. Olson confirmed with the following message:

> *I said redacted records would be accepted for past services since the participants had not signed a release.  I said that effectively* [sic] *immediately IAF needed to contact the service providers and tell them to start having clients signs a release so we/you* [HUD and IHFA] *would have full and unfettered access.  If the clients chose not to sign the release then our* [HUD] *funds could not be used to serve them.*

   As I am sure you are aware, HUD's position is that the HOPWA regulations permit and require that source documents must be made available to HUD and IHFA, as HUD's grantee, in order to unrestricted monitoring to occur.

IHFA 0070

Howard A. Belodoff, Esq.
April 24, 2002
Page 2

From October 4, 2001 onward, IHFA was in frequent contact with IAF to try to accomplish the monitor review of pre-October 4, 2001 redacted documents and post-October 4, 2001 unrestricted documentation.

On November 1, 2001, Julie Williams of IHFA wrote Mr. Welch a letter responding to his letter of October 30, 2001. In her letter she asked Mr. Welch when he would be prepared to have the redacted documentation available for pre-October 4, 2001 activities and asked him to confirm that he was using "appropriate release documentation for reimbursements after October 4, 2001." On November 7, 2001, Earl Cook of IHFA wrote Mr. Welch a detailed letter of documents needed in redacted form to address the pre-October 4, 2001 payments. On November 8, 2001, one of IAF's attorneys, John Janis, responded that "IHFA is also once again taking the step of freezing payments." This was not the case. Rather, IHFA was merely following up with IAF on the basis that IHFA understood had been agreed to for documentation.

This matter continued unresolved with IHFA waiting for IAF to acknowledge when the pre-October 4, 2001 files would be available for monitoring in redacted form and the post-October 4, 2001 files would be available in unrestricted form. Finally, the parties all agreed to sit down at the table again to try to resolve this. On December 20, 2001, representatives of HUD, IHFA and IAF met in the IHFA board room for discussion. Most of the HUD representatives were present by telephone. The participants included:

• IAF – Mr. Welch, attorney Looney, attorney Janis, attorney Reardon
• IHFA – Julie Williams, Earl Cook and attorney Kyte
• HUD – Harry Gart, HOPWA Program Manager; Doug Carlson, Director of Community Planning in Portland and responsible for HOPWA Grants; Jan Olson, HUD Financial Analyst and Mariah Ybarra, HUD contractor working with Housing Opportunities.
(I may not have the HUD titles precise as I am taking these from my meeting notes)

As a result of the meeting a Meeting Report was shared among the participants. In case you have not seen it, a copy is enclosed for your use. The Meeting Report indicates that Mr. Olson of HUD's Portland office would review four (4) files from 2000. The suggested January 25, 2002 monitoring visit was cancelled by IAF because of scheduling problems and rescheduled to February 8, 2001. Earl Cook reviewed the redacted files under point 2 of the Meeting Report. The files Mr. Olson and Mr. Cook were to review were those covered in Mr. Cook's November 7, 2001 letter. These files were to be in redacted form and were for periods prior to October 4, 2002. Of course, as discussed below, Mr. Olson's visit has not occurred.

You will see under point 3 that HUD and IHFA were open to having IAF prepare its own release for information required under HOPWA monitoring because Mr. Welch did not like the previously suggested releases. The issue here wasn't which form was used, but rather that the form permitted HUD and IHFA the access needed for complete audit of files for eligibility purposes. You will also note under point 4 that Mr. Carlson agreed to review the privacy issues, which I will touch on later in this letter.

Subsequent to this meeting, there was back and forth communications between IHFA and IAF on various documents needed and details of that nature. Mr. Cook, pursuant to the monitoring visit called for under Section 2 of the Meeting Notes, conducted the monitoring visit on January 9, 2002. Ms. Looney, one of IAF's attorney followed up with a letter to Mr. Cook

IHFA 0071

Howard A. Belodoff, Esq.
April 24, 2002
Page 3

that started, "I was pleased that the monitoring visit went so smoothly this morning."    As a result of that visit, all funds related to the dates covered during that monitoring visit were released. With that payment, all funds due to IAF up to October 4, 2001 were been paid in full.

The monitoring visit of Mr. Olson was to cover only four (4) files from 2000.  The reason this was being in done by Mr. Olson was the in the first review of any documents by Mr. Cook, Mr. Cook had seen the names of some of IAF's clients. However, the form in which Mr. Welch presented the documentation was not in complete files but in documentation put together by Mr. Welch from the files. Subsequently, Mr. Welch insisted that since Mr. Cook had seen the identity of these recipients, which had not been covered with recipient releases, that no one from IHFA could access these files again because of "corporate memory" of the confidential information that had been accessed during Mr. Cook's initial review. Thus, through long discussion it was finally agreed that Mr. Olson of HUD would complete this review in redacted form.

On January 10, 2002, I had a telephone conversation with Ms. Looney. In the course of the conversation I reminded her of the need for IAF to have releases in place to allow HUD and IHFA access to the recipients' files without need of redaction.  She indicated to me that she would keep me updated on the status of this with IAF. In that conversation, she indicated that she had prepared a release that she felt would work for IAF, IHFA and HUD. However, she implied that Mr. Welch was not satisfied with the release so she could not give me a final response on this matter.

On January 11, 2002, I wrote Ms. Looney following up on the monitoring visit by Mr. Cook, the planned visit by Mr. Olson and my telephone conversation of January 10, 2002.   In that letter, I affirmed IHFA and HUD's position regarding release of documentation without restriction or need of redaction.   I stated that "[w]hile we are happy to cooperate in preparing or reviewing such a release, and I understand HUD is willing to cooperate in this process, the real issue is getting a release that will work to provide this documentation to IHFA in a form that no longer requires redaction."

