IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| IDAHO AIDS FOUNDATION, INC. ) | | Case No. CV-04-155-S-BLW |
| ) | | |
| Plaintiff, ) | | **MEMORANDUM DECISION** |
| ) | | **AND ORDER** |
| v. ) | | |
| ) | | |
| IDAHO HOUSING & FINANCE ) | | |
| ASSOCIATION; GERALD ) | | |
| HUNTER, JULIE H. WILLIAMS, ) | | |
| AND EARL COOK, in their ) | | |
| individual capacities, ) | | |
| ) | | |
| Defendants. ) | | |
| _____) | | |

## INTRODUCTION

The court has before it summary judgment motions filed by plaintiff Idaho

AIDS Foundation ("IAF") and by defendants Idaho Housing and Finance

Association, Gerald M. Hunter, Julie H. Williams, and Earl Cook (collectively

"IHFA").  The Court also has before it a motion to strike portions of the affidavit

of Julie H. Williams filed by IAF.  The Court heard oral argument on October 21,

2005, and the motions are now at issue.  For the reasons stated below, the Court

will grant in part and deny in part the cross-motions for summary judgment, deny

the motion to strike, and order that the United States Department of Housing and

Urban Development be joined as a party defendant.

**Memorandum Decision and Order – Page 1**

## FACTUAL BACKGROUND

Plaintiff IAF is a non-profit organization that received funding under a federal program titled Housing Opportunities for Persons with AIDS ("HOPWA"). *Statement of Facts in Support of Plaintiff's Motion for Summary Judgment* ("*Plaintiff's SOF*"), ¶ 1.  With HOPWA funding, IAF provided medical and mental health services, assistance in housing, case management, and other supportive services to persons with AIDS.  *Id.*

Defendant IHFA is an independent public body created by Idaho Code §§ 67-6201 *et. seq.  Defendant's Statement of Material Facts in Support of Motion for Summary Judgment* ("*Defendant's SOF*"), ¶ 1.  IHFA receives and manages Idaho's HOPWA grants from HUD.  *Id.*

During October and November of 2000, IAF and IHFA entered into two contracts under which IHFA would provide HOPWA funding to IAF.  *Affidavit of Julie H. Williams* ("*Williams Affidavit*"), ¶ 4, Exhibits B & C.  These contracts were both renewed in a substantially similar form for a one year term in July of 2001.  *Id.* at ¶ 5, Exhibits D & E.  Under the contracts, IHFA would reimburse IAF for specified HOPWA expenditures.  *Id.*

In the summer of 2001, the parties began to argue over IHFA's power to audit IAF's programs.  They agreed that IHFA was entitled to conduct audits on

**Memorandum Decision and Order – Page 2**

IAF's programs. *Williams Affidavit*, ¶ 5; *Plaintiff's SOF*, ¶ 15.  However, the parties could not agree on the proper level of IHFA's access to HOPWA beneficiary records.  IHFA demanded full access to all beneficiary files to conduct random spot checks on eligibility.  *Williams Affidavit*, ¶ 6.  It argued that access to files, which included source medical records and beneficiaries' names, was necessary to evaluate whether IAF in fact engaged in activities for which it requested reimbursement.  *Id*; *Defendant's SOF*, ¶¶ 5-6.  On the other hand, IAF only wanted to provide access to files after sensitive information had been redacted.  *Plaintiff's SOF*, ¶¶ 24-28.  The files IHFA sought contained very sensitive information, including notes of doctors and psychiatrists on topics as private as sexual behavior. *Affidavit of Mark Welch* ("*Welch Affidavit*"), ¶ 10.  Some of these notes corresponded to services from providers other than IAF, *id.*, and were hence irrelevant to IHFA's audits.

In September of 2001, the parties almost came to an agreement.  IAF would supply entire files, but with names and other sensitive information redacted, for services provided before October 4, 2001.  *Plaintiff's SOF*, ¶ 27; *Defendant's SOF*, ¶ 7.  From that point forward, IAF would obtain a release from the HOPWA beneficiaries entitling IHFA and HUD to access unredacted files.  *See Williams Affidavit*, Exhibit M.  The release was a solution to the concern raised by IAF that

**Memorandum Decision and Order – Page 3**

unfettered access would be inappropriate without a release.  *Id.*  However, IAF

never obtained releases and continued to deny IHFA's access to the beneficiary files

for verification of services provided.  *Defendants' SOF*, ¶ 9; *Plaintiff's SOF*, ¶¶ 24-

28.

Since, IAF did not permit IHFA the unfettered access it desired, IHFA never

reimbursed IAF for several months of services provided.  *Williams Affidavit*, ¶ 28;

Plaintiff's SOP, ¶ 46.  The 2001 contracts were never renewed.  Williams *Affidavit*,

¶ 28.

IAF brought this suit alleging IHFA violated its patients' constitutional right

to privacy, the HOPWA statute, the Fair Housing Act, the Rehabilitation Act, the

due process clause, and state contract law.  Both parties have moved for summary

judgment on all claims.

## ANALYSIS

## 1.     The Motion to Strike

IAF has moved to strike several portions of Julie H. Williams' Affidavit.  Ms.

