John P. Relman, Pro Hac Vice
D. Scott Chang, Pro Hac Vice
Glenn Schlactus, Pro Hac Vice
RELMAN & ASSOCIATES PLLC
1225 19th Street, NW, Suite 600
Washington, DC  20036
Telephone:  (202) 728-1888
Facsimile:  (202) 728-0848
E-mail:  gschlactus@relmanlaw.com

Philip H. Gordon, ISBN 1996
GORDON LAW OFFICES
623 West Hays Street
Boise, ID  83702
Telephone:  (208) 345-7100
Facsimile:  (208) 345-0050

*Attorneys for Plaintiff Idaho AIDS Foundation, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

_____

IDAHO AIDS FOUNDATION, INC.,

         Plaintiff,

v.

IDAHO HOUSING & FINANCE
ASSOCIATION, *et al.*,

         Defendants.

_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. CV-04-155-S-BLW

PLAINTIFF'S RESPONSE TO
DEFENDANTS HUNTER,
WILLIAMS, AND COOK'S
MOTION FOR SUMMARY
JUDGMENT FILED ON
DECEMBER 28, 2006 (DOCKET
NUMBER 106)

**INTRODUCTION**

Plaintiff Idaho AIDS Foundation, Inc. ("IAF") respectfully submits that the summary

judgment motion filed by three of the four defendants – Gerald Hunter, Julie Williams, and Earl

Cook (the "Individual Defendants") – should be denied in its entirety.  The motion is both

procedurally and substantively defective, and improperly seeks reversal of previously rendered decisions in this case.

More than a year ago, the Court granted summary judgment in favor of IAF and against all Defendants on IAF's constitutional right to privacy and breach of contract claims. *See* Mem. Decision & Order (Jan. 11, 2006) ("Summary Judgment Order") at 12, 27. The Court simultaneously denied the parties' cross-motions for summary judgment on IAF's disparate impact claim under the Fair Housing Act and its Rehabilitation Act claim. *See id*. at 20, 24. The Court reaffirmed each of these decisions by denying the Individual Defendants' motion for reconsideration. *See* Mem. Decision & Order (July 11, 2006) ("Reconsideration Order"). The Individual Defendants now seek a third bite at the apple by asking the Court to reverse itself and hold that they are entitled to summary judgment on all four of these claims. Their motion should be denied for several reasons.

First, the motion is untimely. The Court established an August 6, 2005 deadline for dispositive motions during the first phase of the case. *See* Order (Aug. 8, 2005). The parties filed cross-motions for summary judgment at that time, and the Court ruled on them. *See* Summ. J. Order. The Court has not yet adopted a scheduling order for the remainder of the case, and the Individual Defendants have not moved to extend the 2005 deadline to 2007. Nor could they demonstrate the necessary good cause for doing so. Accordingly, it is not appropriate at this time for the Individual Defendants to file what they themselves term another summary judgment motion.

Second, the motion is not really a summary judgment motion. Rather, it is a second motion for reconsideration of the year-old Summary Judgment Order, and does not satisfy the high standard of review applicable to motions for reconsideration. The Individual Defendants

could have raised both of the arguments asserted here – that they have qualified immunity with respect to IAF's constitutional right to privacy, Fair Housing Act, and Rehabilitation Act claims, and that they are not liable for breach of contract because they were not parties to the contract in question – in support of their August 5, 2005 summary judgment motion or in opposition to IAF's August 6, 2005 summary judgment motion.  These arguments were readily available at that time, as revealed by the Individual Defendants' reliance on the Statement of Material Facts they submitted on August 5, 2005, and their failure to cite any change in the law since August 2005.  Accordingly, the Individual Defendants do not satisfy any of the conditions that the Court has already held must be satisfied by a motion to reconsider:  newly discovery evidence, clear error or manifest injustice, or an intervening change in controlling law.  *See* Recons. Order at 8 (citing *School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)).[1]

Third, even if the Court reaches the merits of the qualified immunity argument, that argument fails because the law regarding Plaintiff's rights was clearly established at the time of the Individual Defendants' actions.  The Individual Defendants make no effort to explain why such was not the case with respect to the two statutory claims, and dramatically overstate the significance of a case that the Court relied on in granting summary judgment to IAF on its constitutional claim, *Tucson Woman's Clinic v. Eden*, 379 F.3d 531 (9th Cir. 2004).  That case merely applied preexisting law establishing the right to privacy and defining its applicability. The preexisting law made clear that the Individual Defendants were constitutionally barred from demanding the sensitive and personal information they insisted IAF turn over.

