IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO AIDS FOUNDATION INC., | ) )  Case No.  CV-04-155-S-BLW |
| Plaintiff, | ) ) **MEMORANDUM DECISION** ) **AND ORDER** |
| v. | ) ) |
| IDAHO HOUSING & FINANCE ASSOCIATION, et al., | ) ) ) |
| Defendants. | ) ) |

## INTRODUCTION

The Court has before it Defendant HUD's Motion to Dismiss (Docket No. 128), Defendants Carlson, Olson and Vos' ("Individual Defendants") Motion to Dismiss (Docket No. 138), and AIDS Action's Motion for Leave to File Amici Curiae Brief (Docket No. 144). The Court heard oral argument on the motions on November 14, 2007. For the reasons expressed below, the Court will grant the motions to dismiss.

## BACKGROUND

On March 26, 2004, Idaho Aids Foundation, Inc. ("IAF") filed suit against Idaho Housing and Finance Association ("IHFA"). Pursuant to the Housing

**Memorandum Decision and Order - 1**

Opportunities for People with AIDS Program ("HOPWA"), the Department of Housing and Urban Development ("HUD") distributes funds to state instrumentalities like IHFA to provide housing assistance and support services to people infected with HIV and their families.  In October 2000, IHFA contracted with IAF, a project grantee, to provide rental assistance and support service to people infected with HIV.  The contract was renewed in July 2001.  For services rendered after October 4, 2001, IHFA required that IAF clients grant IHFA releases of their confidential information in order for IAF to receive reimbursement.  IHFA stated that HUD required the confidential information for auditing purposes.  IAF claimed violations of the Fair Housing Act ("FHA"), the Rehabilitation Act of 1973, HOPWA statutes and regulations, the constitutional right to privacy, due process rights, and breach of contract.  IAF sought injunctive relief and monetary damages.

     This Court denied IHFA's July 2, 2004 motion to join HUD as a party under Rule 21 because at that time it was mere speculation that IHFA would be faced with inconsistent obligations if IAF succeeded in litigation.  However, on January 11, 2006, this Court granted IAF summary judgment on its claim for violation of the constitutional right to privacy and breach of contract claims, but did not decide the issue of remedies.  In the Order, the Court also found that, within the context

**Memorandum Decision and Order - 2**

of the claims and parties before the Court, it appeared undisputed that HUD had demanded full access to the files containing confidential patient records. Therefore, the Court joined HUD as a necessary party. The Court reasoned that if HUD was not joined, IHFA would be in the positions of either disregarding the ruling in this case and continuing to demand confidential patient records or losing its HOPWA funding because it disregarded HUD's orders to demand those files.

In response to the joinder, HUD filed a motion to dismiss for mootness, accompanied by a stipulation. The stipulation stated that HUD would not reduce, cut off, or otherwise adversely affect IHFA's eligibility for HOPWA funds because IHFA complied with a court order in this case. The Court agreed with HUD, and dismissed HUD from the case on July 11, 2006.

On August 29, 2006, IAF filed a motion to modify the Case Management Order in this matter so that it could file an amended complaint. The Court granted the motion on February 21, 2007, and deemed filed IAF's Amended Complaint, which added FHA and Fourth Amendment claims against HUD. Defendants then filed their pending motions to dismiss.

## ANALYSIS

### I.   Motions to Dismiss

Both HUD and the Individual Defendants assert several reasons why this

Memorandum Decision and Order - 3

Court should dismiss IAF's complaint against them. The Court will address only those arguments which dispose of the claims.

    **A.**    **Sovereign Immunity (Claims against HUD)**

The parties agree that the Administrative Procedure Act ("APA") waives, at least to some degree, the sovereign immunity of the United States. In relevant part, the APA states as follows:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States . . . .

5 U.S.C. § 702.

HUD contends, however, that the APA's waiver of sovereign immunity does not apply here for three reasons: (1) APA immunity does not extend to agency action committed to agency discretion by law; (2) judicial review is not authorized by the APA unless the plaintiff can demonstrate that it has no other adequate remedy in a court; and (3) APA review is limited to claims seeking relief

**Memorandum Decision and Order - 4**

other than monetary damages.  The Court will address only the second reason – that judicial review is not authorized by the APA because IAF cannot demonstrate that it has no other remedy in a court – because that reason is dispositive in this case.

