IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| IDAHO AIDS FOUNDATION INC., | ) ) ) | Case No. CV-04-155-S-BLW |
| Plaintiff, | ) ) ) | **MEMORANDUM DECISION AND ORDER** |
| v. | ) ) | |
| IDAHO HOUSING & FINANCE ASSOCIATION, et al., | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## INTRODUCTION

The Court has before it Idaho Aids Foundation's ("IAF") Motion to

Reconsider (Docket No. 169), Defendant HUD's Motion to Dismiss Cross-Claim

(Docket No. 177), Defendant Idaho Housing & Finance Association's ("IHFA")

Motion for Partial Summary Judgment (Docket No. 181), and HUD's Motion for

Leave to File Declaration (Docket No. 191).  The Court heard oral argument on the

motions on June 11, 2008 and now issues the following decision.

## BACKGROUND

On March 26, 2004, IAF filed suit against IHFA.  Pursuant to the Housing

Opportunities for People with AIDS Program ("HOPWA"), the Department of

**Memorandum Decision and Order -- Page 1**

Housing and Urban Development ("HUD") distributes funds to state instrumentalities like IHFA to provide housing assistance and support services to people infected with HIV and their families.  In October 2000, IHFA contracted with IAF, a project grantee, to provide rental assistance and support service to people infected with HIV.  The contract was renewed in July 2001.  For services rendered after October 4, 2001, IHFA required that IAF clients grant IHFA releases of their confidential information in order for IAF to receive reimbursement.  IHFA stated that HUD required the confidential information for auditing purposes.  IAF claimed violations of the Fair Housing Act ("FHA"), the Rehabilitation Act of 1973, HOPWA statutes and regulations, the constitutional right to privacy, due process rights, and breach of contract.  IAF sought injunctive relief and monetary damages.

This Court denied IHFA's July 2, 2004 motion to join HUD as a party under Rule 21 because at that time it was mere speculation that IHFA would be faced with inconsistent obligations if IAF succeeded in litigation.  However, on January 11, 2006, this Court granted IAF summary judgment on its claim for violation of the constitutional right to privacy and breach of contract claims, but did not decide the issue of remedies.  In the Order, the Court also found that HUD indisputably demanded full access to the files containing confidential patient records.

**Memorandum Decision and Order -- Page 2**

Therefore, the Court joined HUD as a necessary party.  The Court reasoned that if HUD was not joined, IHFA would be in the positions of either disregarding the ruling in this case and continuing to demand confidential patient records or losing its HOPWA funding because it disregarded HUD's orders to demand those files.

In response to the joinder, HUD filed a motion to dismiss for mootness, accompanied by a stipulation.  The stipulation stated that HUD would not reduce, cut off, or otherwise adversely affect IHFA's eligibility for HOPWA funds because IHFA complied with a court order in this case.  The Court agreed with HUD, and dismissed HUD from the case on July 11, 2006.

On August 29, 2006, IAF filed a motion to modify the Case Management Order in this matter so that it could file an amended complaint.  The Court granted the motion on February 21, 2007, and deemed filed IAF's Amended Complaint, which added FHA and Fourth Amendment claims against HUD.  HUD and the individual defendants then filed motions to dismiss, which the Court granted on February 29, 2008.

Less than two weeks later, IAF filed a motion to reconsider the Court's January 11, 2006 decision granting summary judgment to IHFA on IAF's discriminatory treatment claim under the FHA.  HUD then filed a motion to dismiss the cross-claim against it, and IFHA filed a motion for partial summary

**Memorandum Decision and Order -- Page 3**

judgment.  These motions are now before the Court.

## ANALYSIS

## I.    Motion to Reconsider Standard

A motion to reconsider an interlocutory ruling requires an analysis of two important principles: (1) error must be corrected; and (2) judicial efficiency demands forward progress.  The former principle has led courts to hold that a denial of a motion to dismiss or for summary judgment may be reconsidered at any time before final judgment.  *Preaseau v. Prudential Insurance Co.,* 591 F.2d 74, 79-80 (9th Cir. 1979).  While even an interlocutory decision becomes the "law of the case," it is not necessarily carved in stone.  Justice Oliver Wendell Holmes concluded that the "law of the case" doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power."  *Messinger v. Anderson,* 225 U.S. 436, 444 (1912).  "The only sensible thing for a trial court to do is to set itself right as soon as possible when convinced that the law of the case is erroneous.  There is no need to await reversal."  *In re Airport Car Rental Antitrust Litigation,* 521 F.Supp. 568, 572 (N.D.Cal. 1981).