By early January, IHFA recognized a practical problem.  HUD had taken the position that monitoring of files after October 4, 2001, must be unrestricted. However, it was clear at the December 20, 2001, meeting that IAF had refused using releases.  What then should be the monitoring requirements for October 4, 2001 through December 20, 2001, or at that time the date was well into January.   Doug Carlson, HUD Director of Community Planning and Development responded by letter of January 25, 2002, that it was "imperative that original source documents be reviewed by this office and its representatives in order to determine that clients meet eligibility requirements and that accounting records are supported by source documentation as required under 24 CFR 84.21(a)(7)."

From that point to current the parties have gotten, to say the least, distracted from the issue of pending reimbursements.  By late January, IAF retained the services of its fourth attorney involved in this matter, David Leroy.   On January 31, 2002, Mr. Leroy wrote a letter to Mr. Voss, Director of HIV/AIDS Housing at HUD in Washington, D.C., raising a plethora of privacy issues and allegations regarding IHFA and HUD in its interaction with IAF.  As a direct result of this letter, HUD felt compelled to cancel Mr. Olson's monitoring visit to IAF until these matters could be addressed by HUD.  Ms. Looney wrote me on February 7, 2002,

IHFA 0072

Howard A. Belodoff, Esq.
April 24, 2002
Page 4

acknowledging that Mr. Olson's visit of February 8, 2002, would not occur "based on Mr. Leroy's letter to Mr. Voss" of HUD.

On February 8, 2001, in response to a letter Ms. Looney wrote to Mike Dittenber of IHFA on February 7, as well as to two letters addressed to me on February 4 and 7, 2002, I wrote again affirming that IAF needed to put in place a release for recipients to sign providing access to IHFA and HUD of unrestricted information needed under the HOPWA program. I mentioned the conversation I had with her regarding her prepared release and Mr. Welch's unwillingness to accept his legal counsel's document. Basically, the whole process came to halt with IAF refusing unrestricted access to files and refusing to proceed with the use of a release.

On February 11, 2002, Ms. Williams of IHFA again revisited this matter in a letter to Doug Carlson of HUD. Her inquiry was whether IHFA should proceed with IAF monitoring visits using redacted files until such time as the issues raised in Mr. Leroy's letter were addressed. This letter was responded to on March 25, 2002, by Mr. Carlson who affirmed HUD's prior position that as of October 4, 2001, HUD expected unrestricted access to recipient files and that IHFA should require the same.

During this time, further distractions from the process of addressing these payments came in quick succession. On March 11, 2002, Mr. Welch sent a Complaint against IHFA for discriminatory practices to the Assistant Secretary for Fair Housing and Equal Opportunity at HUD in Washington, D.C. Mr. Leroy, apparently unwilling to wait for HUD's response to his January 31, 2002, filed a complaint with the Idaho Governor, Mr. Kempthorne. At the same time IAF released a series of news release to the media attacking IHFA's HOPWA practices and policies. IAF also contacted other organizations to join in raising complaints against IHFA. While certainly within in their rights to take such action, IAF has distracted IHFA's personnel and resources to addressing these various matters and complaints which, of course, has not provided the best environment for a focused resolution of working with IAF to see how to best address the release of payments.

On March 28, 2002, Ms. Williams of IHFA wrote Ms. Looney clarifying the position that HUD had taken (See discussion of Mr. Carlson's March 25, 2002 letter above). On the same day, Mr. Voss of HUD released his letter to Mr. Leroy responding to the issues of Mr. Leroy's January 31, 2002 letter. I am sure you have reviewed Mr. Voss' letter which affirms HUD's position regarding the release of information and privacy issues raised. This was followed up on April 9, 2002, with a letter from Ms. Williams to Ms. Looney in which she included a review of the unprocessed billings received by IHFA from IAF for services from October, 2001 through February 2002 in the total amount of $34,055.01. Also included in the letter were specific steps for reviewing outstanding file issues with IAF.

In follow up to your suggestion, I am including at the end of this letter a listing of files requested for follow up monitoring including those originally requested for Mr. Olson's monitoring visit. However, Mr. Olson's visit has not tied up payment of any money to IAF as all payments through October 4, 2002 have been paid. Thus, the only money remaining unpaid are the $34,055.01 pending since that date. The review of files for the release of these funds remains at this time tied to the requirement of unrestricted file access.

This has been a very long letter. But, I felt that you deserved a chronological overview from our perspective of the activities that have brought us to where we are today. I have not

Howard A. Belodoff, Esq.
April 24, 2002
Page 5

included mention of all communications and correspondence as that would have consumed many more pages.   As you know, you are the fifth attorney representing IAF in these matters.   Mr. Janis and Mr. Reardon basically dropped out from this matter early in 2002.   Ms. Looney, who instructed IHFA and me to address communications for IAF through her left a voice mail on my phone on Monday, April 22, 2002, stating she no longer represents or works with IAF.   It is my understanding from your letter that Mr. Leroy is continuing to represent IAF on the privacy issues and, I suspect, the class action suit against IHFA that IAF is now advertising for class members. On the narrower issue of pending payments I will be happy to work toward resolution with you.

I am willing to meet with you in person if you feel that a direct conversation may lead to some resolution.   Frankly, I think it is going to be difficult to get any movement from HUD's requirement for unrestricted file access on any past file activities until such time as we can assure HUD of IAF's compliance with the use of releases and willingness to provide such unrestricted file access during future file reviews so that it may be assured that federal funds are being used in an appropriate manner for eligible recipients and eligible activities only.