Williams is the Vice President of IHFA.  IAF initially objected to the admission of

correspondences that were not authored by Ms. Williams.[1]  However, IAF concedes

---

[1]     IAF initially moved to strike Exhibits F, H, I, J, L, M, Q, R, S, T, U, V, W, X, Z, BB, DD, EE, FF, and GG of the *Williams Affidavit* as documents not authored by Ms. Williams.

that Exhibits F, H, I, BB, X, and Z are admissible for their significance as verbal acts, even if not to prove the assertions they contain.  Fed. R. Evid. 801(c).  The same principle applies to exhibits J, L, Q, S, T, V, W, EE, and GG, which are all correspondences from representatives of IHFA, other than Ms. Williams, to representatives of IAF or HUD.  They are admissible to prove the content of communications regarding IHFA's access to the files, but not to prove the truth of the matters asserted therein.  IAF also concedes that Exhibits M, R, U, DD, and FF are admissible as statements of a party's representative under Fed. R. Evid. 801(d)(2).

IAF also argues that Ms. Williams' testimony about her personal interpretation of letters and documents which she did not author is inadmissible.[2] However, Ms. Williams testimony about her impression of the communications is relevant because IAF has accused IHFA of unlawful discrimination under the Fair Housing Act.  This requires analysis of the intent of IHFA personnel, including Ms. Williams.  Her statements regarding the documents are admissible to prove her intent under the Fair Housing Act.

**2.     Standing**

---

[2]     IAF moves to strike paragraphs 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 20, 21, 23, 24, 25, 26, and 27 of the *Williams Affidavit* on this ground.

IHFA argued in its brief that IAF lacks standing to bring some or all of its claims.  An organization has standing if it alleges a concrete and particularized injury that was caused by an alleged violation of a law protecting the organization. *Smith v. Pacific Property and Development Corp.*, 358 F.3d 1097, 1104- 5 (9th Cir. 2004).  The Fair Housing Act, Rehabilitation Act, constitutional right to privacy, HOPWA statute, due process clause, and state contract law all arguably provide legal protections for organizations like IAF.  The injury of a loss of all HOPWA funding due to IHFA's alleged violation of these laws thus satisfies organizational standing for these claims.  Additionally, IAF's injury could be redressed by a compensatory damages award or injunctive relief.

However, with regard to the constitutional right to privacy and HOPWA claims, IAF does not argue a violation of the rights of the organization.  Rather, IAF alleges that IHFA violated the privacy rights of the HOPWA beneficiaries served by IAF.  Generally, prudential standing limitations prohibit plaintiffs from asserting the rights of a third party, even if the plaintiff otherwise satisfies the standing requirements.  *Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994).  Third party standing, or *jus tertii* standing, is permitted only if 1) the plaintiff has a concrete interest in the case, 2) the plaintiff has a close relationship with the third party, and 3) the third party is hindered in its ability to

**Memorandum Decision and Order – Page 6**

assert its rights.  *Id.* at 62.

IAF satisfies the third party standing test.  First, IAF clearly has an interest in the case since it lost all HOPWA funding.  Second, IAF's relationship with its HOPWA beneficiaries is close because IAF was willing to forfeit all HOPWA funding to protect their privacy.  Finally, the Court infers that the HOPWA beneficiaries are hindered in their ability to assert their privacy rights because they want to keep their HIV status private.

Therefore, IAF does have standing to bring each of its claims.

## 3.    Standard of Review

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.* at 248.

**Memorandum Decision and Order – Page 7**

**4.      The Constitutional Right to Privacy Claim**

Both parties have moved for summary judgment on IAF's claim that IHFA violated the HOPWA beneficiaries' constitutionally protected right to informational privacy.  The United States Constitution protects against disclosure of confidential medical information.  *See Doe v. Attorney General of the United States*, 941 F.2d 780, 796 (9th Cir. 1991) (HIV status is protected information). This conditional right to informational privacy must be balanced against any legitimate government interest in obtaining the information.  *In Re Crawford*, 194 F.3d 954, 959 (9th Cir. 1999).  The following factors must be balanced:

> (1) the type of information requested, (2) the potential for harm in any subsequent non-consensual disclosure, (3) the adequacy of safeguards to prevent unauthorized disclosure, (4) the degree of need for access, and (5) whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

*Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 551 (9th Cir. 2004).  In the context of medical information, "[r]equiring such disclosures to representatives of the State having responsibility for the health of the community, does not automatically amount to an impermissible invasion of privacy."  *Whalen v. Roe*, 429 U.S. 589, 602 (1977).  The *Whalen* court upheld a New York law that permitted the state to maintain information on all persons who had been prescribed a medication that had

**Memorandum Decision and Order – Page 8**

an illegal use.  *Id.* at 602-4.

However, even the power of public health agencies is not unbounded.  In *Tucson*, an Arizona statute permitted state regulators to scrutinize the operations of abortion clinics to prevent patient deaths.  379 F.3d at 536-37.  The legislation had been passed in response to a highly publicized death at an abortion clinic.  *Id.*  Among their provisions, the statute's regulations required abortion clinics to "submit, upon request made by DHS [, a state agency,] in its absolute discretion, unredacted patient files containing name, address, and other patient identifying information."  *Id.* at 538.  The government argued it "could only review and copy patient records as part of sampling them during a licensing survey or as part of a complaint investigation[.]"  *Id.* at 552.