---

[1]     As the Individual Defendants do not rely on any new facts, Plaintiff likewise refers the Court to its 2005 Statement of Facts (Docket No. 26-2) and the 2005 Affidavits of Mark Welch (Docket Nos. 26-3 & 27-1 to 27-5) in lieu of submitting a new statement and affidavit.

Fourth, Plaintiff seeks declaratory and injunctive relief as well as damages, and "[q]ualified immunity does not apply to suits for declaratory or injunctive relief." *Frederick v. Morse*, 439 F.3d 1114, 1123 n.46 (9th Cir. 2006).

## FACTUAL BACKGROUND

IAF entered into two one-year contracts with the Idaho Housing and Finance Association ("IHFA") in 2000 to provide or arrange dental, psychiatric, case management, transportation, housing, and related services to people with AIDS or HIV and their families. *See* Summ. J. Order at 2; Order Den. Mot. to Join Alphonso Jackson, Sec'y of HUD (Aug. 18, 2004) at 1-2. The contracts were funded by a grant under the Housing Opportunities For People With AIDS Act, 42 U.S.C. § 12901, *et seq.* ("HOPWA"). Both contracts were renewed in 2001. *See* Summ. J. Order at 2.

IHFA personnel subsequently insisted that it required unfettered access to IAF's complete, unredacted files to assure that only eligible people receive services. *See id.* at 3. The files include private medical and sexual information. *See id.* In numerous communications, IAF explained to IHFA employees that HOPWA and its implementing regulations did not afford IHFA the right to unfettered access, and that IAF could not lawfully provide such access. *See, e.g.*, Letter from J. Janis (counsel to IAF) to R. Kyte (counsel to IHFA) dated Nov. 8, 2001 (attached as Ex. R to Aff. of J. Williams submitted Aug. 5, 2005, in support of Defs.' Mot. For Summ. J.).

The IHFA employees refused to accept more limited access to the files and did not renew the contracts. *See* Summ. J. Order at 4. They also refused to reimburse IAF for amounts expended to provide program services. *See id.*

4

## PROCEDURAL HISTORY

IAF filed this action on March 26, 2004, against IHFA and the Individual Defendants. IAF asserted six causes of action, each based on Defendants' attempt to conduct overly broad inspections of IAF's files concerning the use of funds received by IAF under HOPWA.  Four of those causes of action are relevant here:  (1) violation of the right to informational privacy secured by the Fifth and Fourteenth Amendments to the United States Constitution, (2) breach of the contracts under which IAF received HOPWA grant funds, (3) violation of the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, and its implementing regulations, 24 C.F.R. Part 100, *et seq.*, and (4) violation of the Rehabilitation Act, 29 U.S.C. § 794.  *See* Complaint (Mar. 26, 2004).

## I.     THE DEADLINE FOR DISPOSITIVE MOTIONS IN THE FIRST PHASE OF THE CASE WAS AUGUST 6, 2005

The parties stipulated to placing the case on the Legal Track and to a May 13, 2005 deadline for filing dispositive motions.  *See* Litigation Plan (Aug. 18, 2004) at 1.  This deadline was adopted in the Case Management Order and extended three times.  *See* Case Management Order & Referral to Magistrate Judge (Aug. 23, 2004) ("CMO") at 1; Order to Modify Scheduling Order (May 17, 2005); Order (July 25, 2005); Order (Aug. 8, 2005).  The final deadline was August 6, 2005.  *See* Order (Aug. 8, 2005).  The CMO describes this deadline as "the critical event for case management."  CMO at 2.

Neither the Litigation Plan, the parties' motions to extend the deadline, nor the Court's Orders concerning dispositive motions suggest that a party may reserve until some time of their choosing after the dispositive motion deadline any issues that are appropriate for summary judgment in phase one of the case.  To the contrary, the CMO states that all issues should be included in a single motion:

> It is this Court's policy to accept only one (1) dispositive motion per party.  If it appears necessary, due to the complexity or numerosity of issues presented, that counsel is unable to address all issues within the twenty-page (20) limit for briefs, Dist. Idaho Loc. R. 7.1(b)(1), then it is appropriate to file a motion for permission to file an over-length brief, rather than filing separate dispositive motions for each issue.  The Court prefers reviewing one over-length brief in support, one over-length brief in response, and one 10-page reply brief, if any, rather than the panoply of briefs that are generated when more than one dispositive motion is filed.

CMO at 1-2 n.1.  The Court recently confirmed that, except for the referral of non-dispositive motions to Magistrate Judge Williams, "[t]he rest of the Case Management Order remains in tact."  Docket Entry Order (Dec. 21, 2006).