The APA's waiver of sovereign immunity contains a limitation providing that only "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court, are subject to judicial review." 5 U.S.C. § 704.  Thus, the Court may not entertain the claim against HUD if IAF has "an adequate alternative legal remedy against someone else – a remedy that offers the same relief [IAF] seek[s] from the agency." *New York City Employees' Retirement System v. S.E.C.*, 45 F.3d 7, 14 (2nd Cir. 1995) (citing 5 U.S.C. § 704; *Washington Legal Foundation v. Alexander*, 984 F.2d 483, 486 (D.C.Cir.1993)).

In this case, HUD stipulated that it will not "reduce, cut off, or otherwise adversely affect the eligibility of the IHFA for grants under the HOPWA program due to IHFA's compliance with a Court order from this litigation.  Nor will HUD issue any orders to IHFA inconsistent with any Court order from this litigation." (Docket No. 86).  The Court approved and accepted the stipulation on July 11, 2006.  Given HUD's stipulation, the Court finds that IAF does, in fact, have another adequate remedy in a court – its claims against IHFA in this case.  If IAF

**Memorandum Decision and Order - 5**

prevails in its suit against IHFA, IAF will receive all the relief they now seek from HUD.  Moreover, the Court cannot envision a circumstance where IAF would prevail against HUD, but not IHFA, because IAF's claims against HUD relate directly and exclusively to its relationship with IHFA.  Accordingly, the APA does not provide a waiver of sovereign immunity as to IAF's claims against HUD.  Therefore, the Court will grant HUD's motion to dismiss.[1]

### B.   Qualified Immunity (Claims against Individual Defendants)

"Qualified immunity serves to shield government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 971 (9th Cir. 2005) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The Supreme Court has set forth the following two-pronged inquiry to resolve all qualified immunity claims:

> First, taken in the light most favorable to the party asserting the injury, do the facts alleged show the

---

[1] Having adopted HUD's stipulation, the Court considers the stipulation to be akin to a settlement agreement or consent decree and fully binding on the parties.  Stipulations entered into by government agencies are binding and will be enforced by the Court.  See *U.S. v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977); *see also Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989); *Western Watersheds v. U.S. Forest Service*, No. 06-277, Docket No. 137 (February 29, 2008).  Should HUD attempt to back away from the stipulation, the Court will reconsider its decision to dismiss HUD from the case.

**Memorandum Decision and Order - 6**

> officers' conduct violated a constitutional right? Second, if so, was that right clearly established? The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. This inquiry is wholly objective and is undertaken in light of the specific factual circumstances of the case.

*Id.* (internal quotations and citations omitted). Thus, a district court should "concentrate at the outset on the definition of the constitutional right and determine whether, on the facts alleged, a constitutional violation could be found." *Billington v. Smith*, 292 F.3d 1177, 1184 (9th Cir. 2002) (internal quotations and citations omitted). If a constitutional violation can be found, the court then decides whether the violation was the source for clearly established law that was contravened in the circumstances of the case. *Id.*

In applying this inquiry to a case, the Court must not be guided by an overly generalized or excessively specific construction of the right. *Cunningham v. Gates*, 229 F.3d 1271, 1288 (9th Cir. 2000). On the one hand, "[t]he Supreme Court has admonished that the right alleged to have been violated must not be so broadly defined as to 'convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). On the

**Memorandum Decision and Order - 7**

other hand, "the right cannot be so narrowly construed so as to 'define away all potential claims.'" *Id.* (quoting *Kelley v. Borg*, 60 F.3d 664, 667 (9th Cir.1995)).