The need to be right, however, must be balanced with the need for forward progress. A court's opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure."  *Quaker Alloy Casting Co. v.*

**Memorandum Decision and Order -- Page 4**

*Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D.Ill.1988). "Courts have distilled various grounds for reconsideration of prior rulings into three major grounds for justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; and (3) need to correct a clear error or to prevent manifest injustice." *Louen v Twedt*, 2007 WL 915226 (E.D.Cal. March 26, 2007). If the motion to reconsider does not fall within one of these three categories, it must be denied.

## II.    IAF's Motion to Reconsider

In this case, IAF contends that an intervening change of controlling law requires reconsideration of the Court's earlier decision. Specifically, IAF contends that the Ninth Circuit's holding in *Community House, Inc. v. City of Boise*, 490 F.3d 1041, 1049 (9th Cir. 2007) that the *McDonnell Douglas* test is inapplicable to FHA challenges requires reconsideration. The Court agrees that, subsequent to this Court's earlier ruling, the Ninth Circuit held that "[t]he *McDonnell Douglas* test is inapplicable to Fair Housing Act challenges to a facially discriminatory policy." *Id.* In such cases, the Supreme Court's decision in *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Johnson Controls, Inc.*, 499 U.S. 187, 200-01 (1991) provides the appropriate approach. *Id.* Under the *Johnson Controls* standard, if a circumstance involves facial discrimination, "a defendant

**Memorandum Decision and Order -- Page 5**

must show either: (1) that the restriction benefits the protected class or (2) that it responds to a legitimate safety concern raised by the individuals affected, rather than being based on stereotypes." *Id*. at 1050.

Thus, the Court must first determine whether IAF's FHA challenge is directed at a facially discriminatory policy. "A facially discriminatory policy is one which on its face applies less favorably to a protected group." *Id*. at 1048. It is undisputed that HOPWA beneficiaries are a protected class. IAF thus contends that IHFA's policy was facially discriminatory because IHFA treated HOPWA and non-HOPWA recipients of housing benefits differently – HOPWA beneficiaries were required to provide access to their entire medical records in order to receive housing benefits, while non-HOPWA beneficiaries were not.

The problem with IAF's argument is that even accepting the assertion that HOPWA beneficiaries were required to provide access to records not requested of non-HOPWA beneficiaries, the requirement was not a policy of "less favorable" treatment of the non-HOPWA beneficiaries. The reasons behind IHFA's policy – compliance with HUD orders, and a need for certain medical records in order to determine eligibility for the program – is not a form of discrimination. Unlike the facts in *Community House*, where the city treated women differently than men because of gender, the policy here was designed to determine eligibility for the

**Memorandum Decision and Order -- Page 6**

benefits regardless of gender or any other discriminatory basis.  Thus there is no

difference in the depth or level of scrutiny of the HOPWA beneficiaries and the

non-Hopwa beneficiaries; it is just a difference in the types of records requested

because the grant funds are applied to different eligible services.  Therefore, the

policy itself is neutral.  Accordingly, this Court did not error in applying the

*McDonnell Douglas* test, and the Court will not reverse its earlier decision.

**III.    HUD's Motion to Dismiss**

HUD presented the Court with several arguments why the Court should

dismiss IHFA's cross-claim against it.  The Court will address only the "money

damages" and "mootness" arguments, as they are intertwined and dispositive of the

cross-claim.

**A.    IHFA's Cross-Claim Against HUD is an Unauthorized Claim for
Money Damages, and is Nevertheless Moot.**

The Supreme Court has explained that "'money damages' . . . normally

refers to a sum of money used as compensatory relief[,]" and is distinguished from

specific remedies that "'are not substitute remedies at all, but attempt to give the

plaintiff the very thing to which he was entitled.'" *Dept. of Army v. Blue Fox*, Inc.,

525 U.S. 255, 262 (1999) (*quoting Bowen v. Massachusetts*, 487 U.S. 879, 895

(1988)).  Where a party seeks an equitable lien, it should be viewed as seeking

money damages if the equitable relief is "a means to the end of satisfying a claim

**Memorandum Decision and Order -- Page 7**

for the recovery of money." *Id.* at 262.  In *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002), the Supreme Court indicated that "[a]lmost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for money damages, as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty" *Great-West*, 534 U.S. at 210 (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 918-19 (1988)).  IHFA's request for relief, however termed in the cross-claim, essentially demands HUD's release of funds from its 2000 HOPWA grant.  Such a request falls directly within the Supreme Court's definition of money damages.