Again, I assure you that IHFA would like to have this matter resolved and all issues between IAF and IHFA addressed in an amicable manner.   I trust we, along with our clients, can work to that end.   I look forward to further communications toward resolving this matter.

Very truly yours,

**SKINNER FAWCETT**

Robert E. Kyte

REK:sg
cc:    Gerald Hunter, IHFA
       Julie Williams, IHFA
       Earl Cook, IHFA

Howard A. Belodoff, Esq.
April 24, 2002
Page 6

## MONITORING FILES REQUESTED

For purposes of completing the monitoring review of randomly selected files, IHFA requested that IAF provide IHFA access to the following case files (It is noted where redaction of files is acceptable):

### 7/1/00 – 6/30/01

(Redacted Files)

| Client ID | Date | Service |
|---|---|---|
| EJ7394-0266 | 7/05/00 | 2 CM/1.5 MH |
| | 8/15/00 | 2 CM/1.5 MH |
| | 9/11/00 | .5 CM/1MH |
| | 10/3/00 | 1 CM/2 MH |
| | 11/6/00 | 1 MH |
| | 11/25/00 | 1 MH/1 CM |
| LB9877-0058 | 11/10/00 | 2 CM |
| | 3/19/01 | 2 CM/1 MH |
| QD5024-0279 | 4/5/01 | 1 MH/1 CM |
| | 5/23/01 | 1 MH/1 CM |
| DD8805-1064 | 9/21/00 | 2 CM |
| | 12/2/00 | 1 CM/1.5 MH |

Payment for this time period has been made to IAF.

### 7/1/01 – 10/4/02

Mr. Cook reviewed redacted files for July through September 2001 - a compromise that was acceptable to HUD. Mr. Cook does not believe that IHFA needs to re-review those files. Note: payment for this time period was made to IAF.

### 10/02 – 11/02

Mr. Cook received redacted case notes for the October and November period for the following files:

| Client ID | Date | Service |
|---|---|---|
| HB6889-0475 | 10/23/01 | 3 CM |
| CT0603-0757 | 10/12/01 | 2 CM |
| | 11/08/01 | 2 CM |
| PR3164-0852 | 10/10/01 | 3.5 CM |
| VR9609-0760 | 11/19/01 | 1 CM |

Mr. Cook's comments on the October and November files:

In several communications from HUD, I have been explicitly advised NOT to pay any invoices after October 4, 2001 for IAF without unrestricted access to the files. Accordingly, in addition to reviewing the file to determine eligible services, I will also need to verify the source

Howard A. Belodoff, Esq.
April 24, 2002
Page 7

documentation to verify that these clients are low income and that they are HIV positive, and that the services invoiced were eligible.

IHFA received the December 2001 Invoice in the amount of $6,051.13 on February 28, 2002, of which the following two files have been selected for review. In addition, I'll need to verify that the clients are low income and that they are HIV positive, and that the services invoiced were eligible.

| Client ID | Date | Service |
|-----------|----------|---------|
| 331426404 | 11/27/01 | 1 CM |
| | 11/29/01 | 2 CM |
| | 12/04/01 | 3 CM |
| | 12/18/01 | 1 CM |
| 1081937933 | 12/20/01 | 3 CM |

1/02 – 2/02

IHFA received the January and February 2002 Invoice in the amounts of $6,615.59 and $5,333.60 respectively on March 29, 2002, of which the following file has been selected for review to determine that the services invoiced were eligible:

| Client ID | Date | Service |
|------------|----------|---------|
| -1899793447 | 12/28/01 | 2 CM |
| | 1/3/02 | 2 CM |
| | 1/9/02 | 2 CM |
| | 1/17/02 | 3 CM |
| | 1/25/02 | 2 CM |
| | 2/1/02 | 2 CM |
| | 2/19/02 | 3 CM |
| | 2/22/02 | 2 CM |
| | 2/27/02 | 1 CM |
| | 2/28/02 | 2 CM |

In addition, Mr. Cook needs to verify that the following clients are low income and HIV positive:

Client ID
277111236
883392586
-171676994

In addition to the specific client files, the following items were requested to be made available to Jan Olson at the January (and subsequently cancelled) visit to clear the 2000-2001 Program Year:

- A listing of the psychologists by name and location (city/county) for the contract period, 7/1/00 through 6/30/01.
- A listing of the volunteer time contributed to the HOPWA program by name, hours, and category of work for the contract period.
- The methodology for determining eligibility for homeless prevention assistance.
- IAF's written financial procedures

IHFA 0076

# EXHIBIT FF

**HOWARD A. BELODOFF**
**BELODOFF LAW OFFICE**
2402 W. Jefferson St.
Boise, Idaho 83702
(208) 331-3378

SKINNER FAWCETT

MAY   9 2002

RECEIVED

May 8, 2002

Robert E. Kyte
Skinner Fawcett Law Offices
PO Box 700
Boise ID 83701

Dear Mr. Kyte:

I am writing in response to your letter of April 24, 2002 which replied to my letter of April 19, 2002. I see no point in responding to your chronology of events since the correspondence speaks for itself and I frankly see no purpose debating the past issues on which there are differences of understanding or perception. That said, I believe my understanding of your letter can be summed up by the following quotes from your letter:

> On February 8, 2001 [sic] [2002] . . ., I wrote again affirming that IAF needed to put in place a release for recipients to sign providing access to IHFA and HUD of unrestricted information needed under the HOPWA program.

Letter, p. 4.