However, the Ninth Circuit found that these limits to access were inadequate. *Id.*  Additionally, the statute did not provide for any criminal or civil penalties for disclosures of information to parties outside of the state agency.  *Id.*  The state also provided little evidence that any confidentiality training of employees ever occurred.  *Id.*  The *Tucson* court indicated:

> Even if a law adequately protects against *public* disclosure of a patient's private information, it may still violate informational privacy rights if an unbounded, large number of government employees have access to the information.  If information that a woman has had an abortion is made available to all DHS employees, the fact

> that they are government employees is no solace to the
> numerous neighbors, relatives, and friends of DHS
> employees, as well as to the employees themselves.

*Id.* at 551-52.   The Ninth Circuit based its holding on the availability of less

intrusive means of achieving the same government objectives:

> Defendants assert that they need access to patient
> identifying information because they need to ensure that
> providers are complying with the scheme's requirement
> that they document such information, but ensuring
> compliance with this administrative requirement is
> tenuously related to health interests, and DHS could
> ensure such compliance simply by checking whether the
> required fields are present in a patient's chart, even if the
> content of those fields were marked out. Other monitoring
> goals could easily be satisfied using a coding system to
> track records without the release of patient identifying
> information. . . . [W]hile the public interest involved--
> promoting health and safety--is of course a strong one, we
> fail to see how insisting on unredacted materials promotes
> this need.  We therefore hold that the regulation giving
> DHS unbounded access to unredacted patient records
> violates the informational privacy rights of patients.

*Id.* at 552-53.  With this precedent in mind, the Court must balance the HOPWA

beneficiaries' rights to keep their HIV status and sexual history private against the

government's interest in verifying eligibility for HOPWA benefits.

IHFA's intrusions are strikingly similar to those of the defendants in *Tucson*.

IHFA demanded completely unfettered access to any items in the files, including

names of HOPWA beneficiaries.  *See Defendant's SOF*, ¶¶ 5- 8.  As in *Tucson*,

unrestricted access to files provides IHFA with information in excess of that necessary to conduct an audit.  Additionally, IHFA has not directed the Court, nor has the Court's search uncovered, any evidence in the record of an official policy limiting the number of IHFA personnel who have access to protected information. Moreover, IHFA's policy of unfettered access fails to provide meaningful sanctions for employees who are reckless with protected information.  The evidence IHFA provided demonstrates a very weak internal confidentiality code with no sanctions for employees who violate it.  *See Williams Affidavit*, Exhibit II.  Likewise, the HUD regulation that IHFA relies upon, 24 C.F.R. § 574.440, provides no specific confidentiality requirements or sanctions.

Similar to *Tucson*, the government has a legitimate interest in access to IAF's files.  However, it is difficult to say that the interest of IHFA and HUD in conducting audits is any greater than the government interest in *Tucson* of preventing deaths of abortion patients.  Additionally, IHFA's completely unrestricted access to the files is no more necessary to achieve its legitimate government objectives than the completely unrestricted access demanded in *Tucson*.

It is true that *Tucson* was a challenge to a state regulation, while this is a challenge to certain practices of IHFA which have been mandated by HUD.  It may appear, at first blush, that the issue in this case is more fact-driven and less

**Memorandum Decision and Order – Page 11**

amenable to resolution through summary judgment.  However, there appears to be

no genuine issue as to any material fact, since the record is clear that the practices

and policies adopted and implemented by IHFA closely parallel the regulatory

requirements at issue in *Tucson.*

Therefore, regardless of whether HUD demanded it or not, IHFA's policy

simply cannot permit an unbounded number of IHFA employees to have completely

unrestricted access to unredacted client files.  The holding in *Tucson* requires IHFA

to adopt a policy that limits disclosure of unnecessary, private information and

ensures its employees' compliance with the threat of serious sanctions.

Because IHFA has no such policy, the Court must find under *Tucson* that

IHFA has violated the privacy rights of IFA members.  The matter of a remedy was

not discussed in the briefing or argument, and thus the Court refuses to issue any

ruling on a remedy at this time.  Accordingly, IFA's motion for summary judgment

on the privacy right claim will be granted only as to liability at this time, and denied

as to a remedy.

### 5.     The Housing Opportunities for Persons with AIDS Claim

Both parties have moved for summary judgment on IAF's claim that IHFA

violated the HOPWA statute, 42 U.S.C. §§ 12901 *et. seq* (2005), and its

implementing regulations.  The HOPWA statute was passed by Congress to provide

**Memorandum Decision and Order – Page 12**

housing assistance to persons with the HIV virus and their families.  *Id.* at § 12901.

IAF correctly notes that the HOPWA statute contains a confidentiality provision,

which requires "recipients" of funds to agree to "confidentiality" of beneficiary

information.  *Id.* at § 12905(e).  "Recipient" is defined as "a grantee or other

applicant receiving funds under this chapter."  *Id.* at 12902(7).  Thus, both IAF and

IHFA are recipients.  IAF attempts to enforce this confidentiality provision through

an claim brought under 42 U.S.C. § 1983.

However, simply requiring the recipients to agree to confidentiality does not

necessarily grant a private right of action to enforce the agreement under 42 U.S.C.

§ 1983.  Three requirements must be present for a statute to create a private right

enforceable in a § 1983 action.  *ASW v. Oregon*, 424 F.3d 970, 975, 975 n.7 (9th Cir.