## II.     THE INDIVIDUAL DEFENDANTS' SUMMARY JUDGMENT ARGUMENTS IN 2005

Consistent with the Court's deadline for dispositive motions, all parties filed summary judgment motions in August 2005.  IHFA and the Individual Defendants jointly filed a motion for summary judgment on every claim asserted by IAF.  *See* Defs.' Mem. in Supp. of Mot. for Summ. J. (Aug. 5, 2005) at 2 ("Defendants are entitled to summary judgment and a dismissal of all of Plaintiff's claims").  IAF also sought summary judgment on each of its claims.  *See* Summ. J. Order at 8, 12, 16, 23-24, 24, 27.  The Individual Defendants did not raise the legal arguments they raise here, even though the arguments would have been directly relevant to the claims at issue.

*Constitutional Privacy Claim.*  The Individual Defendants contended that they were entitled to summary judgment on IAF's constitutional right to privacy claim, and that IAF was not, because the government had a legitimate interest in disclosure that outweighed any privacy interest.  *See* Defs.' Mem. in Supp. of Mot. for Summ. J. (Aug. 5, 2005) at 14-15; Defs.' Mem. in Opp. to Pl.'s Mot. for Summ. J. (Sept. 13, 2005) at 3-4.

*Contract Claim*.  With respect to the breach of contract claim, the Individual Defendants claimed that (1) the contracts were not breached, but instead expired, (2) the federal Department of Housing and Urban Development ("HUD") told them to withhold payments from IAF, (3) IAF materially breached the contract, and (4) IAF was notified of the consequences of nondisclosure.  *See* Defs.' Mem. in Supp. of Mot. for Summ. J. (Aug. 5, 2005) at 17-20; Defs.' Mem. in Opp. to Pl.'s Mot. for Summ. J. (Sept. 13, 2005) at 4-8.  Defendants claimed a relevant legal distinction between the Individual Defendants and IHFA by asserting that certain deposition questions about the contract claim should have been directed to IHFA's Rule 30(b)(6) witness instead of Individual Defendant Williams.  *See* Mem. in Opp. to Pl.'s Mot. for Summ. J. (Sept. 13, 2005) at 7-8 n.1.  They did not argue, however, that this distinction means that the Individual Defendants are not subject to liability for breach of contract.

*Statutory Claims*.  With respect to both the Fair Housing Act and Rehabilitation Act claims, the Individual Defendants argued that (1) IAF could not establish a *prima facie* case of discrimination against persons with disabilities, (2) they were following obligations imposed by federal regulations and HUD, (3) the government had a legitimate interest in disclosure, and (4) they acted to help, not retaliate against, IAF.  *See* Defs.' Mem. in Supp. of Mot. for Summ. J. (Aug. 5, 2005) at 5-10; Defs.' Mem. in Opp. to Pl.'s Mot. for Summ. J. (Sept. 13, 2005) at 9-11.

## III.   THE COURT'S RULINGS ON SUMMARY JUDGMENT AND RECONSIDERATION

The Court granted summary judgment to IAF on its constitutional right to privacy and contractual claims, reserving only the question of remedy.  *See* Summ. J. Order at 8-12 (constitutional claim); *id.* at 24-27 (contractual claim).  The Individual Defendants admit that these claims have already been resolved against them.  *See* Mem. in Supp. of Individual Defs.' Mot. for Summ. J. (Dec. 28, 2006) ("Indiv. Defs.' Summ. J. Br.") at 2, 4.  The Court denied the

summary judgment motions on the disparate impact element of the Fair Housing Act claim and the Rehabilitation Act claim, leaving those claims to be resolved in the next phase of the case.[2] *See* Summ. J. Order at 18-20 (Fair Housing Act claim); *id.* at 23-24 (Rehabilitation Act claim).

The Individual Defendants, again in conjunction with IHFA, moved for reconsideration of the Court's decision with respect to each of these four causes of action.  *See* Defs.' Mot. for Recons (Feb. 22, 2006).  The Court denied their motion because they did not "satisf[y] any of the grounds for reconsideration stated by the Ninth Circuit," Recons. Order at 9, *i.e.*, newly discovered evidence, clear error or manifest injustice, or intervening change in controlling law, *see id.* at 8.

Since the Court denied the motions for reconsideration, the only substantive issue in the litigation has been the question of whether HUD is to become a party.  That question has not been resolved; Plaintiff's motion to add HUD as a party is pending.  No scheduling order for the remainder of the case has been proposed by any party or issued by the Court, and the second discovery period contemplated by the CMO has not commenced.