### 1.     Fourth Amendment Claim

IAF claims that the Individual Defendants violated the Fourth Amendment by demanding confidential and personal information about IAF's clients without a legitimate governmental interest for doing so. "[S]earches conducted as part of a general regulatory scheme, done in furtherance of administrative goals rather than to secure evidence of a crime, may be permissible under the Fourth Amendment without a particularized showing of probable cause." *U.S. v. Bulacan*, 156 F.3d 963, 967 (9th Cir. 1998). Courts have voiced some concern over the abuse of these types of administrative searches because they allow the Government to intrude into the privacy of ordinary citizens by not requiring a warrant or particularized suspicion. *Id.* Such searches are not without limits, however. "While administrative searches are an exception to the Fourth Amendment's warrant requirement, they are not an exception to the Fourth Amendment's standard of reasonableness." *Id.*

In order to determine whether an administrative search meets the Fourth Amendment's reasonableness requirement, courts must balance the need to search against the invasion which the search entails. *Id.* "To meet the test of

**Memorandum Decision and Order - 8**

reasonableness, an administrative screening search must be as limited in its intrusiveness as is consistent with satisfaction of the administrative need that justifies it." *Id.* (Internal quotation and citation omitted).

  Here, IAF asserts that the Individual Defendants violated the Fourth Amendment by failing to balance HUD's need for records against the intrusiveness of the search. IAF suggests that the governmental purpose in inspecting IAF's client files is articulated by HUD's regulations, where it states that it requires IAF to maintain and make available to HUD for inspection financial records sufficient, in HUD's determination, to ensure proper accounting and disbursing of amounts received from the grant. The intrusiveness of the search relates to obtaining IAF's client files, which include AIDS/HIV status, medical records, and psychiatric records. IAF contends that the Individual Defendants could have satisfied any legitimate auditing requirements with the access offered by IAF to IAF's financial records and to its client records which have been redacted to exclude the name of the client, but include their AIDS diagnosis, income eligibility, and billing documentation showing visits, times and dates, and services rendered. IAF therefore suggests that because the Government's auditing needs could have been satisfied by the provision of redacted records, and redaction would have adequately protected IAF's sensitive

**Memorandum Decision and Order - 9**

records, the administrative request for unfettered access to the client files violated the Fourth Amendment.

Taken in the light most favorable to IAF, the Court determines that the facts alleged are sufficient to state a claim that the Individual Defendants' conduct violated the Fourth Amendment. However, only if the Court construes the right in an overly generalized manner can the Court find that the law governing the Individual Defendants' conduct was clearly established. As explained above, case law establishing that administrative searches are subject to the Fourth Amendment's standard of reasonableness clearly existed at the time of the alleged violation; however, the specific constitutional right asserted by IAF in this case was not clearly established. The Court recognizes that closely analogous preexisting case law is not required in order to show that a right was clearly established. *White v. Lee*, 227 F.3d 1214, 1238 (9th Cir. 2000). Nevertheless, the qualified immunity analysis asks whether the defendants "reasonably can anticipate when their conduct may give rise to liability, by attaching liability only if the contours of the right violated are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (Internal quotations and citations omitted). Thus, "in the light of preexisting law the unlawfulness must be apparent" in order to show that the defendant violated

**Memorandum Decision and Order - 10**

clearly established rights of which a reasonable person would have know. *Id.*
Here, the Court finds that, at the time of the alleged violations, the law was not clearly established with respect to what was reasonable for a request of documents under the HOPWA or other comparable grant programs.  Therefore, the Individual Defendants' alleged unlawfulness was not apparent.

Moreover, the Individual Defendant's assessment of the lawfulness of their conduct cannot be evaluated in a vacuum.   Here, they were operating in an environment in which the inspection of IAF's client files was mandated by regulations requiring IAF to maintain and make available for inspection such financial records as were, in HUD's determination, sufficient to ensure proper accounting and disbursal of amounts received from the grant.  Having been vested with the discretion to determine what records are sufficient to ensure that the expenditure of public funds is appropriate, a reasonable official in the position of the Individual Defendants could well have believed that their conduct was lawful even under a very generalized construction of the law.  *White,* 227 F.3d at 1238. Accordingly, the Court finds that the Individual Defendants are entitled to qualified immunity on IAF's Fourth Amendment claim.

    2.  **FHA Claim**

For similar reasons, the Individual Defendants are entitled to qualified

**Memorandum Decision and Order - 11**

immunity on IAF's FHA claim.  IAF makes a compelling argument that the FHA is "broad and inclusive" and must be given a "generous construction." *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209, 212 (1972).  Nothing in the statutory language evinces any intention to restrict its application to discrimination in selling or renting. Likewise, §§ 3604 and 3617 contain no limitation on the categories of persons who may be liable for violating their prohibitions and places no limit on the types of activities that may give rise to liability.