In *City of Houston v. HUD*, 24 F.3d 1421 (D.C. Cir. 1994), the D.C. Circuit concluded that "[a]n award of monetary relief from any source of funds other than [the original] appropriation would constitute money damages rather than specific relief, and so would not be authorized by APA section 702." *City of Houston*, 24 F.3d at 1428.  In this case, Congress authorized appropriations to HUD specifically for the HOPWA program in Pub. L. No. 105-276.  (See Vos Decl.).  Those appropriations were used for the April 2000 grant agreement awarded to IHFA at issue in this lawsuit.  (Id.)  Funds not spent for the IHFA grant were deobligated by HUD, and subsequently used for other HOPWA grants.  (Id.); see also 24 C.F.R. §

**Memorandum Decision and Order -- Page 8**

574.540.  Thus, they are no longer available to HUD to pay IHFA as a HOPWA grantee.  (Id.)  Accordingly, because the HOPWA grant funding previously awarded to IHFA is unavailable, IHFA is necessarily seeking a substitute remedy from subsequent appropriations.  The funding in question has been reallocated elsewhere, and hence the requested relief "would constitute money damages rather than specific relief, and so would not be authorized by APA section 702."  *City of Houston*, 24 F.3d at 1428.[1]

Moreover, "[f]ederal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies."  *Id.* at 1426 (internal quotation and citation omitted).  IHFA's cross-claim is mooted by the subsequent award of the appropriation to another grantee.

Funds appropriated for an agency's use can become unavailable if the funds have already been awarded to another recipient.  *Id.*  Once the relevant funds have been re-obligated, a court cannot reach them in order to award relief.  *Id.*  For

---

[1] IHFA inaccurately suggests that the obligated funds reverted to the Treasury, and that they are therefore subject to 31 U.S.C. §§ 1502(b), 1552(a), and 1553(a).  However, the funds did not revert to the Treasury; they were re-obligated to other HOPWA grants. (See Vos Decl.).  Accordingly, 31 U.S.C. §§ 1502(b), 1552(a), and 1553(a) do not apply as a means of keeping the funds available during this lawsuit.

IHFA also contends that the Court cannot consider the Vos Declaration in deciding the motion to dismiss.  However, it is well-established that courts may rely upon facts outside the complaint if those facts go to jurisdiction.  *See e.g.*, *Americopters, LLC v. F.A.A.*, 441 F.3d 726, 732 n.4 (9th Cir. 2006); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003).  Thus, the Court will grant HUD's motion to file the Vos Declaration, and consider the Vos declaration in its decision.

**Memorandum Decision and Order -- Page 9**

example, in *West Virginia Ass'n of Community Health Centers, Inc. v. Heckler, 734 F.2d 1570, 1577 (D.C.Cir. 1984)*, the court held that no relief was available for one of the fiscal years in question because all of the funds had been awarded to various recipients. *Id.*; *see also Ambach v. Bell*, 686 F.2d 974, 986 (D.C.Cir.1982); *Population Inst. v. McPherson*, 797 F.2d 1062, 1081 (D.C.Cir.1986).

In this case, HUD provided the Court with the Vos Declaration, stating that the funds at issue were recaptured and obligated to a HOPWA grant to the San Francisco Redevelopment Agency. (See Vos Decl.). As the Supreme Court has explained, the Appropriations Clause "means simply that no money can be paid out of the Treasury unless it has been appropriated by an Act of Congress." *Id.* at 1428 (internal quotation and citation omitted). Thus, "[w]hen the relevant appropriation has . . . been fully obligated . . . the federal courts are without authority to provide monetary relief." *Id.* IHFA cannot overcome this bar to their cross-claim. Accordingly, the Court will grant the motion to dismiss.[2]

## IV.    Summary Judgment Standard of Review

One of the principal purposes of the summary judgment "is to isolate and

---

[2] The Court recognizes that its decision places IHFA in a somewhat precarious situation considering its assertion that it acted only in accordance with HUD's directives. However, that does not overcome the clear obstacles for bringing a case like this against the Federal Government in District Court. In the end, IHFA may be forced to seek redress in the Federal Claims Court.

**Memorandum Decision and Order -- Page 10**

dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The Court must be "guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby*, 477 U.S. at 255. If a claim requires clear and convincing evidence, the issue on summary judgment is whether a reasonable jury could conclude that clear and convincing evidence supports the claim. *Id.*

**Memorandum Decision and Order -- Page 11**

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324.

## V.   IHFA's Motion for Partial Summary Judgment

### A.   Damages Based on Non-Renewal of Contracts

In Idaho, "[d]amages recoverable for breach of contract are those that arise naturally from the breach and are reasonably foreseeable." *Silver Creek Computers, Inc. v. Petra*, 42 P.3d 672, 677 (Idaho 2002). "Consequential damages are not recoverable unless specifically within the contemplation of the parties at time of contracting." *Id.*

IHFA suggests that it is entitled to summary judgment on IAF's breach of

contract claim to the extent IAF seeks damages for losses which were contingent upon a renewal of the HOPWA and SHP grants.  IHFA argues that such claims are based entirely on speculation.