> Frankly, I think it is going to be difficult to get any movement from HUD's requirement for unrestricted file access on any past file activities until such time as we can assure HUD of IAF's compliance with the use of releases and willingness to provide such unrestricted file access during future file reviews so that it may be assured that federal funds are being used in an appropriate manner for eligible recipients and eligible activities only.

Letter, p. 5.

Given that this is IHFA's position, I would request that you provide me in writing the following: I would like IHFA to tell me what is the specific citation to the statute, regulation, OMB Guideline, contractual provision, or other legally promulgated policy and procedure upon which it is relying or basing its position which supports the monitoring and auditing requirements which IHFA is unilaterally imposing on the IAF including, but not limited to "unrestricted file access" to medical and clinical information and imposing a requirement that IAF obtain releases from HOPWA applicants and for recipients.

IHFA 0065

Robert Kyte
May 8, 2002
Page 2

I have reviewed Mr. Carlson's letter of March 25, 2002 to Ms. Williams and he does not specifically cite to any statutes, regulations, or other authority on which he bases his conclusions. I have also reviewed Mr. Voss' letter of March 28, 2002 to Mr. Leroy. Mr. Voss does specifically cite to the HOPWA statute and regulations including 574.440, Confidentiality, and 24 U.S.C. § 129052(e) Confidentiality, in reference to the "concern that client medical and clinical information must be kept confidential under this program." However, Mr. Voss does not indicate under what specific statute, regulation, OMB Guideline, contractual provision, or other legally promulgated policy or procedure which authorizes his assertion that IHFA can require IAF to obtain written releases from individual applicants and/or recipients of HOPWA funds to disclose confidential medical and clinical information. Please provide me with this authority because after a thorough review of each citation in Mr. Voss' letter and a thorough review of legal authorities, I have found no reference to support such a request.

I would also request that IHFA also provide IAF with the legal authority on which they believe or contend that 25 U.S.C. § 3544, the Privacy Act, 5 U.S.C. § 552a, the Fair Housing Act, 42 U.S.C. § 3601, et seq., 24 C.F.R. Part 14, et al., Idaho Code §§ 39-606 & 607, Idaho Code § 54-3410, and Idaho Rules of Evidence 503, 517 and 518 do not apply and enables IHFA to require that IAF disclose the confidential medical and clinical information it possesses on eligible HOPWA recipients without written consent to do so.

Assuming that IHFA has the authority to request a written release and to disclose confidential medical and clinical information without it, I would like a written response to the following questions. If IAF has requested that persons who are income eligible and have a medical diagnosis of HIV and who were found eligible or would be found eligible for HOPWA services under IAF contract, but they refuse to sign written releases consenting to disclosure, what is the IAF supposed to do? Is IHFA supposed to terminate or refuse HOPWA services to these persons or is IAF supposed to continue or begin providing HOPWA services to persons who refuse to sign a release? If IHFA's response is to continue to provide or to provide services then will the IHFA continue to refuse to reimburse IAF under the contract for the HOPWA services it provides to these persons?

Since IHFA is requiring IAF to disclose confidential medical and clinical information without a written consent of the person, I would request that IHFA indemnify and hold harmless IAF and agree to pay for all costs to defend against any civil or criminal lawsuit and all damages, criminal or civil penalties, or other court-ordered relief which is awarded or fines appropriated or is IAF required to pay or provide part of a settlement as a result of any disclosure of the confidential information which IHFA is requiring IAF to disclose. Since IHFA believes it possesses the legal authority to require IAF to allow Mr. Cook and

Robert Kyte
May 8, 2002
Page 3

any other non-medically trained individual it chooses to review medical and clinical records,
I would think this is not a problem.

As soon as IHFA can assure IAF that it has the legal authority to require it to disclose
confidential medical and clinical records, the sooner this matter can be resolved in an
amicable manner.

Thank you.

Sincerely,

Howard A. Belodoff

HAB:B
cc:   IAF

IHFA 0067

# EXHIBIT GG

# SKINNER FAWCETT
## LAW OFFICES

RICHARD A. SKINNER
CHARLES W. FAWCETT
DENNIS GIBALA
ROBERT E. KYTE

515 SOUTH 6TH STREET
POST OFFICE BOX 700
BOISE, IDAHO 83701-0700
TELEPHONE (208) 345-2663
TELECOPIER (208) 345-2668
E-MAIL: bobkyt@skinnerfawcett.com

June 24, 2002

Howard A. Belodoff, Esq.
2402 W Jefferson Street
Boise, ID 83702

RE:   Your Client:   Idaho Aids Foundation (IAF)
      Our Client:    Idaho Housing and Finance Association (IHFA)

Dear Mr. Belodoff:

This responds to your letter of May 8, 2002, regarding the activities between our respective clients under the Housing Opportunities for Persons with Aids (HOPWA) program. As you are aware from our communications since your letter, we have been seeking clarification from the U.S. Department of Housing and Urban Development (HUD) on a number of issues. The present response we received indicates that HUD is giving further study to some of the issues and, hopefully, will respond in the near future. Thus, my response is subject to the caveat that IHFA may make any changes deemed appropriate by HUD in any further response HUD makes to IHFA's request for clarification. However, I felt that IHFA should provide some response to you at this time based on the status of previous discussions and communications from HUD.