2005) (citing *Blessing v. Freestone*, 520 U.S. 329, 341 (1997); *Gonzaga University

v. Doe*, 536 U.S. 273, 283-84, 284 n.3 (2002)).  First, Congress must have intended

for the statute to benefit the plaintiff with specific rights-creating language.  *Id.*

Second, that right must not be too vague to be judicially enforceable.  *Id.*  Third, the

statute must create an unambiguous and binding obligation on the state.  *Id.*

Additionally, a private right must be created in the statute itself.  *Save Our Valley v.

Sound Transit*, 335 F.3d 932, 939-40 (9th Cir. 2003).  The statute's implementing

regulations can only serve to define the scope of the right once it is created.  *Id.*

IHFA argues *Gonzaga* is analogous.  536 U.S. 273.  In *Gonzaga*, the plaintiff argued that the Family Educational Rights and Privacy Act of 1974, 20 U.S.C. § 1232g, created a private right enforceable by 42 U.S.C. § 1983.  536 U.S. at 276-79. The relevant statutory provision states:

> No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein. . .) of students without the written consent of their parents to any individual, agency, or organization.

*Id.* at 278-79 (quoting 20 U.S.C. § 1232g(b)(1)).  The Supreme Court held that this provision and another almost identical provision created no private rights that students could enforce.  *Id.* at 288-90.  The Supreme Court reasoned that the provisions contain "no rights-creating language, they have an aggregate, not individual, focus, and they serve primarily to direct the Secretary of Education's distribution of public funds to educational institutions."  *Id.* at 290.

IAF relies on *Price v. City of Stockton,* 390 F.3d 1105 (9th Cir. 2004).  In *Price*, the Ninth Circuit analyzed whether certain sections of the Housing and Community Development Act, 42 U.S.C. §§ 5304(d) & (k), create a private right of action. *Id.* at 1110-11.  Section 5304(k) states, "'[E]ach grantee shall provide for reasonable benefits to any person involuntarily and permanently displaced as a

result of the use of assistance received under this chapter to acquire or substantially rehabilitate property.'"  *Id.* at 1111 (quoting 42 U.S.C. § 5304(k)).  Section 5304(d) further defines the reasonable benefits.  *Id.* at 1114.  In analyzing the three requirements, the Ninth Circuit found that the statute "unambiguously establishes" a right to reasonable benefits, the right is well defined, and the terms are mandatory. *Id.*  Thus, the statute created a private right.  *Id.*

Unlike the statute in *Price*, 42 U.S.C. § 12905(e)  does not create a private right of action.  That section states, "The recipient *shall agree* to ensure the confidentiality of the name of any individual assisted with amounts from a grant under this chapter and any other information regarding individuals receiving such assistance."  42 U.S.C. § 12905(e) (emphasis added).  This language does not require IHFA to "provide" confidentiality to individuals as in *Price.*  390 F.3d at 1111.  The only mandatory obligation in § 12905(e) is for "recipients," which includes IAF and IHFA, to "agree" to confidentiality.

Thus, the three requirements for a private right enforceable with 42 U.S.C. § 1983 are not met.  First, the provision does not unambiguously create rights for HOPWA beneficiaries.  Second, the vague reference to "confidentiality" is not further defined as a specific right.  Presumably, "confidentiality" refers to the same level of protection afforded by the constitutional right to privacy because no

indication is given of any heightened right.  However, the statute does not define

this right.  Third, and most importantly, the only binding obligation on the state is to

"agree" to confidentiality.  The provision simply imposes a general policy of

confidentiality upon "recipients," including both state agencies and non-profit

organizations, that disburse HOPWA funds.  It does not create a right to

confidentiality for HOPWA beneficiaries that can be enforced with 42 U.S.C. §

1983.

The Court will grant IHFA's motions for summary judgment on the HOPWA

claim and deny IAF's motion because § 12905(e) does not create a private right of

action.

**6.     The Fair Housing Act Claims**

Both parties move for summary judgment on IAF's claim brought under the

Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et. seq.* (2005).  IAF brings disparate

treatment and disparate impact claims under § 3604(f)(1) and § 3604(f)(2) and a

retaliation claim under § 3617.  IHFA does not dispute that the HIV positive

HOPWA beneficiaries are a protected class of persons with a "handicap" under the

FHA.  *See* 42 U.S.C. § 3602(h).  Nor does IHFA dispute that it is bound by the

provisions of the FHA.  However, IHFA argues that the record does not support the

discriminatory treatment, discriminatory impact, or retaliation claims.