## STANDARD OF REVIEW

The Individual Defendants contend that the Court should simply apply the familiar summary judgment standard of review to their motion.  *See* Indiv. Defs.' Summ. J. Br. at 5-6.  But the Court must first apply the more exacting standards that pertain to a motion for reconsideration.  Defendants assert that their motion is one for summary judgment, but in fact it is their second motion for reconsideration of the Court's year-old Summary Judgment Order.  This is apparent from the relief sought.  The motion asks the Court to reverse its decision as to each of four issues that the Court already ruled on:

---

[2]      The Court granted the Individual Defendants' summary judgment motion with respect to other claims that are not relevant here.

the Court's decision to grant summary judgment to Plaintiff, and deny summary judgment to the Individual Defendants, on the constitutional right to privacy claim;

the Court's decision to grant summary judgment to Plaintiff, and deny summary judgment to the Individual Defendants, on the breach of contract claim;

the Court's decision to deny summary judgment to the Individual Defendants on the disparate impact component of the Fair Housing Act claim;

and the Court's decision to deny summary judgment to the Individual Defendants on the Rehabilitation Act claim.

The motion is, therefore, properly viewed as a motion for reconsideration.

The Court previously set forth the criteria that a motion for reconsideration must initially satisfy:

In order to succeed on a motion to reconsider a party must meet at least one of three tests:  1) the Court "is presented with newly discovered evidence;" 2) the Court "committed clear error or the decision was manifestly unjust," or 3) "there is an intervening change in controlling law."

Recons. Order at 8 (quoting *School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)).  That is the standard that the Individual Defendants must meet before the usual summary judgment standard may be applied.

**ARGUMENT**

**I.      THE MOTION IS UNTIMELY**

The Individual Defendants call their motion a motion for summary judgment.  Taking the motion on its own terms, it is untimely and should not be considered by the Court.  The Court recently confirmed the continued vitality of the Case Management Order, *see* Docket Entry Order (Dec. 21, 2006), which establishes an August 6, 2005 deadline for filing dispositive motions, *see* Order (Aug. 8, 2005) (modifying CMO deadline).  A scheduling order for the second part of the case has not been issued.  Accordingly, no party may file a dispositive motion at this stage of the litigation without first demonstrating "good cause" in support of a request for

modification of the CMO.  *See* Fed. R. Civ. P. 16(b).  The Individual Defendants have not moved for modification or offered any explanation for why they filed their motion sixteen months late, much less an explanation that satisfies the good cause standard.  The motion should therefore be denied.

It is well-established that when a party files a summary judgment motion after the deadline set by a scheduling order without demonstrating good cause, the motion is properly denied as untimely.  *See U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1104 (9th Cir. 1985); *see also Bradford v. State of Hawaii*, 846 F. Supp. 1411, 1415 (D. Haw. 1994) (denying as untimely summary judgment motion filed one month after deadline).  In *U.S. Dominator*, the defendants filed a summary judgment motion nine months after the pretrial order's deadline for filing preliminary motions.  *See id.*  As here, "the defendants never requested a modification of the pretrial order to allow the filing of their motion."  *Id.*  The district court denied the summary judgment motion as untimely, and the Ninth Circuit affirmed.  *See id.*

Even where a summary judgment motion was filed only three days after the deadline, a district court in this Circuit denied the motion as untimely.  *See Makin ex rel. Russell v. Hawaii*, 114 F. Supp. 2d 1017, 1029-30 (D. Haw. 1999).  As here, the court limited the parties to one summary judgment motion but plaintiffs filed both timely and untimely motions.  *See id.* at 1029.  The latter motion "rais[ed] issues that could have been raised in [plaintiffs'] initial filing."  *Id.*  Plaintiffs did not seek modification of or relief from the scheduling order, *see id.*, and their motion was denied as untimely, *see id.* at 1030.  The Individual Defendants' motion cannot be distinguished and should be denied on the same basis.

Moreover, even if the Individual Defendants did seek modification of the CMO to permit the filing of their motion, they could not satisfy the Rule 16 good cause standard.  The Ninth

Circuit has held that "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). If the moving party is not diligent, "the inquiry should end." *Id.* There need be no prejudice to the non-moving party. *See id.* Applying this standard, the *Makin* court held that good cause was absent where the late-filed summary judgment motion raised legal issues that plaintiffs were previously aware of and could have timely asserted. *See Makin*, 114 F. Supp. 2d at 1029-30.