IAF also asserts that HUD's own regulations demonstrate that the FHA applies to the Individual Defendants' conduct.  24 C.F.R. § 100.70(b); 24 C.F.R. § 100.50(b).  IAF correctly points out that the FHA applies to "any conduct" that discriminates in the context of housing.  Finally, IAF points out that the construction of the statue reflected in these regulations is consistent with the text of the Act, which is "as broad as Congress could have made it, and [means that] all practices which have the effect of denying dwellings on prohibited grounds are therefore unlawful." *United States v. Youritan Constr. Co.*, 370 F. Supp. 643, 648 (N.D. Cal. 1973).

However, even if the conduct of the Individual Defendants, as described in the Amended Complaint, violated the FHA, the Court can only find that such a violation was clearly established if it describes the rights violated in an overly-

**Memorandum Decision and Order - 12**

generalized manner.  Consistent with Congress' broad purpose in enacting the FHA, its language, and HUD's implementing regulations, courts throughout the country have held that § 3604 applies to a myriad of activities related to housing beyond the actual selling and renting of homes.  IAF has provided the Court with a number of examples, including: (1) a city's decisions regarding a private housing developer's proposal and the use of Section 8 housing vouchers and a city's interference with the completion of housing for former drug and alcohol abusers, *see, e.g.,* United States v. Yonkers Bd. of Educ., 837 F.2d 1181, 1220 (2d Cir. 1987); (2) discriminatory lending, *see, e.g.,* Hargraves v. Capital City Mortgage Corp., 140 F. Supp. 2d 7, 20 (D.D.C. 2000); (3) discrimination in the provision of hazard and property insurance, *see, e.g.,* Nationwide Mut. Ins. Co. v. Cisneros, 52 F.3d 1351, 1356-60 (6th Cir. 1995); and (4) appraisals, *see, e.g.,* Hanson v. Veterans Admin., 800 F.2d 1381, 1386 (5th Cir. 1986).

Absent from this list is case law addressing a request for documents under HOPWA or other comparable grant programs.  Thus, the law was not clearly established with respect to the FHA violation asserted by IAF in this case.  As explained above, the qualified immunity analysis asks whether the defendants "reasonably can anticipate when their conduct may give rise to liability, by attaching liability only if the contours of the right violated are sufficiently clear

**Memorandum Decision and Order - 13**

that a reasonable official would understand that what he is doing violates that right." *Id.* (Internal quotations and citations omitted).  Here, the Court finds that without precedent relating to requests for documents under HOPWA or other comparable grant programs, a reasonable official in the position of the Individual Defendants would not have understood that what they were doing violated an FHA right.  Accordingly, the Individual Defendants are entitled to qualified immunity on IAF's FHA claim.

## II. Motion for Leave to File Amici Curiae Brief

AIDS Action filed a motion for leave to file a brief in support of IAF's oppositions to the motions to dismiss.  AIDS Action suggested that it was well-positioned to bolster the Court's understanding of IAF's Fourth Amendment claim.  AIDS Action did not address the arguments which form the basis for granting the motions to dismiss.  Accordingly, the Court finds that AIDS Action's motion is moot.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendant HUD's Motion to Dismiss (Docket No. 128) shall be, and the same is hereby, GRANTED.

IT IS FURTHER ORDERED that Defendants Carlson, Olson and Vos' Motion to Dismiss (Docket No. 138) shall be, and the same is hereby GRANTED.

**Memorandum Decision and Order - 14**

IT IS FURTHER ORDERED that AIDS Action's Motion for Leave to File Amici Curiae Brief (Docket No. 144) shall be, and the same is hereby, DEEMED MOOT.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike Arguments Raised in Defendants' Reply Brief (Docket No. 157) shall be, and the same is hereby, DENIED.  Defendants did not raise altogether new arguments in their reply briefs.

IT IS FURTHER ORDERED that Defendant's Motion for Extension of Time to Respond to Cross-Claim (Docket No. 151) shall be, and the same is hereby, GRANTED.  HUD shall have 20 days from the date of this Order to file a response to the cross-claim asserted against it.

DATED: **February 29, 2008**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order - 15**