"Generally, a question of foreseeability constitutes a question of fact for determination by a jury, unless the proof is so clear that reasonable minds could not draw different conclusions or where all reasonable minds would construe the facts and circumstances in only one way."  *Appel v. LePage*, 15 P.3d 1141, 1145 (Idaho 2000).  IAF has submitted evidence it contends establishes that the HOPWA and SHP damages beyond the fixed-term contract dates were reasonably foreseeable by the parties.  For example, with regard to future HOPWA funds, the Executive Director of IAF testifies that IHFA made clear to IAF that it wanted IAF to provide supportive services for persons with AIDS/HIV on a continuing basis, and that IAF expected renewal of the contracts as well.  (Welch Decl., ¶ 7-8). With respect to the SHP funds, Welch states that IAF was approached by IHFA early in 2001 and was asked to seek SHP funds from HUD.  (See Welch Decl., ¶ 2).  Moreover, IHFA assisted IAF in submitting an application for these funds in May 2001. (Welch Decl., ¶ 4).  Although, based on the evidence now before the Court, it seems unlikely that IAF will recover consequential damages for potential renewal of the contracts, the evidence is not so clear as to conclude that reasonable

**Memorandum Decision and Order -- Page 13**

minds could not draw different conclusions or where all reasonable minds would construe the facts and circumstances in only one way. *Appel*, 15 P.3d at 1145. Accordingly, the Court will deny the motion for summary judgment on this issue and all allow a jury to determine the question of foreseeability.

**B.     Standing**

This Court has already determined that IAF has third party standing in this case pursuant to the Ninth Circuit's test set forth in *Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994). IHFA now argues that IAF cannot seek damages for its right to privacy claim, however.

Recently, the 11th Circuit applied an almost identical test as the *Wedges/Ledges* test to a plaintiff landlord's § 1983 claim alleging financial loss. *Young Apartments, Inc. v. Town of Jupiter, Fla.*, 2008 WL 2277521 (11th Cir. 2008). In that case, the landlord, who was not a minority but served principally minority tenants, sued the town of Jupiter because of the town's decision to enforce an overcrowding ordinance only against properties that housed minority tenants. The Court allowed the damages claim to proceed because the landlord's financial damages for loss of rent and a lost opportunity to sell the apartment were damages unique to the landlord. *Id.* at *12.

In this case, IHFA concedes that it is not seeking compensation for injuries

**Memorandum Decision and Order -- Page 14**

suffered by its clients; rather, IHFA seeks damages for its own injuries.  Although it is not altogether clear what type of damages IHFA claims, the Court will allow IAF to seek damages for its own injuries if such injuries can be shown at trial. Accordingly, the Court will deny the motion for summary judgment on the standing argument.

### C.    Qualified Immunity

As explained in the Court's earlier opinion, "Qualified immunity serves to shield government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 971 (9th Cir. 2005) *(quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)*.* The Supreme Court has set forth the following two-pronged inquiry to resolve all qualified immunity claims, which this Court fully analyzed in its earlier decision with respect to the federal individual defendants.  For the same reasons expressed in that decision, the Court will grant qualified immunity to the IHFA individual defendants on the FHA and Rehabilitation Act claims.  (See Memorandum Decision and Order, pp.6-14, Docket No. 167).

Moreover, although IAF points out that, with respect to the right to privacy

claim, the outcome should be different because the Court has already granted summary judgment in favor of IAF, the Court is not persuaded.  Although the Court agrees that the individual state defendants ideally should have asserted their qualified immunity defense along with IHFA's initial motion for summary judgment, the Court finds that given the complex procedural history of this case, the interests of justice require the Court to decide the issues on the merits at this point.  Accordingly, the Court will also grant qualified immunity to the individual state defendants on their right of privacy claim for the same reasons.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED THAT IAF'S Motion to Reconsider (Docket No. 169) shall be, and the same is hereby, DENIED.

IT IS FURTHER ORDERED that HUD's Motion to Dismiss Cross-Claim (Docket No. 177) shall be, and the same is hereby, GRANTED.

IT IS FURTHER ORDERED that IHFA's Motion for Partial Summary Judgment (Docket No. 181) shall be, and the same is hereby, GRANTED in part and DENIED in part as explained above.

**Memorandum Decision and Order -- Page 16**

IT IS FURTHER ORDERED that HUD's Motion for Leave to File

Declaration (Docket No. 191) shall be, and the same is hereby, GRANTED.

DATED:  **July 11, 2008**

B. LYNN WINMILL
Chief Judge
United States District Court

**Memorandum Decision and Order -- Page 17**