You requested citation for support of IHFA's monitoring and auditing requirements. First of all, let me review the position of IHFA that these requirements are not IHFA generated. Rather, IHFA is reflecting requirements under federal law and the directives from HUD. HUD's position has been that by the nature of the HOPWA program whereby federal moneys are granted for eligible recipients to be used for eligible activities, the federal government has the authority to monitor and audit the use of the federal funds either itself or through its grantee, which in this case is IHFA. Neither HUD nor IHFA mandated the use of releases because HUD did not consider them necessary to do the monitoring and auditing for such documentation. The use of a release arose at the insistence of Mr. Welch at IAF that IAF could not release this information without such a release. HUD's position was that if IAF wished to use a release form it could. IHFA was willing to provide such a release or IAF was given the option to create its own release. Neither HUD nor IHFA was concerned with the specific content of IAF's release, only that it be given access to the documents needed to conduct monitoring.

Howard A. Belodoff, Esq.
June 24, 2002
Page 2

With regard to citation of authority, I am not sure how to respond on this as Mr. Vos, HUD Director, Office of HIV/AIDS Housing, in his letter to IAF attorney David Leroy on March 28, 2002, outlined statutory and regulatory authority, and Mr. Carlson, HUD Director, Community Planning and Development, in his letter to Julie Williams on January 25, 2002, indicated three CFR citations for the monitoring of records. You have copies of both of these letters. Mr. Vos' letter referred to the statutory authority found in 42 U.S.C. § 12901 *et seq.* and specifically cited to the record keeping requirements under 42 U.S.C. § 12905(f) which states:

> *The recipient shall agree to maintain and provide the grantee or the Secretary with financial records sufficient, in the determination of the Secretary, to ensure proper accounting and disbursing of amounts received from a grant under this chapter.*

Mr. Carlson cited to 24 CFR 84.21(a)(7) for records requirements that are supported by *source documents*. I understand that HUD's view of *source documents* are documents that can show the details of the services rendered and include physician records etc.

24 CFR 84.53(e) states that:

> *HUD, the Inspector General, Comptroller General of the United States, or any duly authorized representatives, have the right of timely and unrestricted access to any books, documents, papers, or to make audits, examinations, excerpts, transcripts and copies of such documents.*

24 CFR 85.40(a) mandates:

> *"Grantees must monitor grant and subgrant supported activities to assure compliance with applicable Federal requirements and the performance goals are being achieved. Grantee monitoring must cover each program, function or activity.*

Clearly, the above referenced regulations state that IHFA, as grantee under the HOPWA program, must monitor IAF as a subgrantee of the program. IHFA is the *"duly authorized representative"* of HUD to be afforded *"unrestricted access"* as called for under the above regulations.

Additionally, the HOPWA regulations follow along the same type of requirements mandating the subgrantee (i.e. IAF) maintain records for a period of four (4) years (24 CFR 574.530). There is a requirement of confidentiality under the HOPWA regulations (24 CFR 574.440). This requirement anticipates that the HOPWA parties (i.e. HUD, IHFA as grantee and IAF as subgrantee) will maintain the confidentiality of all records they have access to. Certainly, this confidentiality requirement should not be read to prevent any of the these parties from having access to

Howard A. Belodoff, Esq.
June 24, 2002
Page 3

the information anticipated under the HOPWA regulations.  HUD and IHFA certainly have stated their affirmation of maintaining confidentiality of all records they have access to for HOPWA monitoring.  IHFA, as grantee, is required under 24 CFR 574.500(a) to ensure that the grants are administered in accordance with the HOPWA regulation requirements and to ensure that project sponsors (i.e. IAF) "carry out activities in compliance with all applicable requirements."  How could IHFA comply with its requirements without the monitoring and audit rights inherent in these requirements, as well as those outlined in the regulations discussed above?

Moving to the contract between IHFA and IAF (HOPWAS 99-01 dated July 1, 2001), there are two references to information to be provided by IAF to IHFA and HUD. In § 13 the recipient, IAF, agrees to provide information (excluding information categorized as confidential by law) for any national or state evaluations conducted by HUD or IHFA.  This requirement is not a monitoring or audit requirement.  Rather, it is for the big picture reporting requirements for surveys by HUD or IHFA (i.e. the Annual Performance Report, or APR).   The monitoring and reporting requirements for reimbursement purposes is under § 15 that requires the recipient to make available to HUD or IHFA *any requested information* to conduct program audits (emphasis added).

I am really not sure why this release of information issue was not raised by IAF and resolved at the initiation of the contract between IAF and IHFA.  I would have anticipated that IAF, if concerned about releasing information to IHFA or HUD, would have taken whatever steps were needed to obtain releases if it deemed necessary. However, when IAF raised these issues with IHFA and HUD, both responded that it would allow IAF an exception for providing information which would not identify the end recipient of the grant benefits by allowing redacted information through October 4, 2001, but that as of that date it was IAF's responsibility for obtaining releases.   IAF refused.  Even after the December 20, 2001, telephone conference with HUD, IHFA and IAF representatives, IAF continued to refuse to use a release form in spite of its legal counsel's preparation of a release form for IAF's use.

Moving to the privacy issues you have raised, I again refer you to Mr. Vos' letter of March 28, 2002, addressed to David Leroy.  The discussion of these issues under the Privacy Act indicates that it applies to federal agencies and prohibits disclosing records contained in its system of records.  Even if IHFA, which is not a Federal agency, is brought under this requirement by some argument that it is acting as agent for a Federal agency (which Mr. Vos denies is the case), Mr. Vos' response remains accurate:  neither IHFA or HUD are disclosing the private information they may access in the course of monitoring.  As discussed above, the federal regulations mandate that all information obtained in administering the HOPWA program are to remain confidential.  IHFA is committed to such confidential treatment of any information it accesses in the course of grant monitoring.