**Memorandum Decision and Order – Page 16**

IHFA's motion for summary judgment on the discriminatory treatment claim must be analyzed under the *McDonnell Douglas* burden shifting analysis. *Gamble v. City of Escondido*, 104 F.3d 300, 304-6 (9th Cir. 1997) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)). First, the plaintiff must prove a *prima facie* case of the defendant's discriminatory treatment. *Gamble*, 104 F.3d at 304-5. If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. *Id.* Finally, if the defendant satisfies its burden, the plaintiff then bears the ultimate burden of proving by a preponderance of the evidence that the proffered reason is a pretext for a discriminatory motive. *Id.*

IAF's discriminatory treatment claim fails. Assuming, without deciding, that IAF has established a prima facie case, it is clear that its case fails under subsequent steps in the *McDonnell Douglas* analysis. The reason IHFA puts forth for its policies – compliance with the orders of HUD – are clearly legitimate and nondiscriminatory. Thus, the burden shifted to IAF to present some evidence that this stated reason is a mere pretext for discrimination. This, IAF has failed to do. Therefore, summary judgment is appropriate on this claim. This conclusion is consistent with the bedrock principle that proof of discriminatory motive or intent is required in discriminatory treatment cases. *Gamble*, 104 F.3d at 305-6. IAF has

failed to provide the Court with any evidence of discriminatory intent on the part of IHFA. Rather, the record tends to indicate that IHFA merely intended to comply with the orders of HUD. *See e.g. Williams Affidavit*, ¶¶ 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 20, 21, 23, 24, 25, 26, and 27. Additionally, IAF's argument that intent is legally inferred when a defendant violates a FHA regulation is not supported by the only case IAF cites. *See Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1422-24 (11th Cir. 1982) (a showing of substantial likelihood of success on the merits on FHA claim was sufficient to support a preliminary injunction without additional showing or irreparable injury).

IAF also brings a discriminatory impact claim. A prima facie discriminatory impact case is established with evidence of "1) the occurrence of certain outwardly neutral practices, and 2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." *Gamble*, 104 F.3d at 306 (quoting *Pfaff v. United States Dep't. of Hous. and Urban Dev.*, 88 F.3d 739, 745 (9th Cir. 1996)). Proof of discriminatory intent is not required for a discriminatory impact claim. *Id.*

Here, IHFA's practice of requiring access to applicable records in order to audit the housing programs it funds is an outwardly neutral practice. Next, IHFA's practice has a disproportionate impact on HOPWA beneficiaries, who are all

**Memorandum Decision and Order – Page 18**

members of the same protected class.  IHFA provides housing benefits for many

different groups of people.  However, only HOPWA beneficiaries must provide

access to their entire medical records to receive housing benefits from IHFA.

Additionally, IHFA's demands for access ultimately resulted in termination of

benefits under IAF's program altogether, which presumably has resulted in a

significantly adverse or disproportionate affect on IAF's clientele.  Only HOPWA

beneficiaries, who are all members of the same protected class, were impacted by

the resulting unavailability of benefits.

　　　　IHFA counters that IAF has not provided statistical evidence or other

evidentiary proof of a discriminatory impact.  Such evidence is often required.  *See*

*Gamble*, 104 F.3d at 306.  However, *Gamble* is distinguishable because it analyzed

a situation where a city's practice of issuing permits to the general public was

alleged to have a discriminatory impact on a particular protected class.  *Id.* at 306-7.

Statistical evidence was necessary to show a disproportionate impact to the

protected class because the questioned practice, issuing permits, was directed at the

general public.  Here, IHFA only required unconstitutional access to medical

records for the protected class, and ultimately canceled benefits to the protected

class for its failure to provide such access.  As such, IAF has at least raised an issue

of fact that there was a significantly adverse or disproportionate impact on the

protected class.  Accordingly, IHFA's motion for summary judgment must be denied.

On the other hand, there is insufficient evidence of the extent of the adverse impact to permit the Court to conclude that IAF is entitled to summary judgment. Specifically, the Court is concerned with the extent to which the cancellation of IAF's contract has impacted its clientele.  That is an issue which will need to be resolved at trial.

IAF also brings an FHA retaliation claim under § 3617.  Summary judgment motions on such claims are again resolved through application of the McDonnell-Douglas burden-shifting analysis.  *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001). Section 3617 makes it unlawful to "coerce, intimidate, threaten, or interfere with any person. . . on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section. . . 3604. . . ."  42 U.S.C. § 3617.  To establish a *prima facie* case under § 3617, the plaintiff must prove that "(1) he engaged in a protected activity; (2) the defendant subjected him to an adverse action; and (3) a causal link exists between the protected activity and the adverse action."  *Walker*, 272 F.3d at 1128.

The record contains evidence indicating that IAF engaged in a protected

activity.  In *Walker*, the Ninth Circuit found that the plaintiff engaged in a protected activity by "'aid[ing] or encourag[ing]'" residents of an apartment complex in their pursuit of FHA litigation.  *Id.*  (quoting 42 U.S.C. § 3617).  Here, IAF "aided or encouraged" the HOPWA beneficiaries by protecting against IHFA's unconstitutional intrusions into their medical records.  42 U.S.C. § 3617.  IAF reasonably believed that requiring such access as a precondition for housing benefits was a violation of HOPWA beneficiaries' rights under the FHA.  There is at least an issue of fact as to whether IAF was engaged in a protected activity when it refused unfettered access.

Additionally, IHFA subjected IAF to an adverse action.  Under § 3617, "that adverse action must be in the form of either 'coerc[ion], intimidat[ion], threat[s], or interfere[nce].'" *Walker*, 272 F.3d at 1128 (quoting 42 U.S.C. § 3617).  The *Walker* court found that a city's failure to renew a fair housing advocacy group's contract constituted "interference."  *Id.* at 1129-30.  IHFA admits to indefinitely withholding funds due to IAF under the 2001 contracts.  IHFA also admits to warning IAF it would do so, which could be construed as a "threat."  IHFA's actions were "adverse actions" under § 3617.