Such is precisely the case here – the sixteen-month late motion raises legal arguments that could have been advanced in the summary judgment briefs timely filed by the Individual Defendants in 2005. The motion must therefore be denied as untimely. Furthermore, the qualified immunity defense must be deemed waived because it was not timely asserted. *See Chuman v. Wright*, 960 F.2d 104, 106 (9th Cir. 1992) (claim of qualified immunity subject to waiver); *Kennedy v. City of Cleveland*, 797 F.2d 297, 300-01 (6th Cir. 1986) (defendant waives qualified immunity by failing to assert it in dispositive motion filed before deadline for such motions).

## II.   THE MOTION DOES NOT SATISFY THE STANDARD FOR A MOTION FOR RECONSIDERATION

The Court summarily denied the Individual Defendants' initial motion for reconsideration of the Summary Judgment Order because the motion did not present newly discovered evidence, assert clear error or manifest injustice, or rely on a change in controlling law. *See* Summ. J. Order at 8-9. The Court held that it would "not use the motion to reconsider as a vehicle for rehearing a motion for summary judgment." *Id.* at 9. The instant motion should be denied for the same reason and in the same manner.

A.      **There Is No Newly Discovered Evidence**

The Individual Defendants do not present any newly discovered evidence in support of their motion.  They have not even submitted a new statement of material facts that they contend are not in dispute.  Instead, they rely again on the August 5, 2005 statement they submitted in support of their initial summary judgment motion.  *See* Individual Defs.' Mot. for Summ. J. (Dec. 28, 2006) at 1-2.  They likewise rely on the August 5, 2005 affidavit of Individual Defendant Williams.  *See id.*  The statement of "Facts and Proceedings" in their brief similarly fails to reference any evidence that was not available to them and presented to the Court in conjunction with their 2005 summary judgment briefs.

B.      **The Court Did Not Commit Clear Error Or Cause Manifest Injustice**

As with their first motion for reconsideration, the Individual Defendants do not "point[] to an instance of clear error by the Court."  Recons. Order at 9.  Nor could they assert clear error because, in 2005, they did not present to the Court the arguments they now rely on.  As a result, the Court did not have the opportunity to address those arguments, whether correctly or incorrectly.

Likewise, the Individuals Defendants do not claim that the Summary Judgment Order resulted in manifest injustice.  Nor could they, having made a strategic decision to omit their current arguments from their 2005 filings.  The Individual Defendants may regret that the arguments they did make in 2005 were only partially successful, but an unfavorable outcome that results from a strategic decision simply does not qualify as manifest injustice.  *See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 168 (2d Cir. 2003) ("Denying Color Tile Committee yet another bite at the apple because [its] strategy ultimately failed certainly cannot be characterized as manifestly unjust . . . ."); *Urologix,*

*Inc. v. Prostalund AB*, 256 F. Supp. 2d 911, 915 (E.D. Wis. 2003) ("[Plaintiff]'s present

circumstances are the result of the litigation strategy it chose; thus, my decision works no

manifest injustice."); *see also Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d

1264, 1270 (7th Cir. 1996) ("A party seeking to defeat a motion for summary judgment is

required to wheel out all its artillery to defeat it. . . .   Reconsideration is not an appropriate forum

for . . . arguing matters that could have been heard during the pendency of the previous motion.")

(internal quotation marks and citations omitted).   Nor is there any injustice in holding the

Individual Defendants liable for breaching a contract they were not parties to where they failed

to raise this defense before their liability was established.  *See Zhang v. American Gem Seafoods,*

*Inc.*, 339 F.3d 1020, 1028-29 (9th Cir. 2003) (individuals waived same defense asserted here by

the Individual Defendants by failing to raise it until after verdict was returned).

### C.   <u>There Has Been No Change In Controlling Law</u>

None of the Individual Defendants' arguments are based on changes in controlling law.

In fact, none of their arguments are based to any degree on cases decided after the Court issued

its Summary Judgment Order.  The most recent case the Individual Defendants cite in support of

their qualified immunity arguments was decided in 2003.  *See* Indiv. Defs.' Summ. J. Br. at 7

(citing *Flores v. Morgan Hill Unified School Dist.*, 324 F.3d 1130 (9th Cir. 2003)).  The most

recent case they rely on in support of their breach of contract argument was decided in 1992.  *See*

*id.* at 12 (citing *Tri-Circle Inc. v. Brugger Corp.*, 829 P.2d 540 (Ct. App. 1992)).

## III.   THE INDIVIDUAL DEFENDANTS' QUALIFIED IMMUNITY ARGUMENT FAILS ON THE MERITS

Even if the Court finds that the instant motion is timely and that the high standard for a

motion for reconsideration does not bar consideration of the Individual Defendants' arguments,

their qualified immunity argument fails on the merits.