You also raise the issue of applicability of certain Idaho statutes to this matter. The references in *Idaho Code §§ 39-606 & 607* do not seem applicable here.   These

Howard A. Belodoff, Esq.
June 24, 2002
Page 4

sections deal with reports to the director of the Department of Health and Welfare and the level of confidentiality required.   IHFA is not using any information reported by the Department of Health and Welfare in its relationship with IAF.   However, I will note that even under these statutes, written authorization by the person whose records are maintained permits disclosure of the information.  Similarly, the Rules of Evidence cited and *Idaho Code § 54-3410* deal with admissibility of certain information in court proceedings or examination of privileged witnesses in a court setting.  IHFA is not involved in any way in using any recipient information in this manner.

In your letter you raise the question of privacy and disclosure in the context that such disclosure of *"medical and clinical information it* [IAF] *possesses on eligible HOPWA recipients without written disclosure to do so."*   Again, IAF has been given numerous opportunities to put releases in place and has chosen not to do so. Accommodations were made by IHFA and HUD to provide a compromise review of information through October 4, 2001, when it was clearly stated to IAF that they needed to commence use of such releases if it felt necessary to provide IHFA and HUD eligibility documentation.

IHFA's position, based on information it has received from HUD, is that any recipient who denies access to information necessary to monitor eligibility of the recipient and the activities being provided for HOPWA funding would be ineligible for such funding.

You also asked if IHFA is willing to indemnify and hold IAF harmless for any legal actions that may arise from IAF's disclosure of confidential information to IHFA. IHFA is unwilling to do so.   While at first blush this may seem a reasonable request by IAF, in light of IAF's recent actions to solicit this type of litigation against IHFA, IHFA would be opening itself to unwarranted risk of liability to indemnify IAF when at the same time IAF has been soliciting participants to join a class action suit against IHFA on these very matters.   I am sure you are aware of IAF's activities in this regard, but I reference by way of example the solicitation in the April 6, 2002, edition of *The Catylist*.

IHFA is still holding several invoices for reimbursement.  One is for $6,015.13 dated February 28, 2002 and two dated March 29, 2002 for $6,615.59 and $5,333.60. IHFA would be pleased to pay these amounts provided IAF provides the documentation for recipient and income eligibility, as well as the documentation for activities eligibility as outlined in my letter to you on April 24, 2002.

I would like to observe further that while HUD has taken the position that accessibility of information extends to include any medical reports in the files of the Service Provider such as IAF, IHFA has never mandated or required access to medical notes from physicians.  Rather, IHFA's access has been limited to affirming recipient HIV status, recipient income eligibility and proof of services rendered which has included such acceptable documentation as physician's billing invoices showing the patient visit and when they occurred, which IHFA refers to as "time and space"

IHFA 0050

Howard A. Belodoff, Esq.
June 24, 2002
Page 5

verification for the individual recipient.    IHFA's concern in making IAF and other
Service Providers aware of the broader documentation requirements as stated by HUD is
so that if HUD chooses to do follow up audits itself, the Service Provider is aware of such
potential document review by HUD.

In light of the notice we received in your letter of May 29, 2002, that IAF has
discontinued serving applicants and recipients under the HOPWA program and ceased
operations, and because IHFA is receiving inquiries regarding provision of such services,
IHFA is looking for alternate ways to meet these needs in the community.    IAF's
termination of performance of its services called for under its agreement with IHFA
leaves IHFA no alternative than to accept this action by IAF as termination of the
Agreement and move forward with alternative ways of fulfilling these needs.

From IHFA's perspective, barring IAF's willingness to meet the HOPWA
program requirements for documenting eligibility of recipients, their income and
activities in order to meet the reimbursement monitoring requirements required of IHFA,
or some change in position by HUD in further clarification that we still await, then there
really is no further action that IHFA can take to satisfy IAF.   IHFA continues to desire
an amicable resolution of this matter with IAF, but must work within the parameters
outlined by HUD and the mandates for its requirements under the HOPWA program.

Very truly yours,

**SKINNER FAWCETT**

Robert E. Kyte

REK:sg

cc:  client

# EXHIBIT HH

09/30/05   11:45 FAX 208 331 4808     IDAHO HOUSING AUTHORITY                    002

**U.S. Department of Housing and Urban Development**
Washington, D.C. 20410-7000

OFFICE OF ASSISTANT SECRETARY
FOR COMMUNITY PLANNING AND DEVELOPMENT

FEB 25 2003

HOUSING & FINANCE ASSOCIATION
DATE RECEIVED

MAR 0 3 2003

Mr. Earl M. Cook
Manager, Grant Programs
Idaho Housing and Finance Association
565 W. Myrtle Street
P.O. Box 7899
Boise, Idaho 83707-1899

Dear Mr. Cook:

This is in response to your letters of May 15, 2002 and June 18, 2002, in which you addressed issues involving HUD's grant to the Idaho Housing and Finance Association (IHFA) under the Housing Opportunities for Persons With AIDS (HOPWA) program.

You indicated that the previous advice provided by this office, in the March 28, 2002 letter to David Leroy, the legal representative for the Idaho AIDS Foundation (IAF), was essentially being ignored by that organization, along with advice provided on March 25, 2002 by Doug Carlson, Director, Office of Community Planning and Development, Oregon State Office. Your letter states that IAF again requested that IHFA provide the legal authority to conduct monitoring and auditing, including the requirement to obtain client consent releases from program recipients.