Finally, IAF has established the existence of a disputed issue of fact as to whether there was a causal link between its protected activity and IHFA's adverse

**Memorandum Decision and Order – Page 21**

action.  The record contains correspondence from IHFA to IAF indicating that funds would be withheld until unfettered access was permitted.  *See e.g. Williams' Affidavit*, Exhibits K & O.  IHFA does not dispute this fact in its briefing.

In response to IAF's *prima facie* case, IHFA argues that the unfettered access was required to conduct audits, and HUD ordered it.  IHFA argues that the HOPWA program is different from its other housing programs because only the HOPWA program provides counseling, medical, and dental services.  Thus, access to medical records for audits is legitimate and nondiscriminatory according to IHFA.

IHFA's burden under *McDonnell-Douglas* is to come forward with a *legitimate*, nondiscriminatory reason for its action.   The Court has considered the argument that, given the Court's determination that the completely unfettered access IHFA demanded was unconstitutional, the proffered reason is clearly illegitimate.  Such an argument has a facial appeal.  However, it is critical to keep in mind that *McDonnell-Douglas* is simply a tool which assists us in resolving the ultimate question of whether IHFA's actions were retaliatory.   Even if HUD's directions to IHFA violated the constitutional rights of IAF's clientele, this would not tend to make it more or less likely that IHFA was retaliating against IAF when it followed those directions and terminated IAF's contract.  In this context, the stated reason for its actions, although illegitimate under the constitutional standard, may

**Memorandum Decision and Order – Page 22**

still be relied upon by IHFA in satisfying its obligations under *McDonnell-Douglas*. Thus, the Court concludes that IHFA's proffered reason of simply following HUD's directions is a legitimate, non-discriminatory reason which satisfies the second prong of *McDonnell-Douglas*.

The burden then shifts to IAF to produce "specific, substantial evidence of pretext." *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003) (quoting *Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 270 (9th Cir. 1996)). The Court has been unable to find anything in the record which even suggests that IHFA's stated reason for terminating the contract was pretextual or merely a guise for some other improper motive.  Certainly, IAF has not presented "specific, substantial evidence of pretext."  For that reason, summary judgment is appropriate on IAF's claim of retaliation under § 3617.

In sum, the Court finds with regard to IAF's FHA claims that IHFA is entitled to summary judgment on the discriminatory treatment and retaliation claims but not as to the discriminatory impact claim.  However, issues of fact do exist as to the discriminatory impact claim that prevent the Court from granting summary judgment to IAF.

## 7.    The Rehabilitation Act Claim

IAF and IHFA both move for summary judgment on IAF's Rehabilitation

Act claim.  29 U.S.C. § 794 (2005).  Neither party provided substantive briefing on
this issue.  IAF cited no Rehabilitation Act cases.  IHFA cited only one
Rehabilitation Act case. *Burns v. City of Columbus*, 91 F.3d 836 (6th Cir. 1996).
However, IHFA provided no explanation for why that case entitles IHFA to
summary judgment.  Indeed, *Burns* merely highlights the fact that Rehabilitation
Act claims can present different issues than the FHA issues raised in this case, even
though the Rehabilitation Act and FHA use a similar burden shifting analysis.  *Id.* at
840-42.  Therefore, the Court has not been adequately informed of the parties'
positions on the Rehabilitation Act claim.  Without the benefit of briefing, the Court
denies IAF's and IHFA's motions for summary judgment on the Rehabilitation Act
claim.


**8.      The Breach of Contract Claim**

        Both parties have moved for summary judgment on IAF's claim that IHFA
breached the 2001 contracts.  Those contracts established that IHFA would
reimburse IAF for HOPWA services and conduct audits of IAF's programs.
*Williams Affidavit*, ¶ 5, Exhibits D & E.  The first contract provided reimbursement
in specific amounts for dental and psychiatric services.  *Id.* at Exhibit D, p. 3, ¶ 21.
The second contract provided reimbursement in specific amounts for case

management and transportation, homeless prevention, resource identification, and housing information services.  *Id.* at Exhibit E, p. 3, ¶ 21.  Otherwise, the terms and conditions of the contracts are identical.

IHFA argues that the contracts required IAF to "make available to HUD or IHFA *any requested information* needed to conduct program audits."  *Id.*, p. 3, ¶ 15 (emphasis added).  IHFA further argues that this section of the contracts impliedly incorporates the HUD regulations pertaining to program audits, particularly 24 C.F.R. § 84.53(e). That section permits HUD, the Inspector General, Comptroller General, or any of their authorized representatives to "have the right of timely and unrestricted access to any books, documents, papers, or other records of recipients that are pertinent to the awards, in order to make audits, examinations, excerpts, transcripts and copies of such documents."  24 C.F.R. § 84.53(e).

Additionally, IHFA argues that the contract permits IHFA to withhold funds or terminate the contract "when it is known that the terms of the grant are not followed."  *Williams Affidavit*, Exhibits E, p. 2, ¶ 10.  IHFA cites IAF's refusal of unfettered access, which is envisioned by the contracts and 24 C.F.R. § 84.53(e), as the sole reason for withholding reimbursement funds under the contracts.