The Individual Defendants assert that qualified immunity shields them from liability with respect to IAF's constitutional right to privacy, Fair Housing Act disparate impact, and Rehabilitation Act causes of action.  A claim of qualified immunity requires a two-step analysis:

> First, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officers' conduct violated a constitutional [or statutory] right?  Second, if so, was that right clearly established?

*San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 971 (9th Cir. 2005) (internal quotation marks and citation omitted).

The Individual Defendants evidently acknowledge, at least for purposes of the instant motion, that the facts alleged by IAF constitute valid claims; they do not offer any arguments to the contrary.  The Individual Defendants only argue that, in 2001, IAF's rights were not clearly established.  Examination of relevant case law and the Court's Summary Judgment Order establishes otherwise.

> 1.  *IAF's Constitutional Right to Privacy Was Clearly Established At The Time Of The Individual Defendants' Actions*

Before this dispute arose, the law establishing IAF's constitutional right to privacy and the violation of that right by the Individual Defendants was clearly established.  The Individual Defendants claim that the Court's reliance on a 2004 case in its Summary Judgment Order dictates otherwise, but the Individual Defendants overstate the significance of that case.  *Tucson Woman's Clinic v. Eden*, 379 F.3d 531 (9th Cir. 2004), did not make new law in the Ninth Circuit or even clarify prior ambiguous decisions.  Rather, the court merely applied well-established and precise legal principles to the facts before it.  Because those principles predate *Tucson* and "provided the defendants with 'fair warning' that their conduct was unlawful," qualified immunity does not apply.  *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1137 (9th Cir. 2003).

14

*Flores* makes plain that "to find that the law was clearly established, . . . [a court] need not find a prior case with identical, or even 'materially similar,' facts." *Id.* at 1136-37 (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).  The proper question is instead whether "the underlying proposition" was established at the time of the challenged actions.  *Id.* at 1137.  This is so because "officials can still be on notice that their conduct violates established law even in novel factual circumstances."  *Hope*, 536 U.S. at 741.

Consideration of the Ninth Circuit's analysis in *Tucson* demonstrates that "the underlying proposition" rendering unconstitutional the Individual Defendants' actions was clearly established prior to *Tucson*.  The *Tucson* court began its analysis by explaining that "individuals have a constitutionally protected interest in avoiding disclosure of personal matters, including medical information." *Tucson*, 379 F.3d at 551 (internal quotation marks and citation omitted).  The court relied on a 1977 Supreme Court case for support.  *See id.* (citing *Whalen v. Roe*, 429 U.S. 589, 599 (1977)).

The next step in *Tucson*'s analysis was to set forth and apply the proper test.  The court explained that it must balance any governmental interest in the information against the privacy interest at stake by considering "(1) the type of information requested, (2) the potential for harm in any subsequent non-consensual disclosure, (3) the adequacy of safeguards to prevent unauthorized disclosure, (4) the degree of need for access, and (5) whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access." *Id.*  While *Tucson* cited a 2002 case, *Planned Parenthood of Southern Arizona v. Lawall*, 307 F.3d 783 (9th Cir. 2002), in support for these propositions, that case took these factors verbatim from a 1999 case, *In re Crawford*, 194 F.3d 954 (9th Cir. 1999).  *See Lawall*, 307 F.3d at 790.  It had been established even earlier, in 1991, that "the government has the

burden of showing that 'its use of the information would advance a legitimate state interest and that its actions are narrowly tailored to meet the legitimate interest.'" *In re Crawford*, 194 F.3d at 959 (quoting *Doe v. Attorney General*, 941 F.2d 780, 796 (9th Cir. 1991)).[3]  Well before *Tucson* was decided, therefore, the relevant law regarding the constitutional right to informational privacy was clear.  *Tucson* did not need to address any jurisprudential gaps or ambiguities.

Moreover, before *Tucson*, the Ninth Circuit had even applied the relevant legal test to some of the same facts at issue here.  In *In re Crawford*, the Ninth Circuit described an individual's HIV status and sexual orientation as "inherently sensitive or intimate information," the disclosure of which can "lead directly to injury, embarrassment or stigma." *In re Crawford*, 194 F.3d at 960.