HUD's correspondence of March 28, 2002 provides the citation for authority to conduct grant-monitoring actions. The citation noted in that letter is as follows:

The statutory and regulatory requirements of the AIDS Housing Opportunity Act, 42 U.S.C. 12901 et seq. (1990) (the Act) and 24 CFR 574 apply to the funds. Section 12905(f) of the Act requires your client to keep financial records, sufficient in HUD's determination to ensure proper accounting and disbursing of grant funds and to provide the Grantee and HUD with access to those records. See also the program regulations at 574.500(b)(4), Responsibility for grant administration; 574.530, Recordkeeping; and 574.605, Applicability of OMB Circulars, which applies 24 CFR 84.53(e) to the grant.

Finally, with regard to the Privacy Act issues you raise, the Privacy Act prohibits Federal agencies from disclosing records contained in its system of records. To the extent HUD gets information from our grantees and it becomes part of our records, we comply with the Privacy Act and do not disclose the records outside of the agency. The requirements of the

IHFA 0270

03/30/05  11:45 FAX 208 331 4808        IDAHO HOUSING AUTHORITY                                    ☒003

Privacy Act do not apply to the Grantee or your client, as they are not federal agencies within the definition found at 5 USC 552(a)(a)(1). Neither have we designated the Grantee or your client an agent of HUD.

Please note that refusal by your client to comply with the statutory and regulatory provisions for the HOPWA program could result in further enforcement actions for noncompliance under 24 CFR 574.500(c) of the HOPWA regulations, and 24 CFR part 85.43, Administrative Requirements for Grants and Cooperative Agreements to State, Local and Federally Recognized Indian Tribal Governments; and 24 CFR Part 84.62, Grants and Agreements with Institutions of Higher Education, Hospitals, and Other Nonprofit Organizations. The enforcement action could include the suspension of the award to the Idaho AIDS Foundation and the reimbursement for all HOPWA funds disbursed to the Foundation.

Regarding client record releases or disclosure consent forms, such forms are not required in order for IHFA to conduct HOPWA grant monitoring, including having access to appropriate documentation that your project sponsors are serving eligible persons through appropriate levels of eligible activities. I am aware that IHFA has been working to develop client record releases to inform clients of the potential uses of personal information within the limited purposes of providing them the requested assistance. The use of releases or consent forms are not established under the HOPWA program requirements, and therefore refusal to sign such releases or forms would not necessarily make the client ineligible for HOPWA assistance. Eligibility on the basis of HIV positive status and low incomes are required and adequate documentation by projects sponsors must be maintained, and as noted, be made available for confidential inspection by HUD and our grantee, as part of HOPWA grant monitoring.

However, I understand that the question of how the releases or forms comply with fair housing statutes and regulations is now under active review by HUD's Office of General Counsel. Although the matter does not appear to directly involve HOPWA program requirements, I will defer to the results of this review in responding to your inquiry. As you know, technical assistance on the use of client releases was provided by Judith Keeler, HUD Director for the Office of Fair Housing and Equal Opportunity in Seattle, in a letter dated July 26, 2002. Ms. Keeler made it clear that her advice was not a legal determination, only technical assistance. Thus, we must wait until a determination on this issue is made by the Office of General Counsel.

Finally, this office consulted with our legal counsel regarding the possibility that the Health Insurance Portability and Accountability Act of 1996 (HIPAA) might limit your authority to conduct grant monitoring without client consent. It is my understanding that our legal counsel had referred you to the Department of Health and Human Services regulations implementing HIPAA, found at 45 CFR part 160. We believe HUD is exempt from HIPAA requirements restricting disclosure of confidential medical information by the definition of health plan found at 45 CFR 160.103. This exception generally applies to federally funded programs, such as the HOPWA program, whose

principal purpose is other than providing, or paying the cost of, health care. *See generally* 65 Fed. Reg. 82462, 82576-82579 (Dec. 28, 2000) (discussing this exception in response to comments); 65 Fed Reg. at 82479 (Dec. 28, 2000) (giving rationale for exemption). In conducting HOPWA activities, IHFA would also be excluded under that section or by the applicability of 45 CFR 164.512(a), which authorizes disclosures of protected health information to the extent such use or disclosure is required by law and the use or disclosure complies with and is limited to the relevant requirements of such law. *See generally* 65 Fed. Reg. at 82524-82525 (preamble discussion of exception). As to further HIPAA applicability, we encourage you to contact the Department of Health and Human Services regarding these regulations. We also encourage you to contact your State's Office of Attorney General for further guidance on the applicability of Idaho's privacy laws to the HOPWA program's monitoring requirements. *See generally* 45 CFR 160.202-04.

I appreciate your sincere efforts to support the dignity of the beneficiaries of public assistance through respect for the confidentiality of personal information. People with HIV/AIDS are still subject to abuse due to fears and misunderstanding. The essential adequacy of procedures to maintain confidentiality is a vital means to reduce discrimination against these citizens. Your diligence on this issue has helped to inform HUD of the importance of this matter.

Please accept my regrets on the delay in this response.

Sincerely,

David Vos
Director
Office of HIV/AIDS Housing

IHFA 0272

# EXHIBIT II

1.   The Association:  The Idaho Housing and Finance Association.

2.   Commissioner:  A member of the Board of Commissioners of the Association.

3.   Board Chairman:  The Chairman of the Board of Commissioners of the Association.

4.   Executive:  The President and Executive Director.

5.   Full-Time Employee:  An employee who regularly works 40 hours or more per week.

6.   HFA:  Housing Finance Agency.

7.   IHFA:  Idaho Housing and Finance Association.

8.   Immediate Family Member: Spouse, brothers, sisters, mother, father, children, grandparents, and corresponding "in-law" and "step" relations or persons enjoying a family-like status.