On the other hand, IAF argues that the contracts explicitly restricted IHFA's access to "information categorized as confidential by law."  *See Williams Affidavit*,

Exhibits E, p. 3, ¶ 13.  Thus, IAF argues that IHFA breached the contracts by withholding reimbursement funds because IAF's refusal of unfettered access was consistent with the contracts.

Under Idaho law, contracts impliedly incorporate extant laws as well as policies of administrative agencies.  *Zattiero v. Homedale School Dist. No. 370*, 51 P.3d 382, 385 (Idaho 2002).  Thus, under Idaho law, the constitutional right to privacy, the Fair Housing Act, and the HOPWA statute and regulations are impliedly incorporated into the provisions of the contract that both parties rely upon.  Consequently, under the contract, if IAF denied access that was legally permitted, IHFA could withhold funds or terminate.  However, if IHFA demanded access that was illegal, IAF could refuse such access and still be within compliance of the contract's terms.

Since IHFA's policy of requiring completely unfettered access violated the HOPWA beneficiaries' constitutional and the Fair Housing Act rights, it exceeded IHFA's rights under the contract.  IHFA's reliance on 24 C.F.R. § 84.53(e) is misplaced.  Even if 24 C.F.R. § 84.53(e) applies to the HOPWA program and envisions the policy of unfettered access that IHFA adopted, complying with that regulation is not a valid reason to violate constitutional and statutory rights.  The constitutional and statutory rights obviously trump any rights to access created by

**Memorandum Decision and Order – Page 26**

regulations.  Thus, IHFA breached the contracts when it failed to reimburse IAF because it had no valid reason to deny reimbursement.[3]

Therefore, the Court will grant that part of IAF's motion for summary judgment seeking a ruling that IHFA breached its contract with IAF by failing to reimburse IAF.  The precise remedy for this breach was not discussed in any detail in the briefing and argument of counsel, and so the Court will not issue any ruling on a remedy for the breach at this time.

**9.    The Procedural Due Process Claim**

Both parties have moved for summary judgment on IAF's procedural due process claim.  IAF argues that IHFA violated the procedural due process clause of the Fourteenth Amendment by failing to give proper notice to IAF before depriving it of its constitutionally protected property interest in HOPWA funds owed to it under the contracts.  Additionally, IAF argues that a state law breach of contract claim alone does not satisfy its procedural due process rights because federal laws were violated.

IAF's argument is foreclosed by binding precedent.  In *Lujan v. G & G*

---

[3]    IAF also implies that the contracts provided it with a right to renewal. *See Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment*, p. 20.  The Court expresses no opinion on the issue of renewal at this time.  However, the question may arise in the context of determining monetary damages, which will require additional briefing.

**Memorandum Decision and Order – Page 27**

*Sprinklers, Inc.*, 532 U.S. 189 (2001), the Supreme Court denied an argument very analogous to IAF's:

> G & G has been deprived of payment that it contends it is owed under a contract, based on the State's determination that G & G failed to comply with the contract's terms. G & G has only a claim that it did comply with those terms and therefore that it is entitled to be paid in full. Though we assume for purposes of decision here that G & G has a property interest in its claim for payment. . . it is an interest. . . that can be fully protected by an ordinary breach-of-contract suit.

*Id.* at 196.

In *DeBoer v. Pennington*, 287 F.3d 748 (9th Cir. 2002), the Ninth Circuit denied a similar claim and further clarified the holding of *Lujan*. The Ninth Circuit explained, "[T]he common law breach of contract claim provides adequate process for the deprivation of a property right derived from a contract, unless the deprivation constitutes a denial of a present entitlement." *Id.* at 749. A "present entitlement" includes a right entitling one to presently possess real or personal property or to pursue gainful employment. *Id.* at 750. Ultimately, a breach of contract claim is sufficient to satisfy due process rights unless the contract has "given rise to a greater interest than the contract itself." *Id.*

In the present case, the 2001 contracts do not entitle IAF to property interests greater than the HOPWA funds awarded in the contracts themselves. IAF has not

**Memorandum Decision and Order – Page 28**

argued that violations of the right to privacy, the Fair Housing Act, or any administrative regulations entitle it to constitutionally protected property damages above those owed to it under the 2001 contracts.  Additionally, as discussed above, all extant federal and state laws are incorporated into the contracts.  *Zattiero v. Homedale School Dist. No. 370*, 51 P.3d 382, 385 (Idaho 2002).  As such, IHFA's violations of federal laws and regulations are also violations of the contracts.[4] Property damages ensuing from those violations are thus available in a breach of contract claim.  Consequently, IAF's property damages arising from IHFA's actions can be adequately redressed by the common law breach of contract claim.

Therefore, the Court grants IHFA's motion for summary judgment on the procedural due process claim, and denies IAF's motion.

## 10.    The Joinder of HUD

Throughout this litigation, the parties have debated the relevance and the facts surrounding IHFA's compliance with HUD's orders.  Early on in the litigation, IHFA moved to join HUD as a Rule 19(a) necessary party.  However, this

---

[4]      Thus, IAF's argument that it has a procedural due process claim because federal law preempts state law is misplaced.  Preemption does not apply here because Idaho's state contract law does not "conflict[] with or otherwise 'stand[] as an obstacle to the accomplishment or execution of the full purposes and objectives' of the federal law."  *Livada v. Bradshaw*, 512 U.S. 107, 120 (1994) (quoting *Brown v. Hotel Employees*, 468 U.S. 491, 501 (1984)).