The propositions relied on and established before *Tucson* therefore gave the Individual Defendants "fair warning" that they could not insist on unfettered access to IAF's client files. *Tucson* did not make the five factors enumerated above central to a constitutional right to privacy analysis; they were central long before.  The Ninth Circuit had already addressed the first two factors in a manner favorable to Plaintiff's claim.  And as the Court held in the Summary Judgment Order, it is clear that the third, fourth, and fifth factors, applied to the undisputed facts, likewise give the Individual Defendants no valid defense.  *See* Summ. J. Order at 10-11; *see also* Aff. of Mark Welch: Pl.'s Exs. in Supp. of Mot. for Summ. J. (Docket No. 27-4) at 7-8 (Individual Defendant Cook's deposition testimony acknowledging that provision by IAF of redacted files would have satisfied the government's interest in the files).

---

[3]       The Court's Summary Judgment Order draws the fundamental principle of its analysis – that informational privacy and any legitimate government interest must be balanced – from *In re Crawford*, and also relies on *Doe*.  *See* Summ. J. Order at 8.  Both cases were decided before the instant dispute arose.

Accordingly, the law regarding the constitutional right to privacy that the Court has already held the Individual Defendants violated was clearly established at the time of their actions.  Qualified immunity therefore does not apply. [4]

2.      *IAF's Rights Under The Fair Housing Act Were Clearly Established At The Time Of The Individual Defendants' Actions*

The Summary Judgment Order confirms that the law supporting IAF's disparate impact claim under the Fair Housing Act was also clearly established at the time of the Individual Defendants' actions.  The Court determined the proper legal standard and analyzed the claim under a 1997 Ninth Circuit case.  *See* Summ. J. Order at 18-19 (citing *Gamble v. City of Escondido*, 104 F.3d 300, 306 (9th Cir. 1997)).  Notably, the Court found that *Gamble* provided sufficient legal guidance to adjudicate the cross-motions, and did not have to consider any other sources of law or address any open legal issues.  Only a factual issue requiring resolution at trial – "the extent to which the cancellation of IAF's contract has impacted its clientele" – prevented the Court from granting summary judgment to IAF.  *Id.* at 20.  If this factual issue is resolved in IAF's favor, the Summary Judgment Order establishes that IAF will be entitled to judgment on this claim under *Gamble*.  As *Gamble* was decided years before the Individual Defendants' actions, they are not entitled to qualified immunity from Plaintiff's Fair Housing Act claim.

The Individual Defendants do not, in fact, seriously suggest otherwise.  Without any analysis of the Summary Judgment Order or Fair Housing Act case law, they merely assert that

_____

[4]      In addition, the Individual Defendants' one-sentence argument that immunity applies because "no statute or regulation [] applies to prohibit the review of records sought by IHFA," Indiv. Defs.' Summ. J. Br. at 8, has been rejected.  *See*, *e.g.*, *Flores*, 324 F.3d at 1137 ("We have held that where prior cases have delineated governing legal principles, the law is 'clearly established' for immunity purposes regardless of whether a statute or regulation is the source.").

Likewise, this Court in 2005 rejected the Individual Defendants' one-sentence argument that HUD regulations established their right to unfettered access to IAF's client files.  *See* Indiv. Defs.' Summ. J. Br. at 8; Mem. in Supp. of Mot. for Summ. J. (Aug. 5, 2005) at 8 & n.3.

"the law was not clearly established in 2001 and 2002" and that "the contours of that right were not adequately defined . . . ."  Indiv. Defs.' Summ. J. Br. at 11.  The Court, by relying on *Gamble*, has already rejected these propositions.

One additional argument briefly pressed by the Individual Defendants – that they are entitled to qualified immunity because they relied on the advice of counsel – is belied by the record.  *See id.* at 11-12.  The record citations offered by the Individual Defendants, taken as true for purposes of argument, would establish only that an IHFA attorney served an administrative function in efforts to resolve the dispute amicably.  *See* Defs.' Statement of Material Facts In Supp. of Mot. for Summ. J. (Aug. 5, 2005) at ¶¶ 10, 11, 20, & 22 (cited in Indiv. Defs.' Summ. J. Br. at 9).  They do not in way indicate that the Individual Defendants solicited or relied on his legal advice.  The Individual Defendants' related suggestion that they are entitled to immunity because they relied on the advice of HUD's attorney is facially absurd.