9.   Part-Time Employee:  An employee who regularly works fewer than 40 hours per week

10.  Project-Specific Employee:  An employee who works in a particular job for an interim period of time or for the duration of a project.  Project-Specific employees may not work for the Association in excess of 1,385 hours during a 12-month period unless they are reclassified to a full-time or part-time position.

## E. CONFIDENTIALITY

1.   <u>Policy</u>

No Association Commissioner, employee, agent, or former employee shall divulge or make known to any person, in any manner, information obtained directly or indirectly by them in the discharge of their duties, except as may be required by this section or by State or Federal law.

Such information includes but is not limited to, information involving the Association, its business transactions, customers, prospective customers, lenders, Realtors, builders, clients, Commissioners, internal proceedings, Association personnel, financial transactions and/or personal and financial information of Association personnel, sponsors, clients, applicants, and other institutions.

Questions regarding the potential confidentiality of information should always be directed to an employee's supervisor; or in the case of a Commissioner, to the Board Chairman, before the release of any information.

Any employee or Commissioner who receives a request to release confidential information will require that the request be submitted in writing.  Written requests should be immediately forwarded to the Executive Director for review and approval.  In the absence of the Executive Director, requests for information should be immediately forwarded to the Association's legal counsel for action.  Where a determination is made that confidential information may be released, it will be done only upon receipt of written permission of all parties where required, and with the written authorization from the Executive Director or Association's legal counsel.

## 2.   Personal Opinions

To further protect the Association, its Commissioners, and employees, the personal opinions of employees or Commissioners should not be represented as those of the Association.

   a.   Personal opinions regarding the Association should be clearly identified as personal opinions.

   b.   All official position statements of the Association shall only be released by the Executive Director.

## 3.   **Electronic Mail**

The Association has established a policy with regard to the use, access to and disclosure of electronic mail (e-mail) created, sent, or received by Association employees using the company e-mail system.

   a.   The e-mail system is company property.  Additionally, all messages composed, sent, or received on the e-mail system are the property of the Association. Remember that you are identifiable as an IHFA employee in everything you do on the web, because of the "ihfa.org' domain name you are using.  The Association reserves and intends to exercise the right to review, audit, intercept, access and disclose all messages created, sent or received over the e-mail system for any purpose.  Inappropriate use of browsers or IHFA's e-mail system may result in discipline up to and including immediate termination.

   b.   The e-mail system is not to be used to create any offensive or disruptive messages. These include, but are not limited to, messages that are considered offensive, contain sexual implications, racial slurs, gender-specific comments or any other comment that offensively addresses a person's age, sexual orientation, religious beliefs, political beliefs, national origin or disability.

   c.   The confidentiality of any message should not be assumed.  Even when a message is erased it may be possible to retrieve and read that message.  The use of passwords for security does not guarantee confidentiality.

   d.   Notwithstanding the Association's right to retrieve and read any e-mail message, such messages should be treated as confidential by other employees.  E-mail messages should only be accessed by the intended recipient.  Employees are not authorized to retrieve or read any e-mail messages that are not sent to or received by them.

   e.   The contents of e-mail properly obtained for legitimate business purposes may be disclosed for legitimate business purposes.

   f.   During working hours, Internet browsing is only to be used for business purposes relating to the employees job function.  Accessing non-business related websites and other misuse of the Internet is not permitted.

   g.   Any employee who discovers a violation of this policy should notify their Supervisor

IHFA 0617

or contact a Human Resources Representative.

h.  Use or transfer of unauthorized or unlicensed software is explicitly prohibited. You must observe all licensing restrictions on any downloaded software.

The company reserves the right to monitor e-mails, the amounts of usage, and websites accessed by their employees and any misconduct can result in disciplinary action, up to and including termination of employment.

## F. CONFLICT OF INTEREST

1.   Scope

In all circumstances where an employee's or Commissioner's official duties on behalf of the Association overlap any interests of that same employee or Commissioner, as a private citizen, or there exists the appearance of the same, the employee or Commissioner shall immediately report such circumstance to the Executive Director, or in the case of a Commissioner, the Board Chairman. The matter shall be deemed a conflict of interest, subject to review by the Executive Director or Board Chairman.

Pending review by the Executive Director or Board Chairman, the affected employee or Commissioner shall take no official action, discretionary or otherwise, in his/her capacity as an employee of the Association which may relate to the matter about which a conflict may exist. Examples of circumstances which create potential conflicts include, but are not limited to:

a.  matters effecting an economic interest of the Commissioner or employee or the Commissioner's or employee's family members,
b.   matters involving official acts which bear privately on the circumstances of the employee or Commissioner,
c.  trading or gaining advantage from an employee's or Commissioner's professional position for the purpose of benefiting the employee in his/her personal life or that of his/her family member.

2.   Conflict of Interest Restrictions

Employees and Commissioners must avoid all direct or indirect conflicts of interest, as well as the appearance of such conflicts, under the following restrictions. In the event an employee or Commissioner discovers inadvertent conflicts of interest or have questions regarding whether activities may be, or appear to be, conflicts of interest, they should submit the matter to their supervisor, or to the Board Chairman in the case of a Commissioner. In the case of an employee, the supervisor will notify the Executive Director and, with approval, may seek review by the Association's legal counsel. The Board Chairman may also seek review by the Association's legal counsel.

a.   I.C. Section 67-6221. The Association's employees and Commissioners are bound by the terms of the Association's enabling legislation which provides:

"67-6221. Conflict of Interest -- Any member, officer, or employee of the Association who is interested either directly or indirectly, or who is an officer or