Court rejected IHFA's motion for joinder, without prejudice on August 18, 2004 (Docket No. 15).  This Court found a lack of evidence in the record to establish HUD as a necessary party at that time.

At oral argument, the parties again disputed HUD's involvement.  IHFA asserted that HUD ordered IHFA to review source medical records starting in September of 2001.  It argues that HUD's demands were the determinative factor in its policy of requiring unfettered access.  If IHFA disobeyed HUD, it could lose Idaho's HOPWA grants.  However, IAF argued that HUD's orders have never been clear.  IHFA has not moved to join HUD again now that the record is better established.  However, in light of IHFA's continued insistence that it's actions were solely in response to HUD's orders, it is appropriate to revisit the issue of joinder

After reviewing the entire record, the Court finds that HUD indisputably demanded full access to the files by September of 2001 and has continued to do so ever since.  The deposition testimony of Earl Cook, IHFA's Grants Program Manager, indicates that HUD demanded IHFA conduct audits of unredacted files in September of 2001.  *Deposition of Earl Cook*, pp. 53, 60-61 (attached to *Welch Affidavit* as an unnumbered exhibit).  Indeed, Cook even testified that HUD froze some funding in late 2001 to force IHFA to comply with HUD's demands.  *Id.* Additionally, several communications between HUD and IHFA in the record

**Memorandum Decision and Order – Page 30**

establish that HUD officials demanded unfettered access, including access to the names of beneficiaries, beginning in September of 2001.  *See Williams Affidavit*, Exhibits F, G, H, I, L, X, Z, BB, and HH.

IAF does correctly note that some HUD officials expressed concern about IHFA's use of confidentiality releases as a prerequisite for receiving HOPWA benefits.  However, the expression of these concerns never rose to the level of recommending IHFA abandon the policy of requiring unfettered access.  *See e.g. Welch Affidavit*, Exhibit 11.  The record indisputably establishes that HUD required IHFA to audit IAF's program by randomly checking entire beneficiary files containing source medical records and beneficiaries' names.

In the Court's prior ruling on IHFA's motion to join HUD as a necessary party, IHFA's motion was denied solely because IHFA had not established that HUD did in fact order unfettered access.  Now, the record indisputably indicates that HUD did order unfettered access.  As the Court contemplated in its prior order, such a scenario makes HUD a necessary party under Fed. R. Civ. P. 19(a)(2)(ii). *Dawavendawa v. Salt River Project*, 276 F.3d 1150, 157-59 (9th Cir. 2002).  HUD has a legally protected interest such that the disposition of this action would leave IHFA at risk of incurring inconsistent obligations.  Without a binding judgment against HUD, IHFA will be forced to either comply with the Court's order or ignore

**Memorandum Decision and Order – Page 31**

HUD's orders.  IHFA would have to choose between being held in contempt of the Court's order or losing Idaho's HOPWA grants from HUD.

Therefore, the Court will reconsider its prior decision and order that HUD be joined.  The Court has the authority to join HUD *sua sponte* at any stage of the proceedings.  *McGowen v. Jamieson*, 724 F.2d 1421, 1424 (9th Cir. 1984) (*citing Provident Tradesmen Bank and Trust Co. v. Patterson*, 390 U.S. 102, 111 (1968)). In *McGowen*, the Ninth Circuit vacated an entry of summary judgment because a necessary party was not joined, even though no motions to join that party were pending at the time of the summary judgment proceedings.  *Id.* at 422-24.  Thus, the Court hereby orders that HUD be joined in this action as a party defendant pursuant to Fed. R. Civ. P. 19(a)(2)(ii).

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to strike (docket no. 33) is DENIED.

IT IS FURTHER ORDERED, that the motion for summary judgment (docket no. 25) filed by plaintiff IAF is GRANTED IN PART, AND DENIED IN PART.  It is granted as to liability only for the right to privacy and breach of contract claims. It is denied in all other respects.

**Memorandum Decision and Order – Page 32**

IT IS FURTHER ORDERED, that the motion for summary judgment (docket no. 24) filed by defendant IHFA is GRANTED IN PART, AND DENIED IN PART.  It is granted for the Housing Opportunities for Person's with AIDS claim, the FHA discriminatory treatment and retaliation claims, and the procedural due process claim.  It is denied in all other respects.

IT IS FURTHER ORDERED, that the Court shall reconsider its prior Order (docket no. 15) and shall grant the motion (docket no. 9) to join Alphonso Jackson in his capacity as the Secretary of the United States Department of Housing and Urban Development pursuant to Fed. R. Civ. P. 19(a)(2)(ii).

IT IS FURTHER ORDERED, that the Clerk of the Court shall work together with counsel for IHFA to provide proper notice of this decision to HUD.

IT IS FURTHER ORDERED, that once HUD is joined to this action, counsel shall contact the Court's Clerk, LaDonna Garcia, at 208-334-9021, to schedule a Status Conference for the purpose of discussing a trial setting and any other issues.

DATED:  **January 11, 2006**

B. LYNN WINMILL
Chief Judge
United States District Court

**Memorandum Decision and Order – Page 33**