> 3.     *IAF's Rights Under The Rehabilitation Act Were Clearly Established At The Time Of The Individual Defendants' Actions*

Under the Rehabilitation Act, programs that receive financial assistance from the federal government may not deny benefits to qualified individuals because of their disability.  *See* 29 U.S.C. § 794.  It was clearly established when the Individual Defendants insisted on unfettered access to IAF's files and discontinued IAF's HOPWA funding that their actions violated that prohibition.  The law has been clear for over twenty years that a plaintiff may establish a Rehabilitation Act violation through a disparate impact analysis showing that "the grantee of a benefit [] den[ied ] otherwise qualified handicapped individual[s] equal and meaningful access to a benefit offered by that grantee."  *Felde v. City of San Jose*, 839 F. Supp. 708, 710 (N.D. Cal. 1994) (discussing holding of *Alexander v. Choate*, 469 U.S. 287 (1985)); *see also Smith v. Barton*, 914 F.2d 1330, 1339 & n.13 (9th Cir. 1990) (identifying cases involving "neutral

standards with disparate impact" as one of the three most common categories of cases under the Rehabilitation Act); 45 C.F.R. 84.4(b)(4) (federal regulation adopted in 1977 under the Rehabilitation Act stating that "[a] recipient may not . . . utilize criteria or methods of administration . . . (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program or activity with respect to handicapped persons").

As the Court held in considering IAF's disparate impact claim under the Fair Housing Act, IAF has raised a colorable disparate impact claim because the "demands for access [to medical records] ultimately resulted in termination of benefits under IAF's program altogether, which presumably has resulted in a significantly adverse or disproportionate affect on IAF's clientele."  Summ. J. Order at 19.  The same analysis applies to Plaintiff's Rehabilitation Act claim.  Thus, before this dispute arose, the legal basis for IAF's Rehabilitation Act claim was clearly established; all that remains, as with the Fair Housing Act claim, is for a finder of fact to determine whether the facts support the claim.

Moreover, as with their claim for immunity from liability under the Fair Housing Act, the Individual Defendants do not try to explain why the legal basis for IAF's Rehabilitation Act claim was not clearly established at the time of their actions.  They only assert that "the law was not clearly established in 2001 and 2002" and that "the contours of that right were not adequately defined . . . ."  Indiv. Defs.' Summ. J. Br. at 11.  These conclusory and unsupported statements are at odds with straightforward and controlling law.[5]

---

[5]      Plaintiff also believes that it has a valid disparate treatment claim under the Rehabilitation Act based on law that was clearly established before the instant dispute arose.  In light of the Court's award of summary judgment to Defendants on the disparate treatment claim under the Fair Housing Act, however, Plaintiff does not elaborate on that point here.

**IV.    QUALIFIED IMMUNITY DOES NOT APPLY TO SUITS FOR DECLARATORY OR INJUNCTIVE RELIEF**

Plaintiff seeks compensatory, injunctive, and declaratory relief.  *See* Complaint (Mar. 26, 2004) at 15 (Prayer for Relief ¶¶ 2-3, 5).  Because "[q]ualified immunity does not apply to suits for declaratory or injunctive relief," *Frederick v. Morse*, 439 F.3d 1114, 1123 n.46 (9th Cir. 2006), the Individual Defendants cannot have immunity from these non-monetary aspects of Plaintiff's constitutional right to privacy, Fair Housing Act, and Rehabilitation Act claims.

**CONCLUSION**

For the reasons stated above, Plaintiff IAF respectfully submits that the summary judgment motion filed by Defendants Gerald Hunter, Julie Williams, and Earl Cook should be denied in its entirety.


January 22, 2007                                Respectfully submitted,


                                                 /s/_____
                                                John P. Relman, Pro Hac Vice
                                                D. Scott Chang, Pro Hac Vice
                                                Glenn Schlactus, Pro Hac Vice
                                                RELMAN & ASSOCIATES PLLC
                                                1225 19th Street, NW, Suite 600
                                                Washington, DC  20036
                                                Telephone:  (202) 728-1888
                                                Facsimile:  (202) 728-0848
                                                E-mail:  gschlactus@relmanlaw.com

                                                Philip H. Gordon
                                                GORDON LAW OFFICES
                                                623 West Hays Street
                                                Boise, ID  83702
                                                Telephone:  (208) 345-7100
                                                Facsimile:  (208) 345-0050

                                                *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of January, 2007, Plaintiff Idaho AIDS Foundation's Response To Defendants Hunter, Williams, And Cook's Motion For Summary Judgment Filed On December 28, 2006 (Docket Number 106) was filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Joanne P. Rodriguez
Joanne.Rodriguez@usdoj.gov

Michael W. Moore
mike@mbplaw.com

Martin C. Hendrickson
mch@givenspursley.com

AND I FURTHER CERTIFY that on such date I served the foregoing on the following non-CM/ECF Registered Participant:

 /s/ Glenn Schlactus_____
Glenn Schlactus